UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TEN BRIDGES, LLC,<br><br>      Plaintiff,<br>  v.<br><br>MIDAS MULLIGAN, LLC, et al.,<br><br>      Defendants. | CASE NO. C19-1237JLR<br><br>ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIM |

## I. INTRODUCTION

Before the court is Plaintiff Ten Bridges, LLC ("Ten Bridges") motion to dismiss Defendants Midas Mulligan, LLC ("Midas"), Madrona Lisa, LLC ("Madrona"), and Danielle Gore's (collectively, "Defendants") counterclaim. (*See* Mot. (Dkt. # 20).) The court has reviewed Ten Bridges' motion, the parties' submissions filed in support of and in opposition to Ten Bridges' motion, the relevant portions of the record, and the

//

//

1 applicable law.  Being fully advised,[1] the court GRANTS Ten Bridges' motion and

2 DISMISSES Defendants' counterclaim with prejudice and without leave to amend.

## II.   BACKGROUND

Ten Bridges and Defendants engage in the business of purchasing residential property at judicial foreclosure sales.  (*See* FAC (Dkt. # 6) ¶ 1.)  Ten Bridges and Defendants are direct competitors.  (*See id.* ¶¶ 1, 9-10.)  In its amended complaint, Ten Bridges alleges that Defendants abused the state court's judicial process and intentionally interfered with Ten Bridge's business relations.  (*See generally id.*)  Specifically, Ten Bridges alleges Defendants improperly interfered with Ten Bridges efforts to acquire redemption rights to foreclosed property and/or the rights to surplus proceeds from foreclosed property owners by engaging in improper litigation conduct in various state court proceedings.  (*See id.* ¶¶ 17-20, 24-26, 28-30.)  Based on this alleged conduct, Ten Bridges brings claims for tortious interference with business relationships and abuse of

//

---

[1] Defendants request oral argument.  (*See* Resp. (Dkt. # 22) at 1.)  Generally, the court should not deny a request for oral argument made by a party opposing a dispositive motion unless the motion is denied.  *See Dredge Corp. v. Penny*, 338 F.2d 456, 462 (9th Cir. 1964).  However, oral argument is not necessary where the non-moving party suffers no prejudice.  *See Houston v. Bryan*, 725 F.2d 516, 517-18 (9th Cir. 1984); *Mahon v. Credit Bureau of Placer Cty. Inc.*, 171 F.3d 1197, 1200 (9th Cir. 1999) (holding that no oral argument was warranted where "[b]oth parties provided the district court with complete memoranda of the law and evidence in support of their respective positions," and "[t]he only prejudice [the defendants] contend they suffered was the district court's adverse ruling on the motion.").  "When a party has an adequate opportunity to provide the trial court with evidence and a memorandum of law, there is no prejudice [in refusing to grant oral argument]."  *Partridge v. Reich*, 141 F.3d 920, 926 (9th Cir. 1998) (quoting *Lake at Las Vegas Investors Grp., Inc. v. Pac. Malibu Dev. Corp.*, 933 F.2d 724, 729 (9th Cir. 1991)) (alterations in *Partridge*).  Here, the issues have been thoroughly briefed by the parties, and oral argument would not be of assistance to the court.  *See* Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court DENIES Defendants' request for oral argument.

process against Defendants.  (*See id.* ¶¶ 31-54.)  Ten Bridges seeks both injunctive relief and damages from Defendants.  (*See id.* ¶¶ 55-58 & Prayer for Relief at 11.)

In their answer to Ten Bridges' amended complaint, Defendants assert counterclaims on behalf of Madrona and Midas.  (*See* Answer (Dkt. # 19) at 13, ¶¶ 1-4.)  Defendants allege "the absolute right to bring to the King County Superior Court's attention the fact that Ten Bridges' contracts . . . violate RCW 63.29.350 and are therefore illegal, void, and unenforceable."[2]  (*Id.* at 13, ¶ 2.)  Defendants further allege that "[c]ommencement by Ten Bridges of this action against Midas and Madrona constitutes a violation of RCW 4.25.510, because the information brought to the King County Superior Court's attention by Midas and Madrona is and was reasonably of

---

[2] RCW 63.29.350 provides:

(1) It is unlawful for any person to seek or receive from any person or contract with any person for any fee or compensation for locating or purporting to locate any property which he or she knows has been reported or paid or delivered to the department of revenue pursuant to this chapter, or funds held by a county that are proceeds from a foreclosure for delinquent property taxes, assessments, or other liens, or, funds that are otherwise held by a county because of a person's failure to claim funds held as reimbursement for unowed taxes, fees, or other government charges, in excess of five percent of the value thereof returned to such owner.  Any person violating this section is guilty of a misdemeanor and shall be fined not less than the amount of the fee or charge he or she has sought or received or contracted for, and not more than ten times such amount, or imprisoned for not more than thirty days, or both.

(2) The legislature finds that the practices covered by this section are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW.  Any violation of this section is not reasonable in relation to the development and preservation of business.  It is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW.  Remedies provided by chapter 19.86 RCW are cumulative and not exclusive.

*Id.*

concern to the King County Superior Court." (*Id.* at 13, ¶ 3.) Defendants aver that "Midas and Madrona are entitled to each recover judgment against [Ten Bridges] in the amount of $10,000[.00], together with their expenses and reasonable attorney's fees incurred in and for this action, as a result of Ten Bridges' violations of RCW 4.24.510." (*Id.* at 13, ¶ 4.)

With respect to Midas' counterclaim, Defendants aver that Midas was the winning bidder at the King County Sheriff's judicial foreclosure sale of non-party Teresia Guandai's property, which is located on 15th Avenue Northeast, in Seattle, Washington. (*See* Resp. at 5 (citing FAC ¶ 15 ("[Midas] purchased the property . . . owned by . . . [Ms.] Guandai . . . at a foreclosure sale . . . .")).) The sale resulted in surplus proceeds of $89,234.72. (*See* FAC ¶ 17.) Following the sale, Ten Bridges entered into an agreement with Ms. Guandai, whereby she delivered a quit claim deed to Ten Bridges, which included a grant of Ms. Guandai's right to receive the surplus proceeds. (*See id.* ¶ 16.)

Ten Bridges then filed a motion in King County Superior Court to obtain the surplus proceeds from the judicial foreclosure sale of Ms. Guandai's property("the *Guandai* action"). (*See id.* ¶ 17; *see also* Beckett Decl. (Dkt. # 23) ¶ 2.a, Ex. 1 (attaching a copy of Ten Bridge's motion).) Midas filed an opposition to Ten Bridges' motion, arguing that Ten Bridges' agreement with Ms. Guandai violated RCW 63.29.350 and was therefore invalid and void. (*See* Answer at 13, ¶ 2; *see also* Beckett Decl. ¶ 2.b, Ex. 2 (attaching copy of Midas' response to Ten Bridges' motion).) The King County Superior Court entered an order denying Ten Bridges' motion in part. (*See* Answer at 9, ¶ 4 (stating as an affirmative defense that Ten Bridges' "contract[] with Teresia Guandai . . .

1  violate[s] RCW 63.29.350 and ha[s] been determined to be illegal, void, and

2  unenforceable in King County Superior Court . . . ."); Beckett Decl. ¶ 2.e, Ex. 5

3  (attaching King County Superior Court order denying "in part" Ten Bridges' motion for

4  disbursement and awarding $73,996.95, less clerk's fees, if any, to Ms. Guandai, and

5  $15,000.00, less clerk's fees, if any, to Ten Bridges).)

6  　　　　With respect to Madrona's counterclaim, Defendants aver that Madrona was the

7  winning bidder at the King County Sheriff's judicial foreclosure sale of Yukiko Asano's

8  property located on Bellevue Way Northeast, in Bellevue, Washington.  (*See* Resp. at 6

9  (citing FAC ¶ 27 ("Madrona purchased 1344 Bellevue Way NE . . . ."));  *see also* Answer

10  ¶ 18 (Defendants admit that Madrona was the winning bidder . . . at a foreclosure sale of

11  the real property located at 1344 Bellevue Way NE").)  Following the sale, Ten Bridges

12  entered into an agreement with Ms. Asano whereby she delivered a quit claim deed to

13  Ten Bridges, which included a grant of Ms. Asano's right to redeem the property from

14  Madrona.  (FAC ¶ 28; Answer ¶ 19.)  Ten Bridges attempted to redeem the property from

15  Madrona.  (FAC ¶ 28; Answer ¶ 19 ("Defendants admit that . . . Ten Bridges delivered a

16  Notice of Intent to Redeem the property and tendered funds to the King County Sheriff in

17  order to do so . . . .").)  Madrona objected to Ten Bridge's notice.  (FAC ¶ 28; Answer ¶

18  19 ("Madrona objected to the attempt to redeem and argued, in part, that the Deed from

19  Ms. Asano to Ten Bridges was void and of no legal effect.").)

20  　　　　Ten Bridges then filed a motion in King County Superior Court asking the court to

21  set the amount for which Ten Bridges could redeem Ms. Asano's property from Madrona

22  ("the *Asano* action").  (Beckett Decl. ¶ 2.f, Ex. 6.)  Madrona opposed Ten Bridges'

motion. (*Id.* ¶ 2.g, Ex. 7.) The King County Superior Court entered an order finding the quit claim deed to be "void and unenforceable" because the agreement between Ten Bridges and Ms. Asano was "unlawful." (*Id.* ¶ 2.h, Ex. 8 at 1.) The court further ordered that Ten Bridges had "no right to redeem the real property from Madrona." (*Id.* at 2.)[3]

Ten Bridges moves for dismissal with prejudice of Defendants' counterclaims, which are based on the facts underlying the *Guandai* and *Asano* actions and are premised on RCW 4.25.510. (*See generally* Mot.) The court now considers Ten Bridges' motion.

### III.   ANALYSIS

**A.   Rule 12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) provides for dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), the court construes the complaint—or in this case, the counterclaim—in the light most favorable to the nonmoving party. *See Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005). The court must accept all well-pleaded facts as true and draw all reasonable inferences in favor of the claimant. *See Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998). The court, however, is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

//

---

[3] Ten Bridges brought a second motion asking the King County Superior Court to set the amount for which Ten Bridges could redeem the property from Madrona, which Madrona again opposed, and the court again denied. (*See* Beckett Decl. ¶¶ 2.i, 2.j, 2.k, Exs. 9-11.)

1     "To survive a motion to dismiss, a complaint must contain sufficient factual
2 matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*
3 *v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,
4 570 (2007)); *see also Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir.
5 2010). "A claim has facial plausibility when the plaintiff pleads factual content that
6 allows the court to draw the reasonable inference that the defendant is liable for the
7 misconduct alleged." *Iqbal*, 556 U.S. at 677-78. Dismissal under Rule 12(b)(6) can be
8 based on the lack of a cognizable legal theory or the absence of sufficient facts alleged
9 under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699
10 (9th Cir. 1990).

**B.     Material the Court Considers**

Defendants ask the court to take judicial notice of (1) the parties' filings in King County Superior Court and the Washington Court of Appeals (*see* Beckett Decl. (Dkt. # 23) ¶¶ 2.a, 2.b, 2.f, 2.g, 2.i, 2.j, Exs. 1-2, 6-7, 9-10); (2) transcripts of state court proceedings on file in the Washington Court of Appeals (*see id.* ¶¶ 2.c, 2.d, Exs. 3-4); and (3) state court orders (*id.* ¶¶ 2.e, 2.h, 2.k, Exs. 5, 8, 11). *See* Resp. at 3-5 (asking the court to take judicial notice of eleven documents on file in Washington State courts). Ten Bridges does not object to Defendants' request. (*See generally* Reply (Dkt. # 24).)

Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion to dismiss. *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th Cir. 2001) (citations omitted). One exception to this rule is that the court may take judicial notice of documents pursuant to Federal Rule of Evidence 201. *Khoja v.*

1 *Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also* Fed R. Evid. 201.  Thus, the "court may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment."  *See Khoja*, 899 F.3d at 999 (quoting *Lee*, 250 F.3d at 689 (quotation marks and citation omitted)).  However, the court may not take judicial notice of disputed facts contained in such public records.  *See id.*  The documents Defendants submit for judicial notice are public records.  (*See* Beckett Decl. ¶¶ 2.a-k, Exs. 1-11.)  Ten Bridges does not contest their authenticity.  (*See generally* Reply.)  The court, therefore, grants Defendants' request and takes judicial notice (1) of the eleven documents Defendants submit that are on file in Washington State courts, (2) that the state courts conducted certain transcribed hearings which are memorialized in some of those documents, and (3) that the state courts issued certain orders; but the court does not take judicial notice of any disputed facts contained in the parties' state court filings.

**C.    Defendants' Counterclaim**

Defendants premise their counterclaims on RCW 4.24.510.  (Answer at 13, ¶¶ 3-4.)  Defendants contend that Ten Bridges' present lawsuit, which alleges abuse of process against Midas and Madrona for their litigation conduct in the *Asano* and *Guandai* actions (*see* FAC ¶¶ 45-54), constitutes a violation of RCW 4.24.510 (*see* Answer at 13, ¶ 3.)  Defendants further allege that the statue entitles Madrona and Midas to recover $10,000.00, each, from Ten Bridges, along with their expenses and reasonable attorney's fees incurred in this suit.  (*Id.* at 13, ¶ 4.)

//

The statutory provision upon which Defendants rely provides that "[a] person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency . . . regarding any matter reasonably of concern to that agency." RCW 4.24.510. In addition, "[a] person prevailing upon the defense provided for in [RCW 4.24.510] . . . is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and in addition shall receive statutory damages of ten thousand dollars." *Id.* In 2002, the Washington Legislature amended the statute to clarify that it includes complaints made to any "branch" of government, and to eliminate the "good faith" requirement, conferring absolute immunity. *See Yanni v. City of Seattle*, No. C04-0896L, 2005 WL 8172266, at *1 (W.D. Wash. Feb. 28, 2005). However, "[s]tatutory damages may be denied if the court finds that the complaint or information was communicated in bad faith." RCW 4.24.510.

Ten Bridges argues that RCW 4.24.510 "does not apply to information presented to a court acting in an adjudicative capacity," and accordingly, the court should dismiss Defendants' counterclaims with prejudice. (*See* Mot. at 1.) Defendants respond that their conduct falls within the plain language of the statute and that by bringing Ten Bridges' allegedly wrongful conduct to the attention of the King County Superior Court in the *Guandai* and *Asano* actions, Midas and Madrona were "communicat[ing] a complaint or information" to a "branch or agency of . . . local government," and were thereby engaging in conduct within the purview and protection of RCW 4.24.510. (Resp. at 9-10.)

1    The court in *Yanni* addressed a similar issue.[4]  *See* 2005 WL 8172266, at *1-2.  In *Yanni*, the plaintiffs claimed that the City of Seattle and certain police officers had violated their Fourth and Fourteenth Amendment rights, and the plaintiffs filed suit under 42 U.S.C. § 1983.  *Yanni*, 2005 WL 8172266, at *1.  In response, the police officers brought a counterclaim for malicious prosecution pursuant to RCW 4.24.350.  *Yanni*, 2005 WL 8172266, at *1.  Like Defendants here, the *Yanni* plaintiffs argued that they were immune from any such state law claim for communicating their complaints about the officers' conduct to the federal court under RCW 4.24.510.  *Yanni*, 2005 WL 8172266, at *1.

In so arguing, the *Yanni* plaintiffs relied on *Kauzlarich v. Yarbough*, 20 P.3d 946 (Wash. Ct. App. 2001).  2005 WL 8172266 at *2.  In *Kauzlarich*, a lawyer communicated a party's alleged death threats to the court during a child custody case in the interest of ensuring security within the courtroom.  20 P.3d at 949.  The *Kauzlarich* court held that RCW 4.24.510 covered the lawyer's communication with the court because it accorded with the statute's purpose of encouraging effective law enforcement and because "[s]ecurity in the courtroom is vital to the administration of justice."  20 P.3d at 954-56.

The *Yanni* court, however, rejected the notion that the holding in *Kauzlarich* could be extended "to mean that RCW 4.24.510 covers lawsuits as 'communications' with courts."  2005 WL 8172266, at *2.  Indeed, the *Yanni* court noted that "[n]o case has

//

---

[4] Ten Bridges represents that it was unable to find a Washington State court decision addressing whether RCW 4.24.510 applies to lawsuits or communications made to the court during a lawsuit for adjudicative purposes. (Mot. at 7.)  The court could not find one either.

1  stated, even in dicta, that a lawsuit constitutes the type of 'communication' covered by
2  the statute"; nor does the statute state that the "contents of [a] lawsuit are matters
3  reasonably of concern to the courts." *Id.* Further, the *Yanni* court explained that "[e]very
4  other case addressing RCW 4.24.510 in any context involve[d] a statement in the course
5  of a public hearing, a complaint to a governmental authority, usually an agency, about a
6  matter of public concern, or the communication of information regarding potential
7  criminal activity to law enforcement." 2005 WL 8172266, at *2. Thus, the *Yanni* court
8  declined to read the holding in *Kauzlarich* or the statute as broadly as the plaintiffs
9  proponed. 2005 WL 8172266, at *2. Although the court acknowledged that some
10 statements to a court could fall within the purview of the protection of the statute as the
11 *Kauzlarich* court recognized, the court held that "the filing of lawsuit or the contents of a
12 complaint" did not so qualify. 2005 WL 8172266, at *2.

13       Defendants argue that *Yanni* is distinguishable because the statements they made
14 in the *Guandai* and *Asano* actions were "***not*** complaints filed at the commencement of
15 lawsuits, or the contents of such complaints," but "[r]ather, . . . communications [that]
16 were 'made to the court during the course of litigation'—the very type of communication
17 that [the Yanni court] agreed could be within RCW 4.24.510's coverage." (*See* Resp. at
18 16-17 (quoting *Yanni*, 2005 WL 8172266, at *2).) Defendants, however, skew the
19 holding in *Yanni* both too broadly and too narrowly. Defendants read the *Yanni* court's
20 statement that "the filing of a lawsuit and the contents of a complaint" are not protected
21 by RCW 4.24.510 too narrowly to exclude any pleading or court filing other than a
22 complaint, and they read the *Yanni* court's statement that "some communications made to

the court during the course of litigation may be protected" by the statute too broadly—ignoring the context the *Yanni* court provided for that statement in its discussion of the holding in *Kauzlarich*. Properly read, the *Yanni* court distinguished between statements made to the court in its adjudicative capacity and statements made to the court concerning its own administration. The former, like the statements in *Yanni*, are not protected by RCW 4.24.510, while the latter, like the statements in *Kauzlarich*, may be. Here, Defendants' statements or communications to the state courts at issue during the *Guandai* and *Asano* actions were in the former, and not the latter, category. Accordingly, similar to the court in *Yanni*, this court holds that RCW 4.24.510 does not provide Defendants with immunity in the context of this lawsuit or provide any basis for their counterclaims against Ten Bridges.

Further, there is no evidence that, by enacting RCW 4.24.510, the Legislature intended to eliminate the tort of abuse of process. Indeed, this tort continues to exist in Washington. *See Bellevue Farm Owners Ass'n v. Stevens*, 394 P.3d 1018, 1024 (Wash. Ct. App. 2017) (listing the elements for the tort of abuse of process). Because abuse of process is premised on communicating with the court, if the court were to adopt Defendants' interpretation of RCW 4.24.510, a successful prosecution of the tort could result in an untenable award of attorney's fees and costs to the losing party. Although the statute permits the court to deny statutory damages if information is communicated in bad faith, there is no such exemption for an award of expenses and attorneys' fees. *See* RCW 4.24.510 ("A person prevailing upon the defense provided for in this section is entitled to recover expenses and reasonable attorneys' fees incurred in establishing the defense and

1  in addition shall receive statutory damages of ten thousand dollars.  Statutory damages

2  may be denied if the court finds that the complaint or information was communicated in

3  bad faith.").  Thus, if the court were to hold that RCW 4.24.510 applies to adjudicative

4  communications with the court—as Defendants suggest—that interpretation would

5  irreconcilably conflict with common law torts—such as abuse of process and malicious

6  civil prosecution—that the Legislature did not "clearly express[]" its intent to modify.

7  *See Staats v. Brown*, 991 P.2d 615, 621 (Wash. 2000); *Price v. Kitsap Transit*, 886 P.2d

8  556, 560 (Wash. 1994) ("[T]he Legislature is presumed to know the existing state of the

9  case law in those areas in which it is legislating and a statute will not be construed in

10 derogation of the common law unless the Legislature has clearly expressed its intention

11 to vary it"); *State ex rel. Munroe v. City of Poulsbo*, 37 P.3d 319, 322 (Wash. Ct. App.

12 2002) ("[W]e will not construe a statute in derogation of the common law absent a clearly

13 expressed legislative intent to do so."); *see also Briscoe v. LaHue*, 460 U.S. 325, 334

14 (1983).

15      The *Yanni* court reached a similar conclusion when the court noted that if RCW

16 4.25.510 were interpreted to apply to adjudicative statements to the court, then it would

17 conflict with the malicious prosecution statute in RCW 4.24.350.  *See* 2005 WL 8172266,

18 at *2.  The Yanni court noted that the Legislature is presumed to have been aware of the

19 provisions of the malicious prosecution statute at the time it amended RCW 4.24.510.

20 *See id.*  The court reasoned that "[i]f RCW 4.24.510 provides absolute immunity for all

21 lawsuits filed with the courts, it would render the malicious prosecution statute moot."

22 *Id.*  Reading the statutes together, to give effect to both, the court concluded that RCW

4.24.510 did not provide the plaintiff with immunity from the defendant officers' counterclaim for malicious prosecution. *Id.* Likewise, this court cannot reconcile Washington's common law abuse of process tort claim with the statutory interpretation of RCW 4.24.510 proponed by Defendants. Thus, the court declines to construe RCW 4.24.510 as applicable to adjudicative communications with the court.

Defendants nevertheless contend that RCW 4.24.510 is a remedial statute that the court should construe liberally. (*See* Resp. at 4.) Although the Legislature expressly stated that the related, but now defunct, RCW 4.24.525[5] "shall be applied and construed liberally," *see* 2010 Wash. Sess. Laws 921, 924, ch. 118 § 3, the Legislature has never so stated with respect to RCW 4.24.510. In any event, the court concludes that RCW 4.24.510 is not remedial in nature. A statute is remedial when it relates to practice, procedure, or remedies and does not affect a substantive or vested right. *Miebach v. Colasurado*, 685 P.2d 1074, 1081 (Wash. 1984). In *Nguygen v. County of Clark*, 732 F. Supp. 2d 1190 (W.D. Wash. 2010), the court held that the now defunct RCW 54.24.525 was remedial because it "does not dismiss [the defendants'] counterclaim for malicious prosecution, but simply changes the procedures that they must adhere to in proving their claims." *Id.* at 1193. In contrast, RCW 4.24.510 "grants immunity from civil liability for those who complain to their government regarding issues of public interest or social significance." *Valdez-Zontek v Eastmont Sch. Dist.*, 225 P.3d 339, 350 (Wash. Ct. App.

---

[5] *See Davis v. Cox*, 351 P.3d 862, 874-75 (Wash. 2015) (holding that RCW 4.24.525 "violates the right of trial by jury under article 1, section 21 of the Washington Constitution" and invalidating it "as a whole"), *abrogated on other grounds by Maytown Sand & Gravel, LLC v. Thurston Cty.*, 423 P.3d 223 (Wash. 2018).

2010) (quoting *Skimming v. Boxer*, 82 P.3d 707, 712 (Wash. Ct. App. 2004)). Thus, because RCW 4.24.510 provides immunity from suit, it affects substantive rights and cannot be said to be remedial in nature.

In any event, as the Washington Supreme Court recently explained, "[t]he distinction between 'liberal construction' and 'strict construction' is easily overstated." *Estate of Bunch v. McGraw Residential Ctr.*, 275 P.3d 1119, 1123 (Wash. 2012). "Neither a liberal construction nor a strict construction may be employed to defeat the intent of the legislature . . . ." *Id.* Here, the Legislature specifically described the purpose of RCW 4.24.510 as "protect[ing] individuals who make good-faith reports to appropriate governmental bodies" and mitigating deterrents for "citizens who wish to report information to federal, state, or local agencies." RCW 4.24.500. The Legislature was concerned that such "[i]nformation provided by citizens . . . is vital to effective law enforcement and the efficient operation of government." *Id.* Defendants' broad construction of the statute, which would apply the immunity provided in RCW 4.24.510 to adjudicative statements made in court proceedings concerning disputes between private individuals, goes well-beyond the Legislature's expressly stated purpose in enacting the statute. *See* RCW 4.24.500. Accordingly, the court declines to adopt it.[6]

---

[6] The court is also not persuaded by Defendants' reliance on *Eugster v. City of Spokane*, 156 P.3d 912 (Wash. Ct. App. 2007). (*See* Resp. at 12-14.) In *Eugster*, a city council member brought an action against the city, challenging a settlement between the city and parking garage developer in which the city releases parking meter funds to the developer and title to the garage would be passed through to the developer. The trial court granted summary judgment to the city but denied the city's request for Washington Civil Rule 11 sanctions against the council member. The council member appealed and argued that the city's Rule 11 motion entitled him to his attorney's fees and statutory damages under RCW 4.24.510. 156 P.3d at 918. The *Eugster* court held that the city's Rule 11 motion did not fall within the purview of the statute because it "was

Based on the foregoing analysis, the court GRANTS Ten Bridges' motion to dismiss Defendants' counterclaims based on RCW 4.24.510. Because Defendants' counterclaims do not allege a cognizable legal theory, amendment would be futile and the court dismisses the counterclaim without leave to amend. *AE ex rel. Hernandez. v. Cty. of Tulare*, 666 F.3d 631, 636 (9th Cir. 2012) (stating that leave to amend need not be given if it would be futile); *Steele-Klein v. Int'l Bhd. of Teamsters, Local 117*, 696 F. App'x 200, 202 (9th Cir. 2017) ("Granting leave to amend would, again, be futile, because [the plaintiff] has not identified how she would articulate a cognizable legal theory if given the opportunity."); *Perez c. TBG Logistics, LLC*, No. CV-16-02916-PHX-ROS, 2016 WL 10919966, at *2 (D. Ariz. Dec. 16, 2016), *aff'd sub nom. Scalia v. Employer Sols. Staffing Grp., LLC*, 951 F.3d 1097 (9th Cir. 2020) ("If the underlying legal theories are not viable, there is no need to grant leave to amend.").

//
//
//
//
//
//

---

not a claim on a substantive issue." *Id.* The *Eugster* court did not consider whether RCW 4.24.510 extends generally to adjudicative court submissions because it did not need to do so. Contrary to Defendants' assertions, the *Eugster* court's silence on the issue is not an indication that the statute applies to such submissions; rather, it is merely an indication of judicial restraint. There is nothing in the *Eugster* court's holding that supports Defendants' position or undermines the court's ruling here.

## IV. CONCLUSION

Based on the foregoing analysis, the court GRANTS Ten Bridges' motion to dismiss Defendants' counterclaims, which are based on RCW4.24.510 (Dkt. # 20). Further, the dismissal is with prejudice and without leave to amend.

Dated this 17th day of April, 2020.

JAMES L. ROBART
United States District Judge