The Hon. James L. Robart

IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON, AT SEATTLE

TEN BRIDGES, LLC, a Foreign Limited
Liability Company,

              Plaintiff,

    v.

MIDAS MULLIGAN, LLC, a
Washington Limited Liability Company;
MADRONA LISA, LLC, a Washington
Limited Liability Company; DANIELLE
GORE, an individual; and MATTHEW
A. TOTH, an individual,

              Defendants.

---

MADRONA LISA, LLC,

              Third-Party Plaintiff,

    v.

DEMIAN HEALD, an individual, and
MATT COX, an individual,

              Third-Party Defendants.

Case No. 2:19-cv-01237-JLR

DEFENDANTS' RESPONSE TO TEN
BRIDGES, LLC'S MOTION TO DISMISS
COUNTERCLAIMS

Noted on Motion Calendar: January 8, 2021

**ORAL ARGUMENT REQUESTED**

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

# I. INTRODUCTION

Following the filing of Ten Bridges, LLC's ("Ten Bridges') Second Amended Complaint, Defendants Midas Mulligan, LLC ("Midas") and Madrona Lisa, LLC ("Madrona") filed their Answer to the Second Amended Complaint.[1] With the Answer, Midas and Madrona filed their Counterclaims. The first counterclaim was a repleading of the counterclaim they asserted in partial response to Ten Bridges' First Amended Complaint, seeking recovery under Washington's Anti-Slapp statute, RCW 4.24.510, and which the Court previously dismissed on Ten Bridges' Fed. R. Civ. P. 12(b)(6) motion. Dkt. #50 at 22-23. This counterclaim was reasserted as part of the Answer to the Second Amended Complaint solely to preserve Midas' and Madrona's right to appeal the prior dismissal of the Anti-Slapp counterclaim. *Id.*

In response to Ten Bridges' Second Amended Complaint, Madrona also asserted a counterclaim to recover damages for Ten Bridges' violation of Washington's Consumer Protection Act, RCW Chapter 19.86, *et seq.* ("CPA"), to recover the attorney's fees it incurred in defending against Ten Bridges' illegal, void, and unenforceable Quit Claim Deeds it received from Yukiko Asano in a King County Superior Court action and in Washington's Court of Appeals, in which Ten Bridges attempted to enforce the Deeds against Madrona. *Id.* at 17-22.

Ten Bridges now requests the Court to strike or dismiss the counterclaims asserted by Madrona and Midas in response to the Second Amended Complaint. Because Madrona and Midas re-asserted the Anti-Slapp Cause of Action solely to preserve their rights to appeal the Court's prior dismissal of this claim upon the conclusion of this case, Madrona and Midas stand on the opposition they previously filed (Dkt. #'s 22-23), but fully anticipate that the

---

[1] The Answer to the Second Amended Complaint was also filed on behalf of Defendants Ms. Gore and Mr. Toth, who are the sole members of Madrona and Midas. Dkt. #'s 12, 13.

DEFENDANTS' RESPONSE TO
TEN BRIDGES, LLC'S MOTION
TO DISMISS COUNTERCLAIMS - 1
(Case No. 2:19-cv-01237-JLR)

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1    Court will enter an order confirming that the Anti-Slapp counterclaim is dismissed.

2        With respect to Madrona's CPA counterclaim, because Ten Bridges expanded the

3    scope and theories of its claims in its Second Amended Complaint, Madrona was entitled of

4    right to plead this new counterclaim in response, without leave of Court. Even if Madrona

5    was not entitled to file the counterclaim of right, however, the Court should consider the

6    CPA counterclaim to be a permitted amendment to Madrona's prior answer and

7    counterclaim. As to the merits of the CPA counterclaim, Madrona has pleaded a plausible

8    claim for recovery against Ten Bridges, necessitating the Court's denial of Ten Bridges'

9    request for its dismissal.

## II. RELEVANT FACTS

11        On July 10, 2019, Ten Bridges filed a "Verified Motion for Determination of

12    Redemption Price" in King County Superior Court Case No. 18-2-03471-0, *Carlyle*

13    *Condominium Owners Association v. Yukiko Asano.* Declaration of Guy W. Beckett for

14    Madrona Lisa, LLC's Response to Motions to Dismiss Counterclaims ("Beckett Decl."), Ex.

15    1.[2] In the motion, Ten Bridges explained that Ms. Asano's Bellevue condominium had been

16    foreclosed by her condominium owners association because she had failed to pay association

17    assessments. *Id.* at 1-2; *see also* Dkt. #50, at ¶ 3. Ten Bridges further explained that Madrona

18    had purchased the condominium at the Sheriff's foreclosure sale; that Ten Bridges had

19    attempted to redeem the property from Madrona; and that Madrona claimed the redemption

20    amount was more than Ten Bridges believed it to be. Beckett Decl., Ex. 1 at 1-3; *see also*

---

[2] Attached as exhibits to the Beckett declaration are copies of several papers filed in the *Asano* state court litigation. The Court may take judicial notice of "adjudicative fact[s]" that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(a)-(b)(2). Such facts include proceedings and papers filed in other courts, both within and without the federal judicial system. *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.,* 971 F.2d 244, 248 (9th Cir. 1992). The Court must take judicial notice of a judicially noticeable fact "if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(c)(2). Madrona requests the Court to take judicial notice of the documents from the *Asano* litigation attached as exhibits to the Beckett declaration.

Berry&Beckett
LLLP

1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

DEFENDANTS' RESPONSE TO
TEN BRIDGES, LLC'S MOTION
TO DISMISS COUNTERCLAIMS - 2
(Case No. 2:19-cv-01237-JLR)

Dkt. #50, at ¶¶ 4-6. Attached as Exhibit A to its motion was a copy of a Quit Claim Deed delivered by Ms. Asano to Ten Bridges, pursuant to which Ten Bridges claimed it had the right to redeem the property. Beckett Decl., Ex. 1.

In response to Ten Bridges' motion asking the Superior Court to set a redemption price for the property, Madrona asserted that Ten Bridges had no right to redeem, arguing that the agreement with Ms. Asano, pursuant to which Ten Bridges obtained Ms. Asano's Deed to the property, violates RCW 63.29.350 and is therefore illegal, void and unenforceable. Beckett Decl., Ex. 2; *see also* Dkt. #50, at ¶ 7. The Superior Court ruled on August 8, 2019 that Ten Bridges had no right to redeem the property because its agreement with Ms. Asano and the Deed it received from her violated RCW 63.29.350 and are therefore illegal, unenforceable, and void. Dkt. #50, at ¶ 8; Dkt. #23-5, at 2-3. Ten Bridges filed an appeal to Washington's Court of Appeals, Division 1, of the August 8, 2019 Order. Beckett Decl., Ex. 3.

On October 5, 2020, Ten Bridges filed its Second Verified Motion for Determination of Redemption Price in the *Asano* Superior Court action. Beckett Dec., Ex. 4. In that motion, Ten Bridges explained that after the Superior Court ruled on August 8, 2019 that the Deed it had received from Ms. Asano is void and unenforceable, it obtained a new Deed from Ms. Asano. *Id.* at 5 and Ex. D. Ten Bridges argued in its second motion that the new Deed is severable from its illegal agreement with Ms. Asano and therefore gave Ten Bridges the right to redeem the property, despite the Superior Court's August 8, 2020 Order. *Id.*

Madrona again opposed Ten Bridges' attempt to redeem the property, contending that the second Deed is part of the illegal transaction and is therefore void and unenforceable, and that Ten Bridges still had not tendered sufficient sums to redeem. Beckett Decl., Ex. 5. On October 30, 2020, the Superior Court held that the second Deed from Ms. Asano to Ten Bridges is also illegal, unenforceable, and void. Dkt. #23-5, at 5-6. Ten Bridges also appealed

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

this Order. Beckett Decl., Ex. 6.

The day before the Superior Court invalidated the first Deed and held that Ten Bridges had no right to redeem the property, on August 7, 2019, Ten Bridges filed its Complaint in this case. Dkt. #1. In its Complaint, Ten Bridges asserted that Madrona had intentionally interfered with its agreement with Ms. Asano by objecting to Ten Bridges' attempt to redeem the property, objecting to the Deed Ten Bridges received from Ms. Asano, and objecting to the insufficient amount of money Ten Bridges had tendered to redeem the property. Dkt. #1, at ¶¶ 36-38. Ten Bridges also asserted that Madrona's objection to Ten Bridges' attempt to redeem the Asano property constituted an abuse of process. *Id.* at ¶¶ 53-56.

On August 27, 2020, Ten Bridges filed its First Amended Complaint in this case. Dkt. #6. With respect to its illegal transaction with Ms. Asano, Ten Bridges reasserted its abuse of process claim against Madrona but abandoned its intentional interference claim against it. Dkt. #6.[3]

On November 25, 2019, Midas, Madrona, and Ms. Gore filed their Answer to Ten Bridges' First Amended Complaint. Dkt. #19. Midas and Madrona asserted their Anti-Slapp counterclaim with this Answer. *Id.*

Ten Bridges filed a Fed. R. Civ. P. 12(b)(6) motion to dismiss the Anti-Slapp counterclaim. Dkt. #20. The Court granted this motion on April 20, 2020. Dkt. #25.

On August 31, 2020, the Court issued its Order amending the case deadlines. Dkt. #41. The Order set September 30, 2020 as the deadline for filing amended pleadings. *Id.*

On September 10, 2020, Ten Bridges filed its motion for leave to file its Second Amended Complaint. Dkt. #42. The Court granted that motion on November 2, 2020. Dkt.

---

[3] The First Amended Complaint also included claims against Midas, Madrona, and Ms. Gore for allegedly interfering with other agreements Ten Bridges claimed to have, an abuse of process claim against Midas, and requests for injunctive relief against Midas and Madrona. Dkt. #6.

DEFENDANTS' RESPONSE TO
TEN BRIDGES, LLC'S MOTION
TO DISMISS COUNTERCLAIMS - 4
(Case No. 2:19-cv-01237-JLR)

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1   #46. Ten Bridges filed its Second Amended Complaint on November 5, 2020. Dkt. #47.

2       The Second Amended Complaint named Mr. Toth as a new defendant. *Id.* Ten

3   Bridges asserted new claims for tortious interference with contract and business relationships

4   against Madrona pertaining to Ten Bridges' illegal transactions with Ms. Asano, new tortious

5   interference claims against Mr. Toth and Ms. Gore pertaining to Ten Bridges' illegal

6   agreements with Ms. Asano, and a new tortious interference claim against Ms. Gore related

7   to property formerly owned by Jay Millsap. *Id.*

8       The defendants timely filed their Answer to the Second Amended Complaint. Dkt.

9   #50. As part of the Answer, Madrona and Midas reasserted their Anti-Slapp counterclaim,

10  solely to preserve their right to appeal the Court's April 20, 2020 dismissal order. *Dkt. #I50,*

11  at ¶¶25-28. In addition, Madrona asserted a counterclaim against Ten Bridges, seeking

12  recovery under the CPA for the attorney's fees it has incurred and may incur in the *Asano*

13  state court litigation. *Id.* at ¶¶ 2-24.

14      On October 26, 2020, the Washington Court of Appeals affirmed the Superior Court's

15  August 8, 2019 and October 30, 2019 orders invalidating both Deeds delivered by Ms Asano

16  to Ten Bridges, ruling that both Deeds were part of the unlawful agreement between them.

17  *Ten Bridges, LLC v. Guandai,* __ Wn. App.2d __, 474 P.3d 1060, 1069-71 (2020). Ten

18  Bridges' motion for reconsideration of the Court of Appeals decision was denied on

19  December 31, 2020. Beckett Decl., Ex. 7.

20  ## III. LEGAL AUTHORITY AND DISCUSSION

21  **A.   Midas and Madrona Repleaded Their Anti-Slapp Counterclaim to Prevent an
          Argument on Appeal that the Claim has been Waived.**

22
        Midas and Madrona did not re-plead their Anti-Slapp counterclaim for any nefarious

23  purpose. They were completely transparent about why they were restating that counterclaim:

24
            Defendants acknowledge that on April 20, 2020, the Court dismissed
25          this same cause of action asserted in Defendants' Answer to Ten

26


DEFENDANTS' RESPONSE TO
TEN BRIDGES, LLC'S MOTION
TO DISMISS COUNTERCLAIMS - 5
(Case No. 2:19-cv-01237-JLR)

1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

Bridges' First Amended Complaint and Counterclaim, for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6). Defendants re-assert this Cause of Action solely for the purpose of preserving their right to appeal the Court's previous dismissal of their Anti-Slapp Cause of Action at the conclusion of the trial court proceedings herein, as the failure to re-assert the Anti-Slapp Cause of Action in this pleading would likely result in the waiver of the right to appeal such dismissal. Defendants will cooperate with Ten Bridges and the Court in processing the dismissal of this Anti-Slapp Cause of Action in such a manner that their right to appeal the April 20, 2020 Order is preserved.

Dkt. #50, at ¶ 28. Although the defendants offered in the counterclaim to "cooperate" with Ten Bridges and the Court to process the dismissal of the reasserted Anti-Slapp counterclaim, Ten Bridges made no effort to gain such dismissal after the defendants filed their Answer to the Second Amended Complaint, before it filed the instant motion.

When an amended complaint is filed, the original complaint in the case is superseded and "is treated thereafter as non-existent." *Ferdik v. Bonzelet,* 963 F.2d 1258, 1262 (9th Cir. 1992). There does not appear to be any binding authority in this circuit or district as to whether a counterclaim asserted in an answer to a prior complaint is abandoned or waived if not reasserted in the defendant's response to an amended complaint. However, federal courts across the country have held that if a party, in response to an amended complaint, fails to replead a counterclaim previously asserted in response to a prior version of the complaint, that counterclaim is waived and abandoned. *See, e.g., General Mills, Inc. v. Kraft Foods Global, Inc.,* 495 F.3d 1378, 1378-79 (Fed. Cir. 2007) (defendant failed to reassert previously asserted counterclaim in response to amended complaint and successfully moved to dismiss amended complaint, but court refused to permit defendant to reassert the counterclaim after dismissal order entered).[4]

---

[4] *See also Settlement Capital Corp., Inc. v. Pagan,* 649 F. Supp.2d 545, 562 (N.D. Tex. 2009) ("While [defendants] Seneca and Route 28 asserted counterclaims for slander of title in their original answer, these counterclaims were not reasserted in their amended answer and thus have been abandoned."); *Johnson v. Berry,* 228 F. Supp.2d 1071, 1079 (E.D. Mo. 2002) ("... Fed. R. Civ. P. 15(a) requires a party to plead in response to an amended pleading. ... [A] counterclaim is part of the responsive pleading. By failing to plead in response to

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1    These cases illustrate the potential pitfall to a defendant of failing to replead in an

2    answer to an amended complaint a counterclaim previously asserted in the case—if not

3    repleaded, the counterclaim may be waived or abandoned. Madrona and Midas repleaded

4    their Anti-Slapp counterclaim in their answer to Ten Bridges' Second Amended Complaint to

5    protect against that possibility, and reiterate that they repleaded their Anti-Slapp

6    counterclaim to prevent an argument (and potential outcome) on appeal that the claim was

7    waived by not including it as part of their answer to the Second Amended Complaint.

8    Madrona and Midas stand on their previous opposition to Ten Bridges' motion to dismiss the

9    Anti-Slapp counterclaim (Dkt. #'s 22 and 23), but fully anticipate that this repleaded

10   counterclaim will be removed from the case in the Court's order on the instant motion. *See*

11   *Sonix Technology Co., Ltd. v. Yoshida,* No. 12cv0380-CAB (DHB), 2015 WL 11199835, at

12   *1-2 (S.D. Cal. Sept. 14, 2015) (where defendant reasserted counterclaims already dismissed

13

---

14   the first amended complaint, and therein to replead his counterclaim, Berry abandoned his counterclaim, which
     effectively dropped from the case."); *Honda Manufacturing of Indiana, LLC v. Custom Machines, Inc.,* No.

15   115CV00042TWPMPB, 2017 WL 4956427, at *10 (S.D. Ind. Nov. 1, 2017) ("Defendants replead their
     Affirmative Defenses, however, failed to replead their counterclaim in their Answer to the operative Second

16   Amended Complaint, accordingly, the Court determines that CMI has abandoned their counterclaim for breach
     of contract and the counterclaim is dismissed without prejudice.") (Emphasis in original omitted); *Essex Ins.*

17   *Co. v. Sheppard & Sons Const., Inc.,* No. CIV-12-1022-D, 2015 WL 11752917, at *10 (W.D. Okla. July 9,
     2015) (holding that because defendant's answer to plaintiff's amended complaint "supersedes" answer and

18   counterclaim to original complaint, and because defendant failed to replead in response to amended complaint
     counterclaim asserted in response to original complaint, defendant had no counterclaim pending at time court

19   granted plaintiff's motion for summary judgment); *Steadfast Ins. Co. v. Sec. Engineers, Inc.,* No. 2:14-CV-
     01124-JHE, 2015 WL 300412, at *1 (N.D. Ala. Jan. 22, 2015) (concluding that defendant abandoned

20   counterclaims by not reasserting them in its answer to plaintiff's amended complaint); *Pa. Nat' Mut. Cas. Ins.*
     *Co. v. Snider,* 996 F. Supp.2d 1173, 1180 n.8 (M.D. Ala. 2014) ("Because the Beale Defendants failed to

21   answer Penn National's amended complaint, and therefore, never reasserted their counterclaims, the Court finds
     that the Beale Defendants' duty to defend counterclaims w[as] abandoned.") (citation omitted); *Cairo Marine*

22   *Service, Inc. v. Homeland Ins. Co.,* No. 4:09CV1492, 2010 WL 4614693, at *1 (E.D. Mo. Nov. 4, 2010)
     ("There is some confusion among federal district courts regarding whether a party abandons or waives a

23   counterclaim by failing to re-plead it in its answer to an amended complaint."); *Bremer Bank, Nat. Ass'n v. John*
     *Hancock Life Ins. Co.,*Civil No. 06-1534 ADM/JSM, 2009 WL 702009, at *12-13 (D. Minn. Mar. 13, 2009)

24   (defendants' failure to reassert their previous counterclaim in response to amended complaint constituted
     abandonment of that counterclaim); *Designing Health, Inc. v. Erasmus,* No. CV-98-4758 LGB (CWX), 2001

25   WL 36239751, at *3 (C.D. Cal. Apr. 23, 2001) ("[T]he failure to replead or incorporate previously asserted
     counterclaims in a later answer to an amended complaint … [is] deemed to have waived any counterclaims not
     asserted in their answer to the [First Amended Complaint.").

26

Berry&Beckett

1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1  in response to amended complaint to protect against their waiver and to preserve them for

2  appeal, court declined to strike counterclaims).

3  **B.     Madrona was Entitled as of Right to File the CPA Counterclaim.**

4          Ten Bridges contends that Madrona was required to obtain leave from Court before

5  asserting its CPA counterclaim in its Answer to Ten Bridges' Second Amended Complaint.

6  Ten Bridges is wrong. The Court should agree that Madrona was entitled to assert the CPA

7  counterclaim as a matter of right, without obtaining leave of Court before doing so, and reject

8  Ten Bridges' procedural arguments that would result in the dismissal of the counterclaim.

9          There is no binding authority in this circuit or district concerning whether a defendant

10  is entitled to assert a new counterclaim in response to an amended complaint.[5] Both the

11  minority and majority rules, however, direct the conclusion that Madrona was entitled as a

12  matter of right to assert this new counterclaim without leave of Court.

13         Courts that consider whether a defendant is entitled to assert a new counterclaim in

14  response to an amended complaint usually address it in one of two ways. Courts that apply

15  the "permissive approach" hold that "once a plaintiff amends a complaint, the defendant

16  always has a right to amend to bring new counterclaims, without regard to the scope of the

17  amendments*." Elite Entertainment, Inc. v. Khela Brothers Entertainment*, 227 F.R.D. 444,

18  446 (E.D. Va. 2005). In other words, courts that follow the permissive approach hold that

19  "the defendant is allowed to plead anew to the amended complaint as though it were the

20  original complaint." *Sierra Development Co. v. Chartwell Advisory Group, Ltd.,* No.

21  13cv602 BEN, 2016 WL 6828200, at *3 (D. Nev. Nov. 18, 2016). Under the permissive

22

---

23  [5] *See, e.g., Childress v. Liberty Mut. Fire Ins. Co.,* No. C10-059 RSL, 2011 WL 2071200, at *1 (W.D. Wash.
24  May 25, 2011) ("The parties dispute whether defendants were required to obtain the Court's permission to
    include the new [counter]claims or whether they were permitted to do so as of right in response to plaintiff's
    second amended complaint. Federal Rule of Civil Procedure 15 does not directly address this situation. ... No
25  federal appellate court has addressed whether new claims filed in response to an amended pleading are
    permitted as of right or only with leave of court. ... [T]he case law is scant ....").

26

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

approach, Madrona was entitled as a matter of right, without seeking leave of Court, to assert the CPA counterclaim.

In contrast to the permissive approach, "the moderate approach" allows counterclaims to be asserted in response to an amended complaint as a matter of right and without leave of court "when the amended complaint changes the theory or scope of the case." *UDAP Industries, Inc. v. Bushwacker Backpack & Supply Co.,* No. CV 16-27-BU-JCL, 2017 WL 1653260, at *3 (D. Mont. May 2, 2017) (citation omitted); *Childress,* 2011 WL 2071200, at *1. District courts in the Ninth Circuit usually apply the moderate approach. *UDAP Industries, Inc.,* 2017 WL 1653260, at *3. *But see Bryant v. Mattel,* No. CV049049DOCRNBX, 2010 WL 11463865, at *5 (C.D. Cal. Oct. 5, 2010) ("Though some courts have only allowed the insertion of new counterclaims or affirmative defenses if the amended pleading changes the 'scope or theory' of the case, this equitable rule finds no place in the Federal Rules of Civil Procedure, and ignores the fact that amended pleadings completely supersede their predecessor(s). These courts focus on the unfairness of the responding party's dilatory addition of new affirmative defenses, but disregard the fact that the party that sought amendment (in this case Mattel) should have balanced the risks of amendment against the benefits, which include the ability to perfect its pleading and add new claims of its own.") (footnote collecting cases omitted).

Under the moderate approach, the breadth of the changes in the amended response should reflect the breadth of the changes in the amended complaint, but "this breadth requirement is one of proportionality and it does not require the changes to the response to be directly tied to the changes in the amended complaint." *Virginia Innovation Scis., Inc. v. Samsung Eles. Co.,* 11 F. Supp.3d 622, 633 (E.D. Va. 2014) (citation omitted). "Thus, if major changes are made to the complaint, then major changes may be made to the response." *Elite Entertainment, Inc.,* 227 F.R.D. at 446. "[T]here is no requirement that a defendant

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

specifically tailor its answer to the amended complaint; rather, moderate courts attempt to discern whether the defendant's answer affects the scope of the litigation in a manner commensurate with the amended complaint." *Southern New England Tel. Co.,* No. 3:04-cv-2075 (JCH), 2007 WL 521162, at *2 (D. Ct. Feb. 14, 2007) (citation omitted). "The rationale for this rule is an equitable consideration that if one party expands its case by adding new theories and claims, the other party may do likewise." *UDAP Industries, Inc.*, 2017 WL 1653260, at *3 (citation omitted). "The underlying premise to this approach is what is good for the goose is good for the gander." *Uniroyal Chem. Co., Inc. v. Syngenta Crop Protection, Inc.,* No. 3:02 CV02253 (AHN), 2005 WL 677806, at *2 (D. Ct. Mar. 23, 2005) (applying moderate approach).[6]

Here, Ten Bridges' Second Amended Complaint added entirely new claims against Madrona and Mr. Toth for intentional interference with its contract or business expectancy with Ms. Asano, and added new claims against Ms. Gore for intentional interference with its contract or business expectancies with Teresia Guandai and Justin Thomas.[7] Thus, Ten

---

[6] *See also Pereira v. Cogan,* No. 00 CIV.619 (RWS), 2002 WL 1822928, *4 (S.D.N.Y. Aug. 7, 2002) ("If the plaintiff expands its case by adding new theories or claims, it cannot complain if the defendant seeks to do the same by averring new counterclaims."); *Digital Privacy, Inc. v. RSA Sec., Inc.,* 199 F. Supp.2d 457, 459 (E.D. Va. 2002), *dismissed,* 56 F. App'x 497 (Fed. Cir. 2003) (where plaintiff's motion to amend its complaint shortly before the trial date was granted, the amended complaint changed the theory or scope of the case, in its answer to the amended complaint defendant reasserted six original counterclaims and five new ones, and defendant moved to strike the new counterclaims, court denied motion to strike: "Digital Privacy chose to amend its complaint six weeks before the scheduled trial date at its own peril."); *Tralon Corp. v. Cedarapids, Inc.,* 966 F. Supp.2d 812, 832 (N.D. Iowa 1997) ("In requesting permission to amend their complaint, plaintiffs asserted that it was necessary to amend the complaint to accurately reflect the status of the dispute. The addition of [defendant's] counterclaim serves the same purpose ...."), *aff'd* 205 F.3d 1347 (Table), 2000 WL 84400 (8th Cir. Jan. 21, 2000); *Bancroft & Sons Co. v. Lowenstein & Sons Inc.,* 50 F.R.D. 415, 418-19 (D. Del. 1970) ("[S]ince the amending pleader chooses to redo his original work, and receives the benefit of this nunc pro tunc treatment, he can hardly be heard to complain that claims filed against him are improper because they should have been asserted in response to his original pleading."); 3 Moore's Federal Practice § 15.17[6] (3d ed. 1997) (while "[n]ormally, a party responding to an amended pleading must plead in response to the amended pleading, and must request leave of court if it wishes to add any new counterclaims in its response to the amended pleading[,]... when a plaintiff's amended complaint changes the theory of the case, it would be inequitable to require leave of the court before the defendant could respond with appropriate counterclaims.").
[7] Like its agreement with Ms. Asano, Ten Bridges entered into agreements that are unlawful under RCW 63.29.350 with Ms. Guandai and Mr. Thomas. *See* Dkt. #47 at ¶¶ 16-32; *Guandai*, 474 P.3d at 1066-71,

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

Bridges' Second Amended Complaint significantly expanded the theories and scope of the case, thereby authorizing Madrona to assert its new CPA counterclaim in its Answer to the Second Amended Complaint as a matter of right, without first obtaining leave of Court. Under both the permissive and moderate approaches to the issue, Madrona's assertion of the new counterclaim was authorized and appropriate. The Court should therefore reject Ten Bridges' motion to strike or dismiss Madrona's CPA counterclaim on Ten Bridges' faulty procedural argument. *See Tate-Robertson v. Walmart, Inc.,* No. EDCV 19-27 JGB (SHKx), 2019 WL 6454392, at *2-3 (C.D. Cal. Aug. 13, 2019) (court denied plaintiff's motion to strike amended counterclaim asserted by defendant without leave of court in response to plaintiff's amended complaint); *City of West Sacramento, California v. R and L Business Management,* No. 2:18-cv-900 WBS EFB, 2019 WL 2249630 (E.D. Cal. May 23, 2019) (court denied motion to dismiss counterclaims asserted for first time in response to plaintiff's third amended complaint, holding that defendant was not required to obtain leave of court to file the new counterclaims).

**C.     If the Court Determines that Madrona Required Leave of Court to Assert its New Counterclaim, the Court Should Grant Madrona Such Leave.**

Even if the Court determines that Madrona needed leave of Court to assert its new CPA counterclaim as an amendment to its prior Answer, the Court should not strike or dismiss the counterclaim. Madrona had good cause for any alleged "delay" in asserting the counterclaim, and therefore the fact that the counterclaim was asserted after the deadline for filing amendments to pleadings in the Court's August 31, 2020 case scheduling Order (Dkt. #41) should not bar the counterclaim from being adjudicated in this case.

Madrona's CPA counterclaim is premised on its success in opposing Ten Bridges' King County Superior Court motions in the *Asano* action by which it sought to redeem Ms. Asano's former condominium that was purchased by Madrona at the King County Sheriff's



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

1   foreclosure sale, and its success in defeating Ten Bridges' appeal of those orders to the

2   Washington Court of Appeals. Dkt. #50, at 17-21. In its new counterclaim, Madrona seeks to

3   recover the attorney's fees and expenses it has incurred in the Superior Court and Court of

4   Appeals, and additional attorney's fees it may incur related to those proceedings. *Id.* at 21-22.

5   Although the Superior Court orders were entered in 2019, the Court of Appeals did not issue

6   its Opinion affirming the Superior Court's denial of Ten Bridges' motions until November 2,

7   2020, three days before Ten Bridges filed its Second Amended Complaint and just seventeen

8   days before Madrona asserted the new counterclaim. *Id.* at 20; *Ten Bridges v. Guandai,* 474

9   P.3d at 1060.

10          Both the Superior Court and the Court of Appeals ruled that Ten Bridges' agreements

11   with Ms. Asano violated RCW 63.29.350 and were therefore illegal, void, and unenforceable.

12   A violation of RCW 63.29.350 constitutes a per se unfair or deceptive act in trade or

13   commerce, or is an unfair method of competition, which impacts the public interest for

14   purposes of Washington's CPA. RCW 63.29.350(2). Had the Court of Appeals reversed the

15   Superior Court orders, there clearly would be no legal basis for Ten Bridges' CPA

16   counterclaim.

17          Under the Court's August 31, 2020 scheduling Order, the deadline for amending

18   pleadings was September 30, 2020. If Madrona was not entitled to assert its new CPA

19   counterclaim as a matter of right, without requiring leave of Court, then Fed. R. Civ. P. 16

20   governs whether it should be permitted to assert the CPA counterclaim. *Espinoza v. City of*

21   *Seattle,* No. C17-1709JLR, 2019 WL 5079950, at *2 (W.D. Wash. Oct. 9, 2019). "Under

22   Rule 16, a party must show 'good cause' for amendment in order to justify modifying the

23   case schedule. *Id.* "Rule 16(b)'s 'good cause' standard primarily considers the diligence of

24   the party seeking the amendment." *Id.* (quoting *Johnson v. Mammoth Recreations, Inc.,* 975

25   F.2d 604, 609 (9th Cir. 1992)). "To show 'good cause' a party must show that it could not

26

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1   meet the deadline imposed by the scheduling order despite its diligence." *Id.*

2         Madrona's assertion of its CPA counterclaim before the Court of Appeals' decision

3   affirming the Superior Court's orders holding that Ten Bridges' agreements with Ms. Asano

4   violate RCW 63.29.350 would have been premature. Once the Court of Appeals issued its

5   opinion affirming the Superior Court, Madrona nearly immediately asserted its CPA

6   counterclaim. Madrona acted diligently in asserting its CPA counterclaim, and the Court

7   should hold that it has exercised good faith in doing so and that good cause has been shown

8   to allow the amendment. *See Espinoza,* 2019 WL 5079950, at *3 (holding that plaintiff had

9   shown good cause for amendment of his complaint to assert new cause of action after the

10   pleading amendment deadline, where conduct giving rise to additional claim did not occur

11   until after deadline).

12         If a party is able to show good cause for purposes of Rule 16, the Court must then

13   determine whether amending the pleading is proper under Fed. R. Civ. P. 15. *Id.* "Under Rule

14   15, the court should 'freely give' leave to amend a pleading 'when justice so requires.'" *Id.*

15   (quoting Fed. R. Civ. P. 15(a)(2)). This policy is "to be applied with extreme liberality."

16   *Eminence Capital, LLC v. Aspeon, Inc.,* 316 F.3d 1048, 1051 (9th Cir. 2003).

17         Five factors are used to assess the propriety of a motion for leave to amend: (1) bad

18   faith, (2) undue delay, (3) prejudice to the opposing party (4) futility of amendment, and (5)

19   whether the party has previously amended its pleading. *Espinoza,* 2019 WL 5079950, at *3

20   (citation omitted). Of these factors, the consideration of prejudice to the opposing party

21   carries the greatest weight. *Eminence Capital, LLC,* 316 F.3d at 1052 (9th Cir. 2003).[8]

22         Here, there is no allegation that Madrona's counterclaim is asserted in bad faith, nor

23   could there be. There was no undue delay, as the Court of Appeals issued its opinion a mere

24

25

26

---

[8] Delay alone is generally insufficient justification for denying a motion to amend to assert an omitted counterclaim unless the court also specifically finds prejudice to the opposing party, bad faith of the party seeking to amend, or futility of amendment. *Bowles v. Reade,* 198 F.3d 752, 758 (9th Cir. 1999).

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

seventeen days before Madrona pleaded the counterclaim. There will be no prejudice to Ten Bridges if the counterclaim is permitted, as the discovery deadline is still nine months away, trial is over a year away, and Ten Bridges has not claimed the new counterclaim has prejudiced it. The amendment is not futile, as will be discussed below. And Madrona has not previously amended its pleading. Accordingly, if leave of Court was required for Madrona to assert its CPA counterclaim, the Court should now grant Madrona such leave.

**D.      Madrona Did Not Waive its CPA Counterclaim by Waiting to Assert it in Response to Ten Bridges' Second Amended Complaint.**

Citing *Pochiro v. Prudential Ins. Co.,* 827 F.2d 1246 (9th Cir. 1987), Ten Bridges argues that if Madrona's CPA counterclaim is a compulsory counterclaim, Madrona waived the counterclaim by not asserting it as part of its Answer to Ten Bridges' First Amended Complaint. *Pochiro* does not so hold, and Ten Bridges is incorrect. In fact, the applicable legal authority is nearly 180 degrees to the contrary.

In *Pochiro,* the parties had previously litigated a state court action to judgment concerning some of the same employment-related disputes that were at issue in the federal action. In the prior action, Prudential had been the plaintiff, and had prevailed. Prudential moved to dismiss the Pochiros' claims asserted in the federal action, arguing that the claims had been compulsory counterclaims in the prior state court action, and that the Pochiros' failure to assert the counterclaims in the prior action barred them from asserting them in the second case. The federal district court agreed that the Pochiros' claims asserted in the second action were compulsory counterclaims in the state court action, and that the failure to assert them in that case barred them, under Arizona's res judicata law, from asserting them in the second case. *Pochiro,* 827 F.2d at 1249-50. The district court's ruling was affirmed on appeal. *Id.* at 1253. The decision turned exclusively on the application of Arizona state law on res judicata, which requires a prior final judgment between the same parties. *Id.* Because



1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

there was no prior lawsuit between Madrona and Ten Bridges in which Madrona's CPA counterclaim could have been asserted against Ten Bridges, *Porchiro* is inapplicable.

Indeed, the great weight of authority supports the conclusion that if Madrona's CPA counterclaim is a compulsory counterclaim, this is an additional factor that supports allowing it to be asserted in this case. *See Spartan Grain & Mill Co. v. Ayers,* 517 F.2d 214, 221 (5th Cir. 1975) ("The argument for allowing amendment [to permit the assertion of an omitted counterclaim] is especially compelling when, as here, the omitted counterclaim is compulsory."); *Burger v. Kuimelis,* 325 F. Supp.2d 1026, 1045 (N.D. Cal. 2004) ("[A]n amendment to the counterclaim is allowed so long as the claim in the amendment arises out of the same occurrence as the facts in the complaint."); *Target Tech. Co., LLC v. Williams Advanced Materials, Inc.,* No. SACV041083DOCMLGX, 2008 WL 11342647, at *3 (C.D. Cal. May 23, 2008) (applying liberal standard for amendment to assert counterclaim under Fed. R. Civ. P. 13(f) for omitted compulsory counterclaim; "The rationale favoring amendment applies with particular force to compulsory counterclaims because Defendant cannot bring those claims in a separate action."). One reason for this is that a defendant would lose the ability to litigate its claims against the plaintiff if the defendant is prevented from asserting a compulsory counterclaim. *UDAP Industries, Inc.,* 2017 WL 1653260, at *5; *see also BDB & Sons Moving, Inc. v. Transguard Ins. Co.,* No. 08-3465, 2010 WL 4659155, at *2 (E.D. Pa. Nov. 16, 2010) (recognizing that because omitted compulsory counterclaims "can later be barred by res judicata," this weighs in favor of granting leave to amend to permit assertion of omitted counterclaims).

Ten Bridges' citation to *Lexington Ins. Co. v. Langie,* C12-946 TSZ, C12-1756 TSZ, C12-1785 TSZ, 2014 WL 3563380, W.D. Wash. July 18, 2014), in support of its argument that Madrona waived its CPA counterclaim by not asserting it in its response to the First Amended Complaint, displays a fundamental misreading of that case. Indeed, in *Langei,*

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1
Judge Zilly pointed out that there was still sufficient time there for the defendant to amend its

2
answer to assert the wrongful death counterclaim that the plaintiff was arguing had been

3
waived. 2014 WL 3563380, at *3 ("[W]hile the federal action in which the counterclaim

4
should have been interposed remains pending, leave of the Court may be sought to amend the

5
answer to include the omitted counterclaim. The Port fails to explain why, if the Estates were

6
to move for leave to amend to assert wrongful death counterclaims, the Court would not

7
grant such motion.") (footnotes omitted).

8
Simply put, there is no legal authority that supports the conclusion that Madrona's

9
failure to assert its CPA counterclaim as part of its Answer to Ten Bridges' First Amended

10
Complaint constituted a waiver of the claim. While the Court has the discretion under Fed. R.

11
Civ. P. 15(a)(2) to deny leave for Madrona to assert the counterclaims (if Court leave is

12
required), the great weight of authority and the equities support leave being granted.

13
**E.** **The Court has Subject Matter Jurisdiction over Madrona's CPA Counterclaim.**

14
The Court has subject matter jurisdiction over Madrona's CPA counterclaim on two

15
bases. First, Madrona meets the independent diversity jurisdiction threshold of $75,000. 28

16
U.S.C. § 1332(a). Madrona seeks over $41,500 on its CPA counterclaim for the attorney's

17
fees and expenses it has incurred to date defending against Ten Bridges' attempt to redeem

18
Ms. Asano's former condominium with the invalid Deeds it received from Ms. Asano. *See*

19
Beckett Decl. at 3-4.[9] In addition, Madrona has requested a treble damages award of $25,000

20
under RCW 19.86.090. Dkt. #50 at 25. This amount must be considered in determining

21

---

22
[9] Although Madrona's CPA counterclaim does not identify a specific amount of damages it seeks to recover, if the Court deems this assertion required, it can and should be added to the counterclaim by way of amendment.

23
*See Moss v. U.S. Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("Dismissal [on a Rule 12(b)(6) motion] is improper unless it is clear, upon de novo review, that the complaint could not be saved by any amendment.");

24
*Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) (where trial court dismisses plaintiff's complaint for failure to state a claim, the plaintiff should be given leave to amend to state a claim if it can). And if Ten Bridges files a Petition for Discretionary Review of the Court of Appeals decision affirming

25
the trial court orders, Madrona will be required to file an Answer to the Petition, which will increase its attorney's fee claim by at least $3,000. Beckett Decl. at 4.

Berry&Beckett
LLP

26

DEFENDANTS' RESPONSE TO
TEN BRIDGES, LLC'S MOTION
TO DISMISS COUNTERCLAIMS - 16
(Case No. 2:19-cv-01237-JLR)

1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1   whether the $75,000 diversity threshold amount is met. *Lamb v. Amalgamated Labor Life*

2   *Ins. Co.,* 602 F.2d 155, 159 (8th Cir. 1979) (If punitive damages sought by plaintiff are

3   legally recoverable under state law, they are required to be considered in determining

4   whether claim meets diversity threshold amount). And finally, if Madrona prevails on its

5   CPA counterclaim, it will be entitled to recover reasonable attorney's fees and costs of suit.

6   RCW 19.86.090. Such attorney's fees will easily exceed $10,000. Beckett Decl. at 4. *See*

7   *Burnside Terminal v. SSM Carbon,* 772 F. Supp.295 (M.D. La. 1991) (if statute provides for

8   reasonable attorney's fees to be awarded to prevailing party, the estimated amount of

9   attorney's fees that will be incurred in litigation must be considered in determining whether

10  claim meets diversity threshold amount). Accordingly, the $75,000 threshold amount

11  required by 28 U.S.C. § 1332(a) is easily met, and the Court has diversity jurisdiction to

12  consider Madrona's CPA counterclaim.[10]

13          The Court also has subject matter jurisdiction to consider Madrona's CPA

14  counterclaim under 28 U.S.C. § 1367, the supplemental jurisdiction statute. Ten Bridges

15  argues that if the Court deems the CPA counterclaim to be a permissive counterclaim, there

16  is no "ancillary jurisdiction," and cites three cases from other federal jurisdictions to support

17  this argument, all from well before 1990. However, in 1990 Congress enacted 28 U.S.C.

18  §1367, which did away with "ancillary" and "pendent' jurisdiction analyses. Further, to

19  determine whether there is supplemental jurisdiction, Section 1367 does away with the

20  distinction between compulsory and permissive counterclaims. Instead, whether the Court

21  has supplemental jurisdiction to consider a counterclaim rests on whether the counterclaim is

22  "so related to claims in the action [for which the Court has] original jurisdiction that they

23  form part of the same case or controversy under Article III of the United States Constitution."

24  _____

25  [10] There is complete diversity between the parties, as Ten Bridges is an Oregon limited liability company, and
    all of the defendants are Washington citizens or Washington limited liability companies. Dkt. #47 at ¶¶ 3-7.

26

DEFENDANTS' RESPONSE TO
TEN BRIDGES, LLC'S MOTION
TO DISMISS COUNTERCLAIMS - 17
(Case No. 2:19-cv-01237-JLR)

Berry&Beckett
    LLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

28 U.S.C. § 1367(a); *see also Global NAPs, Inc. v. Verizon New England, Inc.,* 603 F.3d 71, 87 (1st Cir. 2010); *Jones v. Ford Motor Credit Co.,* 358 F.3d 205, 212 (2nd Cir. 2004); *Channell v. Citicorp Nat. Servs., Inc.,* 89 F.3d 379, 385 (7th Cir. 1996). Because it fails to consider the significant change in the law of supplemental jurisdiction that occurred in 1990, Ten Bridges' analysis and arguments are fatally flawed. *Llanes v. Zalewski,* No. 3:18-cv-00267-SB, 2019 WL 1509992 (D. Ore. Apr. 5, 2019) ("Now, both compulsory and permissive counterclaims may satisfy the test for supplemental jurisdiction because § 1367 supersedes case law on supplemental jurisdiction that had distinguished between compulsory and permissive counterclaims.") (citation and internal quotation omitted); *Exxon Mobile Corp. v. Allapattah Servs., Inc.,* 545 U.S. 546, 558-59, 125 S.Ct. 2611 (2005) ("Nothing in §1367 indicates a congressional intent to recognize, preserve, or create some meaningful, substantive distinction between the jurisdictional categories [courts] have historically labeled pendent and ancillary.").

While the scope of Section 1367(a)'s jurisdictional reach is "unsettled," *see Jones,* 358 F.3d at 212 n.5, it is at least as broad as the pre-1990 test, which required that state and federal claims "derive from a common nucleus of operative fact." *Koumarian v. Chase Bank USA, N.A.,* No. C-08-4033 MMC, 2008 WL 5120053, at *2-3 (N.D. Cal. Dec. 3, 2008) (citation omitted). Thus, in *Koumarian,* where the plaintiff sued the defendant for an alleged FDCPA violation, the district court exercised supplemental jurisdiction over the defendant's state law counterclaim for breach of contract and for money had and received, because all of the claims derived "from a common nucleus of operative fact." *Id.*

In *Campos v. Western Dental Servs., Inc.,* 404 F. Supp.2d 1164, 1169 (N.D. Cal. 2005), where the plaintiff asserted an FDCPA claim, the district court held that supplemental jurisdiction existed for the defendant's state law counterclaim to recover on the underlying debt, as both the plaintiff's claim and the defendant's counterclaim both "related to the single

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

debt incurred by plaintiff." And supplemental jurisdiction over a defendant's state law counterclaim also exists where there is a "loose factual connection between the claims." *Baer v. First Options of Chicago, Inc.,* 72 F.3d 423, 424 (7th Cir. 1995); *cf. Kuba v. 1-A Agricultural Ass'n,* 387 F.3d 850, 855 (9th Cir. 2004) ("Nonfederal claims are part of the same 'case' as federal claims when they derive from a common nucleus of operative fact and are such that a plaintiff would ordinarily be expected to try them in one judicial proceeding.").

In *Llanes,* the plaintiff asserted a claim to recover wages under the Fair Labor Standards Act. The defendant alleged that the plaintiff, while its employee, secretly ran her own culinary business out of the defendant's facility, and asserted counterclaims for quantum meruit, conversion and unjust enrichment. The plaintiff moved to dismiss the counterclaims for lack of subject matter jurisdiction. The defendant argued that the Oregon district court should exercise supplemental jurisdiction over the state law counterclaims because both the claims and the counterclaims required evidence about the number of hours the employee allegedly worked for her own business rather than for the defendant. The court agreed, concluding that the claims and counterclaims shared a common nucleus of operative fact, and exercised supplemental jurisdiction over the defendant's state law counterclaims, stating that "the values of economy, convenience, fairness, and comity weigh[ed] in favor of retaining jurisdiction" over the counterclaims, that dismissal of the counterclaims "despite the significant factual overlap with [plaintiff's] claims would waste judicial resources on duplicative proceedings," and that it would be "more convenient for the parties to adjudicate" the claims and counterclaims in one forum. 2019 WL 1509992, at *2-3.

Ten Bridges seeks recovery from Madrona for intentional interference with contract and business expectancy and for abuse of process, for, *inter alia,* Madrona's conduct in the *Asano* Superior Court action. Dkt. #47 at ¶¶ 34-35, 37-38, 76-79. Madrona's CPA

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

counterclaim seeks to recover the attorney's fees it incurred in the Superior Court action, and to defend at the Court of Appeals the orders entered in its favor in the Superior Court. Dkt. #50 at 17-22. Ten Bridges' claims, and Madrona's CPA counterclaim, clearly share a common nucleus of operative fact: what occurred in the *Asano* litigation. Thus, supplemental jurisdiction exists for the Court to consider Madrona's CPA counterclaim pursuant to 28 U.S.C. § 1367, and the Court should exercise its discretion to do so.

**F.    Madrona Has Plausibly Alleged That It Suffered "Injury" for Purposes of its CPA Counterclaim.**

Ten Bridges contends that Madrona has not asserted a plausible CPA counterclaim against it because the only "injury" it claims to have sustained is the attorney's fees it incurred (and continues to incur) in the *Asano* state court litigation. Motion at 6-7. Ten Bridges claims that attorney's fees do not constitute "injury" under the CPA. *Id.* at 7. Again, however, Ten Bridges misunderstands the applicable principles. The Court should reject Ten Bridges' argument.

To prove a violation of the CPA, a party must show that its opponent (1) committed an unfair or deceptive act (2) in trade or commerce (3) which affects the public interest and which (4) proximately resulted in (5) injury to the proponent's business or property. *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins. Co.,* 105 Wn.2d 778, 784-85, 719 P.2d 531 (1986).[11]

RCW 19.86.020 provides that unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful; RCW 19.86.090 provides in pertinent part that "Any person who is injured in his or her business or property by a violation of RCW 19.86.020 … may bring a civil action in superior court to … recover

---

[11] Ten Bridges has not challenged any of the other factors required to prove a CPA claim. Under RCW 63.29.350(2), a party's violation of RCW 63.29.350(1) constitutes an unfair or deceptive act in trade or commerce and unfair method of competition for the purposes of the CPA, leaving only the injury and causation elements needing to be proved.

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA  98122
(206) 441-5444 FAX (206) 838-6346

the actual damages sustained by him or her ...."

A violation of RCW 63.29.350(1) is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the CPA, and "vitally affect[s] the public interest." RCW 63.29.350(2). Therefore, the first three elements of a CPA claim are met here simply by virtue of Ten Bridges' violation of RCW 63.29.350.

Ten Bridges argues that Madrona cannot recover on a CPA claim against Ten Bridges because Madrona was not a party to the illegal Deeds between Ten Bridges and Ms. Asano and therefore has no standing to sue Ten Bridges for a CPA claim based on the Deeds. But this argument ignores the plain language of RCW 19.86.090, which provides that "*Any person* who is injured in his or her business or property by a violation of RCW 19.86.020" may bring a civil action to recover the damages sustained by it. (Emphasis supplied). There can be no dispute that Madrona incurred attorney's fees solely due to Ten Bridges' improper attempts to redeem the Asano condominium using the invalid Deeds. The Washington Supreme Court in *Panag v. Farmers Ins. Co. of Washington,* 166 Wn.2d 27, 38, 204 P.3d 885 (2009), confirmed that a private CPA claim does not require proof of a consumer transaction between the parties, under the guise of a separate standing inquiry. Indeed, a private CPA claim may be brought by one who is not in a consumer or other business relationship with the actor against whom the claim is brought, and that there is no standing requirement; if a CPA plaintiff can establish all five *Hangman Ridge* factors, it should prevail on its claim. *Id.* at 38, 43-44.

The CPA is to be "liberally construed that its beneficial purposes may be served." *Panag,* 166 Wn.2d at 37. Similarly, the "injury" element for a CPA claim is "broadly defined." *Folweiler Chiropractic, PS v. Am. Family Ins. Co.,* 5 Wn. App.2d 829, 839, 429 P.3d 813 (2018). The "injury" requirement for a WCPA violation is met upon proof that the proponent's property or money interest is diminished because of the unlawful conduct. *Id.* at

Berry&Beckett
PLLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

1   57-58 (citation omitted). "[T]he business and property injuries compensable under the CPA

2   are relatively expansive." *Frias v. Asset Foreclosure Servs., Inc.*, 181 Wn.2d 412, 431-32,

3   334 P.3d 529 (2014). A party asserting a CPA claim who proves it incurred expenses it

4   would not otherwise have incurred due to the alleged unfair or deceptive act or practice or

5   unfair method of competition has proved the "injury" element of a CPA claim. *Id.* at 62.

6   Whether a CPA claimant has suffered injury to business or property sufficient to support a

7   CPA claim is a question of fact. *Id.* at 65.

8   　　　Ten Bridges, citing *Panag* and *Demopolis v. Galvin*,[12] contend that "[a]ttorney's fees

9   are not an 'injury' under the WCPA." Motion at 7. This assertion is overly broad and not

10  entirely correct. While attorney's fees incurred in instituting and in litigating a CPA claim do

11  not constitute "injury" for purposes of a CPA claim,[13] attorney's fees in some instances do

12  constitute injury sufficient to support a CPA claim. *See, e.g. Panag,* 166 Wn.2d at 62 (fees

13  incurred to consult attorney to investigate nature of alleged debt constitute "injury" under

14  CPA).

15  　　　The attorney's fees incurred by Madrona in the *Asano* litigation were not incurred to

16  institute or litigate a CPA claim; they were incurred to protect Madrona's right to retain the

17  former Asano condominium from Ten Bridges' efforts to acquire it by use of the unlawful,

18  unenforceable, and void Deeds Ten Bridges obtained as part of its illegal transaction with

19  Ms. Asano. In fact, these attorney's fees incurred by Ten Bridges had nothing to do with its

20  CPA claim asserted in its counterclaim in this action; thus, the attorney's fees incurred by

21  Madrona in the Asano litigation *do* constitute "injury" sufficient to support Madrona's CPA

22  claim against Ten Bridges.

23  　　　In *Velasco v. Discover Mortgage Company,* No. 45642-7-II, 187 Wn. App. 1003,

24  ───────────────
    [12] 57 Wn. App. 47, 55, 786 P.2d 804 (1990).

25  [13] *See, e.g., Panag,* 166 Wn.2d at 60; *Sign-O-Lite Signs v. DeLaurenti Florists, Inc.,* 64 Wn. App. 553, 564, 825 P.2d 714 (1992).

26

Berry&Beckett
LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

2015 WL 1753677 (Ct. App. Div. 2 Apr. 14, 2015) (unpublished),[14] the Velascos sued Wells

Fargo Bank, the loan servicer and holder of the promissory note evidencing the loan for their

home, for violations of, *inter alia*, the CPA based on Wells Fargo's conduct while the

Velascos and Wells Fargo were engaged in discussions concerning a potential modification

of that loan. Wells Fargo moved to dismiss the claim, in part arguing that the Velascos had

not suffered "injury" sufficient to support a CPA action. But the record showed that the

Velascos had "hired an attorney to challenge Wells Fargo's conduct and to fight the

foreclosure actions triggered by Wells Fargo's conduct and to fight the foreclosure actions

triggered by Wells Fargo's refusal to fairly process the Velascos' loan modification

requests." *Id.* at *7. The Washington Court of Appeals held that the fees incurred and paid by

the Velascos due to Wells Fargo's unfair or deceptive acts or practices apart from the CPA

litigation constituted economic injury under the CPA, and that the evidence created a genuine

issue of material fact regarding the causal connection between those acts or practices and the

Velascos' payment of attorney's fees. *Id.* The Court of Appeals accordingly reversed the trial

court's dismissal of the Velascos' CPA claim. *Id.* at *7, *12.

       While it is an unpublished case, the Washington Court of Appeals' reasoning in

*Velasco* is persuasive. There is no reason why attorney's fees incurred by a victim of an

actor's unfair or deceptive act or practice, or unfair method of competition, should be treated

any differently than any other expense caused by that conduct, when the expense was not

incurred to institute or litigate the CPA claim itself. Further, considering attorney's fees to

constitute "injury" sufficient to support a CPA claim, as the Court of Appeals did in *Velasco*

and as Madrona requests the Court to do here, is consistent with Washington's "ABC

Doctrine," which provides that when the natural and proximate consequences of a wrongful

act of a defendant involves the plaintiff in other litigation, "there may as a general rule be a

---

[14] A copy of *Velasco* is attached to this response memorandum, in compliance with Washington GR 14-1.

Berry&Beckett
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

recovery of damages for reasonable expenses incurred in the [other] litigation, including attorney's fees." *Manning v. Loidhammer*, 13 Wn. App. 766, 769, 538 P.2d 136 (1975).

As in *Velasco*, the attorney's fees incurred and paid by Madrona in the Asano litigation had nothing to do with initiating or litigating their CPA counterclaim asserted in this action. They were incurred for an entirely different purpose: to defend against Ten Bridges' improper efforts to redeem Ms. Asano's former condominium from Madrona using invalid Deeds. Therefore, those fees constitute "injury" for purposes of proving Madrona's CPA counterclaim. And Madrona would not have incurred those fees but for Ten Bridges' violations of RCW 63.29.350 in entering into the illegal contract with Ms. Asano and procuring the illegal, invalid, and unenforceable Deeds, and but for Ten Bridges' improper assertions that it had the right to redeem the condominium from Madrona. Thus, Ten Bridges' unfair or deceptive acts or practices, or its unfair methods of competition, proximately caused Madrona's injury. *Indoor Billboard/Washington, Inc. v. Integra Telecom of Washington, Inc.*, 162 Wn.2d 59, 83, 170 P.3d 10 (2007). Accordingly, all five *Hangman Ridge* elements necessary to prove Madrona's counterclaim are present, and Ten Bridges' Rule 12(b)(6) motion to dismiss the counterclaim should be denied.

## IV. CONCLUSION

Madrona has asserted a plausible CPA counterclaim against Ten Bridges, and there is no factual or legal basis for the Court to dismiss it. The Court should deny Ten Bridges' motion to dismiss in its entirety.

DATED THIS 4th day of January, 2021.

BERRY & BECKETT, PLLP

*/s/ Guy Beckett*
Guy W. Beckett, WSBA #14939
Attorneys for Defendants

Berry&Beckett LLP
1708 Bellevue Avenue
Seattle, WA 98122
(206) 441-5444 FAX (206) 838-6346

Velasco v. Discover Mortg. Co., Not Reported in P.3d (2015)

187 Wash.App. 1003

187 Wash.App. 1003

NOTE: UNPUBLISHED OPINION, SEE WA R GEN GR 14.1
Court of Appeals of Washington,
Division 2.

# Mark A. VELASCO and Danika E. Velasco, and the marital community thereof, Appellants,
v.
# DISCOVER MORTGAGE COMPANY; Community Lending, Inc.; Northwest Trustee Services, Inc.; Wells Fargo Bank; HSBC Bank USA National Association as Trustee for WFMBS 2007–011, Wells Fargo Home Mortgage, Merscorp, Inc., a Delaware Corporation; Mortgage Electronic Registration Systems, Inc., a Delaware Corporation; the property located at 136 Sargent Road, Winlock, Washington; Does 1–1000; Roes 1–20; General Retirement System of the City of Detroit; New Orleans Retirement System, Respondents.

No. 45642–7–II.
|
April 14, 2015.

Appeal from Lewis County Superior Court; Hon. James W. Lawler, J.

**Attorneys and Law Firms**

Jill J. Smith, Natural Resource Law Group, PLLC, Seattle, WA, for Appellants.

John M. Thomas, RCO Legal, P.C., Portland, OR, Abraham K. Lorber, Attorney at Law, David Christopher Spellman, Lane Powell PC, Seattle, WA, for Respondents.

UNPUBLISHED OPINION

MAXA, P.J.

*1 Mark and Danika Velasco appeal the trial court's dismissal on summary judgment of their multiple claims relating to their efforts to modify the loan on their residence and the attempt to foreclose on the deed of trust securing the that loan. The Velascos filed suit against Wells Fargo Bank, the loan servicer and holder of the promissory note evidencing the loan; Mortgage Electronic Registration System (MERS), the designated beneficiary of the deed of trust; HSBC Bank, the assignee of MERS's beneficial interest in the deed of trust and Wells Fargo's principal; and Northwest Trustee Services (NWTS), the successor trustee that initiated foreclosure proceedings on the deed of trust.

The Velascos argue that the trial court erred in granting summary judgment because they had valid claims for (1) violation of the Deed of Trust Act (DTA), chapter 61.24 RCW, because NWTS was not authorized to initiate foreclosure proceedings; (2) violation of the Consumer Protection Act (CPA), based on Wells Fargo's conduct during the loan modification process and on the conduct of MERS, NWTS, Wells Fargo, and HSBC regarding the identity of the deed of trust beneficiary; (3) negligence, based on a duty of care arising from the CPA; (4) quiet title on their property because the transfer of their

promissory note into a security pool discharged the note; and (5) declaratory relief.

We hold that (1) the Velascos cannot bring DTA claims as a matter of law because no party has foreclosed on their property, (2) the trial court erred in granting summary judgment on the Velascos' CPA claim against Wells Fargo because there is a genuine issue of material fact as to whether Wells Fargo's loan modification conduct was unfair or deceptive, (3) the trial court properly dismissed the remainder of the Velascos' CPA claims because they failed to demonstrate that there were unfair or deceptive practices and/or that there was a causal link between the act and their alleged damages, (4) the trial court properly dismissed the Velascos' negligence claim because the respondents did not owe them a duty of care, (5) the trial court properly dismissed the Velascos' quiet title claim because the transfer of their promissory note into a security pool did not discharge their note, and (6) the Velascos waived their declaratory relief claim by failing to present argument on it.

Accordingly, we reverse the trial court's summary judgment dismissal of the Velascos' CPA claim against Wells Fargo relating to the loan modification process, but we affirm the trial court's summary judgment dismissal of all the Velascos' remaining claims.

FACTS

*Promissory Note and Deed of Trust*
In June 2007, the Velascos borrowed $577,400 from ComUnity Lending to refinance their property in Lewis County, and they executed a promissory note for the loan. The note was secured by a deed of trust, which listed the Velascos as borrowers, ComUnity as lender, MERS as beneficiary, and Lewis County Title Company as trustee. The deed of trust provided for the trustee's nonjudicial foreclosure of the property if the Velascos defaulted on the promissory note.

**\*2** A few weeks later, ComUnity indorsed the note to Wells Fargo. At all relevant times in this case, Wells Fargo was the Velascos' loan servicer. Wells Fargo apparently was acting as HSBC's agent. At some point, ownership of the loan was transferred to the "WFMBS 2007–011 trust," of which HSBC was the trustee. Clerk's Papers (CP) at 60. Wells Fargo retained possession of the promissory note. In January 2012, Wells Fargo indorsed the promissory note in blank. But Wells Fargo still had possession of the promissory note at the time of the summary judgment motion.

*Initial Loan Modification Process*
Mark Velasco submitted a lengthy declaration describing the circumstances surrounding the Velascos' claims. In December 2007, catastrophic flooding in Lewis County impacted the Velascos' ability to make their January 2008 loan payment. Mark[1] contacted Wells Fargo and was informed that the Velascos did not need to make another payment for 90 days because they were victims of a natural disaster. When Mark received the March 2008 statement in midFebruary, it showed that the Velascos were required to pay the three missed payments in a balloon payment along with their March payment. Mark claims that he was not informed that they would need to make a balloon payment if they suspended payments for 90 days.

The Velascos had not recovered financially by March 2008, so Mark contacted Wells Fargo in an attempt to modify their mortgage. Wells Fargo told him to file a financial hardship letter with Wells Fargo's Loss Mitigation Department, which he did. Wells Fargo also told Mark not to make their monthly payments because that would negatively impact Wells Fargo's review process of their financial documents. Following Wells Fargo's review process, the Velascos were put on a 90–day payment plan, also known as a "Special Forbearance Agreement." CP at 201. Under this agreement, the Velascos were required to pay the full amount of the loan payments ($3,127.58) for June, July, and August of 2008 to be considered for a loan modification

Velasco v. Discover Mortg. Co., Not Reported in P.3d (2015)

187 Wash.App. 1003

In August 2008, Mark informed Wells Fargo that the Velascos could not make a required balloon payment on September 1. Wells Fargo instructed the Velascos to resubmit their financial statements and draft a new hardship letter, which they did on August 26. Wells Fargo stated that once it received this information it would determine whether the Velascos qualified for a loan modification. When Mark called two weeks later, Wells Fargo told him that the Velascos' house had been put into foreclosure status because they had broken the plan. Wells Fargo also referred to the fact that the Velascos had not made the required balloon payment.

Mark challenged the foreclosure status, questioning how Wells Fargo could put the Velascos into foreclosure when they were in the middle of the loan modification process. Wells Fargo continued to state that the foreclosure was started because the Velascos had broken the plan. Later Mark discovered that the real reason Wells Fargo had started the foreclosure was that it had not received the updated financial information the Velascos had faxed. Mark discovered that the fax number he had been using since March 2008 to send information had been changed but was still accepting faxes.

*Foreclosure Proceedings*
**\*3** On October 15, 2008, NWTS-as the authorized agent of HSBC-sent the Velascos a notice of default. At that time, NWTS had not yet been appointed as the successor trustee of the deed of trust.

On November 17, 2008, MERS, as the purported deed of trust beneficiary, executed an assignment of its beneficial interest in the Velascos' deed of trust to "HSBC Bank USA, National Association, as Trustee for WFMBS 2007–011." CP at 193. Earlier, on November 3, 2008, Wells Fargo, as agent of HSBC, had appointed NWTS as the successor trustee under the deed of trust. Both of these documents were recorded on November 19, 2008.

When the Velascos did not cure their default, NWTS recorded a notice of trustee's sale in December 2008, which scheduled a foreclosure sale of the property for March 2009. Mark began contacting attorneys and filed a claim with the Office of the Comptroller of the Currency (OCC) to challenge the foreclosure. For reasons that are not in the record, the trustee's sale later was postponed indefinitely.

*Subsequent Loan Modification Activities*
The Velascos entered into a second 90–day special forbearance agreement for April, May, and June of 2009 in which they made payments of $2,000 per month. Wells Fargo told Mark that once they completed the plan, there would be another loan modification review. A Wells Fargo employee told Mark that she was in direct contact with the investors who owned the loan, so a decision could be made quickly. The Velascos then were put on a third 90–day forbearance agreement starting in July 2009 with monthly payments of $2,588.51 and a fourth 90–day plan starting October 2009 with monthly payments of $3,067.44. But Wells Fargo never offered them a permanent loan modification. Wells Fargo continued to state that it was denying the Velascos' applications for loan modifications because the investors would not allow modification. Wells Fargo claimed that it did not have the ability to make decisions on the loan.

In February 2010, NWTS recorded a discontinuance of the trustee's sale cancelling the foreclosure sale. The record does not show why the foreclosure proceedings were cancelled.

The Velascos contacted OCC at least twice regarding their complaints over the summer of 2010. Following OCC's request, Wells Fargo sent the Velascos a response regarding their "rescission and loan modification requests." CP at 284. The record is unclear as to the effect of these communications.

Velasco v. Discover Mortg. Co., Not Reported in P.3d (2015)

187 Wash.App. 1003

*Lawsuit and Summary Judgment*

Mark alleges that he eventually learned that Wells Fargo had lied to him about their ability to obtain a loan modification. He learned that their loan had been securitized in the WFMBS 2007–011 trust, which was funded by Wall Street investors. Therefore, it would have been impossible for Wells Fargo to have consulted with the investors. Further, Mark learned that the servicing agreement between the investors and Wells Fargo granted Wells Fargo the ability to modify the terms of the loan if a default was reasonably foreseeable.

**\*4** In April 2011, the Velascos filed suit against Wells Fargo, HSBC, MERS, and NWTS asserting claims for violation of the DTA and CPA, negligence, quiet title, and declaratory relief. After discovery, Wells Fargo, MERS, HSBC and NWTS moved for summary judgment in September 2013. The trial court granted the motion and dismissed all of the Velascos' claims.

The Velascos appeal.

ANALYSIS

A. Standard of Review

The trial court dismissed all of the Velascos' claims on summary judgment. We review a trial court's order granting summary judgment de novo. *Lyons v. US. Bank Nat'l Ass'n,* 181 Wn.2d 775, 783, 336 P.3d 1142 (2014). We review the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Lakey v. Puget Sound Energy, Inc.,* 176 Wn .2d 909, 922, 296 P.3d 860 (2013).

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Loeffelholz v. Univ. of Wash.,* 175 Wn.2d 264, 271, 285 P.3d 854 (2012). A genuine issue of material fact exists where reasonable minds could differ on the facts controlling the outcome of the litigation. *Dowler v. Clover Park Sch. Dist. No. 400,* 172 Wn.2d 471, 484, 258 P.3d 676 (2011). If reasonable minds can reach only one conclusion on an issue of fact, that issue may be determined on summary judgment. *Failla v. FixtureOne Corp.,* 181 Wn.2d 642, 649, 336 P.3d 1112 (2014).

B. Violation of the Deed of Trust Act

The Velascos argue that NWTS violated the DTA because it acted both as the beneficiary and as the trustee and undertook actions as a trustee before the appointment of successor trustee was recorded. They argue that MERS and HSBC violated the DTA because MERS's assignment of the deed of trust to HSBC was invalid. They also generally assert that Wells Fargo violated the DTA. We hold that the trial court properly dismissed the Velascos' DTA claims because no party actually has foreclosed on their property.

In *Frias v. Asset Foreclosure Services Inc.,* our Supreme Court held that a plaintiff could not maintain a claim for monetary damages under the DTA in the absence of a completed foreclosure sale of the property. 181 Wn.2d 412, 422, 334 P.3d 529 (2014). In this case, the record shows that there has been no completed foreclosure of the Velascos' property. Accordingly, based on *Frias* we hold that the Velascos cannot bring claims for damages under the DTA, and we affirm the trial court's summary judgment dismissal of the Velascos' DTA claims.[2]

C. Violation of the Consumer Protection Act

The Velascos argue that each of the defendants violated the CPA. We hold that the Velascos presented sufficient evidence to create a material issue of fact regarding whether Wells Fargo's loan modification conduct violated the CPA, but not regarding whether Wells Fargo's other conduct violated the CPA or whether MERS, HSBC, or NWTS violated the CPA.

1. Elements of CPA Claim

**\*5** The CPA prohibits "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." RCW 19.86.020. Under RCW 19.86.090, any person injured in his or her business or property by a violation of RCW 19.86.020 may bring a civil action to recover actual damages. *Panag v. Farmers Ins. Co. of Wash.,* 166 Wn.2d 27, 37, 204 P.3d 885 (2009). To prevail on a CPA claim, a plaintiff must prove (1) an unfair or deceptive act or practice, (2) occurring in trade or commerce, (3) affecting the public interest, (4) injury nor a person's business or property, and (5) causation. *Id.* Whether a plaintiff can prevail on a CPA claim is a case by case determination of whether the plaintiff can satisfy each of the five elements. *Lyons,* 181 Wn.2d at 785. A CPA claim based on alleged DTA violations must meet the same requirements. *Id.*

Here, the respondents do not dispute for summary judgment purposes that their conduct occurred in trade or commerce or that their conduct affects the public interest.[3] Instead, they argue that they did not engage in any unfair or deceptive practices, that their conduct did not cause the Velascos to incur any economic loss, and that the Velascos cannot establish that any alleged unfair or deceptive practices caused an economic injury. Accordingly, we only address those elements of the CPA claims.

a. Unfair or Deceptive Act or Practice

A plaintiff can establish an unfair or deceptive act or practice by showing "a per se violation of statute, an act or practice that has the capacity to deceive substantial portions of the public, or an unfair or deceptive act or practice not regulated by statute but in violation of public interest." *Klem v. Wash. Mut. Bank,* 176 Wn.2d 771, 787, 295 P.3d 1179 (2013). The legislature has defined certain violations of the DTA as unfair or deceptive acts or practices. RCW 61.24.135(2).[4] However, the Velascos do not argue that there is a per se unfair or deceptive act here. Therefore, we must determine whether the conduct identified by the Velascos has the capacity to deceive substantial portions of the public or is in violation of public interest. *Klem,* 176 Wn.2d at 787.

Conduct is "deceptive" under the CPA if it misleads or misrepresents something of material importance. *Walker v. Quality Loan Serv. Corp.,* 176 Wn.App. 294, 318, 308 P.3d 716 (2013). Neither intent nor actual deception is required to prove a deceptive act. *Bain v. Metro. Mortg. Grp.,* 175 Wn.2d 83, 115, 285 P.3d 34 (2012). The question is whether the conduct has the *capacity* to deceive a substantial portion of the public. *Id.* Even accurate information may be deceptive if a representation, omission, or practice is likely to mislead. *Id.*

Whether conduct is unfair or deceptive is a question of law, not a question of fact. *Lyons,* 181 Wn.2d at 786. But whether conduct has the capacity to deceive is a question of fact. *Walker,* 176 Wn.App. at 318.

b. Injury to Person's Business or Property

**\*6** A CPA plaintiff must establish an injury to the person's business or property. The injuries compensable under the CPA are "relatively expansive." *Frias,* 181 Wn.2d at 431. Quantifiable monetary loss is not required. *Id.* The injury requirement is met upon proof the plaintiff's " 'property interest or money is diminished because of the unlawful conduct even if the expenses

Velasco v. Discover Mortg. Co., Not Reported in P.3d (2015)

187 Wash.App. 1003

caused by the statutory violation are minimal.' " *Panag,* 166 Wn.2d at 57 (quoting *Mason v. Mortg. Am., Inc.,* 114 Wn.2d 842, 854, 792 P.2d 142 (1990)). "Investigative expenses, taking time off from work, travel expenses, and attorney fees are sufficient to establish injury under the CPA." *Walker,* 176 Wn. App at 320.

On the other hand, personal injuries such as mental distress, embarrassment, and inconvenience, and the financial consequences of such injuries, do not satisfy the injury to business or property element. *Frias,* 181 Wn.2d at 431. Further, having to prosecute a claim under the CPA is insufficient to show injury. *Panag,* 166 Wn.2d at 60.

Whether a CPA claimant has suffered injury to business or property is a question of fact. *See id.* at 65.

#### c. Causation

A CPA plaintiff must establish that the defendant's conduct caused the alleged injury. Our Supreme Court has adopted the proximate cause standard embodied in WPI 15.01.[5] *Indoor Billboard/Wash., Inc. v. Integra Telecom of Wash., Inc.,* 162 Wn.2d 59, 82–83, 170 P.3d 10 (2007). Under this standard, to prove causation, the "plaintiff must establish that, but for the defendant's unfair or deceptive practice, the plaintiff would not have suffered an injury." *Id.* at 84. Causation is a question of fact. *Klem,* 176 Wn.2d at 795.

#### 2. Claims Against Wells Fargo–Loan Modification

The Velascos argue that Wells Fargo violated the CPA during the loan modification process by (1) misrepresenting that the "investors" would not allow modification when in fact Wells Fargo had authority to modify the loan, and (2) deceiving them by repeatedly requesting information and requiring forbearance payments pursuant to their loan modification request when Wells Fargo never intended to modify the loan. We hold that the Velascos produced sufficient evidence to create a genuine issue of material fact on this issue.

#### a. Unfair or Deceptive Practices

First, the Velascos allege that Wells Fargo representatives told Mark that the Velascos could not obtain a loan modification because investors in the WFMBS 2007–11 trust would not allow it. However, Mark discovered that the servicing agreement between Wells Fargo and the investors states that "[w]ith the prior written consent of the master servicer, the servicer may modify the terms of a Mortgage loan which is in default or a Mortgage Loan as to which default is reasonably foreseeable." CP at 296. Wells Fargo is identified as both the Master Servicer and the Servicer in the servicing agreement. Therefore, there is sufficient evidence to create a question of fact that Wells Fargo misrepresented the reason it repeatedly refused to process the Velascos' loan modification request. Further, the evidence supports at least an inference that Wells Fargo misrepresented that it had communicated with the investors of the trust regarding the loan modification request.

*7 Second, the Velascos allege that Wells Fargo forced them to endure a drawn out loan modification process when it never intended to modify the loan. If this allegation was true, it could be characterized as an unfair or deceptive act. The Velascos present no direct evidence that Wells Fargo had no intent to modify their loan, but the issue is whether the evidence gives rise to a reasonable inference of that fact. The Velascos allege that Wells Fargo repeatedly gave false reasons for not processing the Velascos' loan modification request and continued to offer the Velascos temporary forbearance plans without ever offering a permanent modification. Given this evidence, it is reasonable to infer that Wells Fargo never intended to modify the Velascos' loan. Such an inference is sufficient to create a question of fact.

We hold that the Velascos produced sufficient evidence to create a genuine issue of material fact as to whether Wells Fargo

Velasco v. Discover Mortg. Co., Not Reported in P.3d (2015)

187 Wash.App. 1003

engaged in unfair and deceptive conduct during the loan modification process.

#### b. Economic Injury and Causation

Mark's declaration contains only two sentences on injury. He alleges that the Velascos "have spent hundreds of hours writing letters, making phone calls and doing research in order to find a way to save our home" and that they have "spent thousands of dollars in legal fees." CP at 210. The first statement does not allege injury under the CPA because there is no indication of any economic loss. However, the second statement clearly alleges economic loss.

The question here is causation. Fees incurred bringing the CPA claim are insufficient to show an economic injury. *Panag,* 166 Wn.2d at 60. Therefore, only those fees incurred apart from the CPA litigation constitute an economic injury under the CPA. Here, there is evidence in the record that the Velascos hired an attorney to challenge Wells Fargo's conduct and to fight the foreclosure actions triggered by Wells Fargo's refusal to fairly process the Velascos' loan modification requests. This evidence is sufficient to create a genuine issue of fact regarding the causal connection between Wells Fargo's unfair or deceptive acts and the Velascos' payment of attorney fees.

Because questions of fact exist regarding unfair or deceptive conduct, injury, and causation, we hold that the trial court erred in granting summary judgment in favor of Wells Fargo on the Velascos' CPA claim regarding the loan modification process.

#### 3. Claims Against Wells Fargo–Deed of Trust

The Velascos argue that Wells Fargo also violated the CPA by claiming to be the beneficiary of the deed of trust after the closing of the WFMBS 2007–11 trust. We hold that the Velascos' contentions with regard to the WFMBS 2007–11 trust fail to demonstrate an unfair or deceptive act.

Although the Velascos' argument is somewhat unclear, it seems to contain two separate contentions: (1) Wells Fargo was not validly appointed as the deed of trust beneficiary, and (2) even if Wells Fargo was a valid beneficiary, it was improperly appointed after the closing date of the WFMBS 2007–11 trust. The record does not support either contention.

**\*8** First, Wells Fargo was the actual holder of the promissory note. Therefore, under RCW 61.24.005(2), Wells Fargo was the valid beneficiary of the deed of trust. *Bain,* 175 Wn.2d at 98–99. It did not have to rely on any assignment to obtain beneficiary status.

Second, the Velascos essentially argue that Wells Fargo's claim of beneficiary status after the closing date of the WFMBS 2007–11 trust was unfair or deceptive. The Velascos contend that Wells Fargo's claim that it was the beneficiary created confusion and prevented them from identifying the owner of the note, prevented their direct communication with the lender, and "served the purpose of creating a default that the Velascos could not cure." Br. of Appellant at 22. But the Velascos failed to bring forward any evidence to support this argument. While they argued that the transfer of their loan into the WFMBS 2007–11 trust precipitated unfair or deceptive acts by Wells Fargo and others, the Velascos failed to show the basic fact that their loan had even been transferred into the trust. In addition, they failed to produce evidence of the closing date of the trust. Consequently, even had the trial court found that it was improper to appoint Wells Fargo the beneficiary after the closing date of the WFMBS 2007–11 trust, there were insufficient facts in the record to create a genuine issue of material fact on this issue.

We hold that the Velascos did not present sufficient evidence to create a question of fact that Wells Fargo engaged in unfair or deceptive acts with regard to the deed of trust. Therefore, we affirm the trial court's summary judgment dismissal of the Velascos' CPA claim against Wells Fargo based on the deed of trust.

**Velasco v. Discover Mortg. Co., Not Reported in P.3d (2015)**

187 Wash.App. 1003

#### 4. Claims Against MERS

The Velascos argue that MERS violated the CPA by acting as the beneficiary of the deed of trust when it was not the holder of the promissory note. We hold that these facts could establish an unfair or deceptive act, but that the Velascos did not produce sufficient evidence to create a genuine issue of fact that MERS's conduct caused economic injury to them.

##### a. Unfair or Deceptive Act

The Velascos' deed of trust identified MERS as the beneficiary. And MERS assigned its beneficial interest in the deed of trust to HSBC. However, the DTA defines a beneficiary of a deed of trust as "the holder of the instrument or document evidencing the obligations secured by the deed of trust." RCW 61.24.005(2). The evidence here shows that Wells Fargo was the holder of the note at all relevant times, and there is no evidence that MERS ever was the holder. Therefore, MERS was not a lawful beneficiary of the deed of trust. *Bain,* 175 Wn.2d at 99.

In *Bain,* our Supreme Court stated that characterizing MERS as a beneficiary when it was not the note holder had the capacity to deceive, and therefore presumptively met the unfair or deceptive practice requirement of the CPA. *Id.* at 117. Under *Bain,* we hold that the Velascos produced sufficient evidence to create a question of fact that MERS engaged in unfair or deceptive practices.

##### b. Economic Injury and Causation

**\*9** As stated above, the Velascos produced evidence that they incurred attorney fees as a result of the initiation of foreclosure proceedings. However, the Velascos produced no evidence that *MERS's* conduct had anything to do with the foreclosure proceedings.[6] Further, although MERS may have engaged in unfair or deceptive conduct by acting as the beneficiary of the deed of trust when it was not the holder of the promissory note, there is no evidence that this conduct caused any injury. Accordingly, we hold that the Velascos did not produce sufficient evidence to create a question of fact on the causation element, and that the trial court did not err in dismissing the Velascos' CPA claims against MERS.

#### 5. Claims Against NWTS

The Velascos argue that NWTS violated the CPA because (1) an NWTS employee also was an officer of MERS, and (2) NWTS sent the Velascos a notice of default before it was appointed as successor trustee. We hold that even when viewed in the light most favorable to Velascos, neither of these acts was unfair or deceptive.

##### a. Common Employee of NWTS and MERS

The Velascos point out that a person named Jeff Stenman, who was an NWTS employee, also signed the deed of trust assignment from MERS to HSBC as a vice president of MERS. The Velascos contend that this conduct violated RCW 61.24.020, which prohibits the same entity serving as both trustee and beneficiary under the same deed of trust, and therefore was unfair or deceptive. We disagree.

We need not address whether the violation of RCW 61.24.020 can constitute an unfair or deceptive practice for two reasons.

First, as discussed, MERS was not the beneficiary under this deed of trust because it was not the holder of the promissory note. Therefore, NWTS's employment of a MERS officer could not have resulted in NWTS acting as both the trustee and beneficiary.

Second, MERS's assignment of its beneficial interest in the deed of trust was recorded on the same day as the appointment of NWTS as successor trustee. Therefore, even if MERS was a lawful beneficiary, it was not the trustee at the same time that MERS was the beneficiary.

We reject the Velascos' argument that NWTS engaged in an unfair or deceptive practice solely because NWTS and MERS had a common employee.

   b. NWTS's Authority to Send Notice of Default
The Velascos argue that NWTS's conduct was unfair or deceptive because NWTS sent the Velascos a notice of default before NWTS's appointment as successor trustee. We disagree.

Under RCW 61.24.03 1(1)(a), a trustee, beneficiary, or authorized agent has authority to send a notice of default of a deed of trust. NWTS did send the Velascos a notice of default on October 15, 2008, before NWTS had been appointed successor trustee. However, NWTS was not acting as the trustee when it sent the notice of default. Instead, the notice of default stated that the beneficiary-HSBC-was sending the notice and that NWTS was signing the notice as HSBC's "duly authorized agent." CP at 183.

**10** Under these circumstances, it is irrelevant that NWTS had not been appointed as a successor trustee when it sent the notice of default to the Velascos. NWTS was authorized under RCW 61.24.031(1)(a) as the beneficiary's agent to send the notice. Therefore, we hold that NWTS did not engage in an unfair or deceptive practice by sending the notice of default.

Because we hold that the Velascos did not produce sufficient evidence to create a genuine issue of material fact that NWTS engaged in unfair and deceptive practices, we affirm the trial court's summary judgment dismissal of the Velascos' CPA claims against NWTS.

   6. Claims Against HSBC
The Velascos' brief states in a heading that the actions of Wells Fargo and HSBC were deceptive, but then only addresses Wells Fargo's conduct. The Velascos do not expressly argue that HSBC engaged in unfair or deceptive conduct, and do not cite to the record or any authority to support such an argument. Further, although the Velascos assert that HSBC is liable under the CPA based on Wells Fargo's conduct, they provide no argument and cite no authority to support this claim. As a result, we hold that the Velascos have waived any such argument. RAP 10.3(a)(6); *Granville Condo. Homeowners Ass'n v. Kuehner,* 177 Wn.App. 543, 555, 312 P.3d 702 (2013) (refusing to further address issue where party failed to present sufficient argument or citation to authority). Therefore, we affirm the trial court's summary judgment dismissal of the Velascos' CPA claims against HSBC.

D. Negligence
The Velascos argue that each of the defendants is liable for negligence in breaching their independent duties owed to the Velascos under the CPA. We hold that a CPA violation does not give rise to a cause of action for common law negligence.[7]

A negligence action may proceed only if the plaintiff shows (1) a duty of care was owed to them by the defendant, (2) that duty was breached, (3) that breach was the cause of their harm, and (4) they suffered injury as a result. *Keller v. City of Spokane,* 146 Wn.2d 237, 242–43, 44 P.3d 845 (2002). The issue here is the existence of a duty, which is a question of law that we review de novo. *Aba Sheikh v. Choe,* 156 Wn.2d 441, 448, 128 P.3d 574(2006).

The Velascos' only argument is that the respondents' negligence duty arises from the CPA. Specifically, the Velascos devote one sentence in their opening brief to this issue, which states only that the CPA "prohibits unfair or deceptive business practices in the course of trade or commerce, and this is a statutory duty that clearly applies to these Respondents." Br. of Appellant at 31.

The Velascos do not cite any authority that the CPA gives rise to the existence of a general duty of care. Nor has independent research discovered any precedent holding that the CPA gives rise to this purported additional duty of care. Accordingly, we hold that the Velascos' have failed to demonstrate that the respondents owed them a duty of care, and therefore that the. trial court did not err in dismissing the Velascos' negligence claim on summary judgment.

### E. Quiet Title Claim

**\*11** The Velascos argue that the trial court erred in dismissing their quiet title claim because the transfer of their promissory note into a mortgage-backed securities pool discharged the note. We disagree because Washington law does not provide that transfer of the note into a mortgagebacked securities pool discharges the Velascos' debt obligation on the note.

An action to quiet title is an equitable proceeding designed to resolve competing claims of property ownership. *Walker,* 176 Wn.App. at 322. A borrower can maintain a quiet title action against a beneficiary of a deed of trust only if the debt that the deed of trust secures is discharged. *Evans v. BAC Home Loans Servicing LP,* No. cl0–0656–RSM, 2010 WL 5138394, at \*3 (W.D.Wash. Dec. 10, 2010). The Velascos do not argue that they have paid their underlying debt obligation to discharge the note under RCW 62A.3–601(a). Instead, they assert that they have superior title in this case because the transfer of the promissory note into a mortgage-backed securities pool discharged the note, and therefore discharged the Velascos' debt obligation.

The Velascos cite no authority to support their argument. And although Washington courts have yet to address this issue, several federal courts have addressed and rejected the argument that securitization inherently changes the legal relationship between the parties to a promissory note and deed of trust.[8]

We hold that securitization does not discharge the Velascos' obligation to pay the promissory note. The reason for this holding was explained by the Ninth Circuit Bankruptcy Appellate Panel:

> [H]ome loan borrowers are not purchasing an investment when they enter into a loan agreement to purchase or refinance a home. When they sign a promissory note and mortgage or trust deed secured by their real property, they are entering into a contract for a loan transaction on fixed terms, and any "upside" or investment incentive to enter into the transaction is based on a prospective increase in the value of the subject real property. Accordingly, the borrower's loan contract (the Note and Trust Deed in this appeal) is distinct and separate from any securities transaction in the "secondary market" encompassing assignment of the contract.

*In re Nordeen,* 495 B.R. 468, 479–80 (B.A.P. 9th Cir.2013).

Here, the Velascos have not shown that they have discharged their loan obligation by paying their debt. Nor have they cited to authority showing that the transfer of their promissory note into a securities pool discharges that note. Therefore, we hold that the Velascos do not have superior title, and that the trial court did not err in dismissing their quiet title claim on summary judgment.

## F. Declaratory Relief

The Velascos do not address their claim for declaratory relief in their briefs, aside from listing it as one of their causes of action. Accordingly, we hold this assignment of error is waived. RAP 10.3(a)(6); *see also State v. Thomas,* 150 Wn.2d 821, 874, 83 P.3d 970 (2004) (absent supporting argument or citations to relevant authority, an assignment of error is waived).

**\*12** We reverse the trial court's summary judgment dismissal of the Velascos' CPA claim against Wells Fargo relating to the loan modification process, but affirm the trial court's dismissal of all of the Velascos' remaining claims.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

We concur: LEE, J., and MELNICK, J.

**All Citations**

Not Reported in P.3d, 187 Wash.App. 1003, 2015 WL 1753677

Footnotes

1       For clarity, we refer to Mark Velasco by his first name. No disrespect is intended.

2       The trial court dismissed the Velascos' DTA claim on other grounds. However, we can affirm the trial court on any basis. *Rainier View Court Homeowners Ass'n, Inc. v. Zenker,* 157 Wn.App. 710, 723, 238 P.3d 1217 (2010) (stating that an appellate court "may sustain a trial court on any correct ground, even one the trial court did not consider.").

3       In *Bain v. Metropolitan Mortgage Group Inc.,* our Supreme Court recognized that because MERS was involved with "an enormous number of mortgages in the country (and our state)," its conduct would satisfy the public interest impact element of a CPA claim. 175 Wn.2d 83, 118, 285 P.3d 34 (2012).

4       "It is ... an unfair method of competition in violation of the consumer protection act, chapter 19.86 RCW, for any person or entity to: (a) Violate the duty of good faith under RCW 61.24.163; (b) fail to comply with the requirements of RCW 61.24.174; or (c) fail to initiate contact with a borrower and exercise due diligence as required under RCW 61. 24. 031."

5       6 Washington Practice: Washington Pattern Jury Instructions: Civil 15.01, at 181 (5th ed.2005).

6       In the Velascos' brief, they argue that they incurred "investigative expenses, legal fees, and loss of work time, as well as additional late fees, inspection fees, and damage to credit" based on MERS' conduct. Br. of Appellant at 25. However, other than the legal fees there is no *evidence* that they incurred these expenses. And there is no *evidence* that they incurred any expenses as a result of MERS's conduct. Bare allegations cannot create a genuine issue of material fact. *Club Envy of Spokane, LLC v. Ridpath Tower Condo. Ass'n,* 184 Wn.App. 593, 337 P.3d 1131, 1136 (2014).

7       The respondents argue that the Velascos' negligence claim is barred by the independent duty doctrine. However, under *Elcon Construction, Inc. v. Eastern Washington University,* 174 Wn.2d 157, 165–66, 273 P.3d 965 (2012), we are constrained from applying the doctrine to cases other than those involving real property or construction. *See Hendrickson v. Tender Care Animal Hosp. Corp.,* 176 Wn.App. 757, 770–71, 312 P.3d 52 (2013), *review denied,* 179 Wn.2d 1013 (2014).

8       *Lane v. Vitek Real Estate Indus. Grp.,* 713 F.Supp.2d 1092, 1099 (E.D.Cal.2010) ("The argument that parties lose their interest in a loan when it is assigned to a trust pool has also been rejected by many district courts."); *see also Kuc v. Bank of Am., NA,* No. CV–12–08024–PCTFJM, 2012 WL 1268126, at *3 (D.Ariz. Apr. 16, 2012) ("[T]he theory that securitization renders the Deed of Trust unenforceable has been repeatedly rejected."); *White v. IndyMac Bank, FSB,* No. 09–00571 DAE–KSC, 2012 WL 966638, at *6 (D.Haw. Mar. 20, 2012) ("The argument that parties lose their interest in a loan when it is assigned to a securitization trust or REMIC has been rejected by numerous courts."); *Washburn v. Bank of Am., N.A.,* No.l:11–cv–00193–EJL–CWD, 2011 WL 7053617, at *5 (D.Idaho Oct. 21, 2011) ("This is not a new battlefield. Several courts have rejected various theories that securitization of a loan somehow diminishes the underlying power of sale that can be exercised upon a trustor's breach." (internal quotation marks omitted)).

Velasco v. Discover Mortg. Co., Not Reported in P.3d (2015)

187 Wash.App. 1003

**End of Document**                                    © 2021 Thomson Reuters. No claim to original U.S. Government Works.