1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

TEN BRIDGES, LLC,

11

Plaintiff,

v.

12

MIDAS MULLIGAN, LLC, et al.,

13

Defendants.

14

CASE NO. C19-1237JLR

ORDER GRANTING IN PART
AND DENYING IN PART
MOTION TO DISMISS
COUNTERCLAIMS

15

## I.    INTRODUCTION

16

Before the court is Plaintiff Ten Bridges, LLC's ("Ten Bridges") motion to

17

dismiss or strike Defendants Midas Mulligan, LLC ("Midas") and Madrona Lisa, LLC's

18

("Madrona") (collectively, "Defendants") counterclaims. (Mot. (Dkt. # 53); *see also*

19

Reply (Dkt. # 61).)  Defendants oppose Ten Bridges' motion.  (Resp. (Dkt. # 59).)  The

20

court has reviewed Ten Bridges' motion, the parties' submissions filed in support of and

21

in opposition to Ten Bridges' motion, the relevant portions of the record, and the

22

applicable law.  Having been fully advised,[1] the court GRANTS in part and DENIES in

part Ten Bridges' motion to dismiss or strike.

## II.    BACKGROUND

Defendants' counterclaims arise from litigation between the parties in King

County Superior Court related to Ten Bridges' attempts to redeem a property that

Madrona purchased at a foreclosure sale.  (*See generally* SAC (Dkt. # 47); SAC Ans.

(Dkt. # 50).)  The court begins by recounting the factual background underlying Ten

Bridges' claims against Defendants before proceeding to Defendants' allegations

regarding the state-court litigation between the parties.  Finally, the court discusses the

procedural background of the parties' action in this court.

**A.    Factual Background**

Ten Bridges, Midas, and Madrona compete to purchase residential property at

judicial foreclosure auctions.  (SAC ¶ 1.)  The companies also "purchase redemption

rights and/or the right to surplus proceeds from foreclosed owners and related parties

following the sheriff's sale of a property."  (*Id.*)  These rights entitle the purchasing

companies "to redeem foreclosed properties or collect surplus proceeds, if any, following

a judicial foreclosure sale after all secured creditors are satisfied."  (*Id.* ¶ 10.)  According

to Ten Bridges, foreclosed property owners sell these rights to companies like Ten

Bridges, Midas, and Madrona "when they are interested in receiving an upfront payment

---

[1] Defendants request oral argument.  (*See* Resp. at 1.)  The court finds that the issues have been thoroughly briefed by the parties, and oral argument would not be of assistance to the court. *See* Local Rules W.D. Wash. LCR 7(b)(4).  Accordingly, the court DENIES Defendants' request for oral argument.

1   quickly, to avoid the cost and expense of redeeming a property or pursuing surplus

2   proceeds, or when they are unsure whether any surplus proceeds will remain after the

3   secured debt is satisfied." (*Id.* ¶ 12.)

4         Ten Bridges alleges that Midas and Madrona have "purposefully undertaken

5   wrongful and improper actions to interfere with [Ten Bridges'] contracts with parties for

6   the purchase of their redemption rights and/or their rights to surplus proceeds, causing

7   direct harm and damage to [Ten Bridges]." (*Id.* ¶ 1.) Relevant to the instant motion, Ten

8   Bridges alleges that Madrona interfered with a contract for purchase of redemption rights

9   and rights to surplus proceeds that Ten Bridges entered into with non-party Yukiko

10  Asano on May 15, 2019, after Madrona purchased Ms. Asano's property at a foreclosure

11  sale on March 22, 2019.[2] (*Id.* ¶¶ 33-34.) It alleges that Madrona had no good-faith basis

12  to object to Ten Bridges' subsequent attempt to redeem Ms. Asano's property in state

13  court and that Defendant Matthew Toth made unsolicited contact with Ms. Asano on

14  behalf of Madrona to encourage her to breach her contract with Ten Bridges. (*Id.* ¶¶ 35-

15  36.) It contends that the actions taken by Madrona and Mr. Toth constitute tortious

16  interference with business relationships (*id.* ¶¶ 45-49 (Madrona), 68-70 (Mr. Toth)) and

17  abuse of process (*id.* ¶¶ 75-79 (Madrona)).

18  **B.**    **State Court Procedural Background**

19        Ten Bridges and Madrona litigated Ten Bridges' attempt to redeem Ms. Asano's

20  foreclosed property in King County Superior Court. (*See generally* SAC; SAC Ans.)

21

22      [2] Ten Bridges has alleged claims arising from four property sales. (*See generally id.*)
Only its claims relating to Ms. Asano's property are relevant to the instant motion.

ORDER - 3

1    Madrona alleges that the May 15, 2019, contract between Ten Bridges and Ms. Asano,

2    pursuant to which Ms. Asano delivered to Ten Bridges a quit claim deed to her property,

3    was unlawful.  (SAC Ans. ¶ 20; *id.* at 17-23 ("Am. Counterclaims") ¶ 4.)  According to

4    Madrona, Ten Bridges asserted that the quit claim deed gave it the right to redeem the

5    property; notified the King County Sheriff of its intent to redeem the property; and

6    tendered what it claimed was the proper amount to redeem the property.  (Am.

7    Counterclaims ¶ 4.)  Madrona, however, contended that the correct redemption amount

8    was approximately $40,000 more than Ten Bridges' tender.  (*Id.* ¶ 5.)  Because the

9    parties disputed the redemption amount, the King County Sheriff refused to allow Ten

10   Bridges to redeem the property.  (*Id.*)

11        On July 10, 2019, Ten Bridges moved in King County Superior Court for an order

12   establishing its tendered amount as the correct redemption amount.  (*Id.* ¶ 6; 1/4/21

13   Beckett Decl. (Dkt. # 60) ¶ 2.a, Ex. 1.[3])  Madrona opposed Ten Bridges' motion, arguing

14   that the contract between Ten Bridges and Ms. Asano was unlawful and unenforceable,

15   and that even if the contract was lawful, the amount Ten Bridges had tendered was

16   insufficient to redeem the property.  (Am. Counterclaims ¶ 7.)  On August 8, 2019, the

17   superior court ruled in favor of Madrona, holding that the quit claim deed between Ms.

18   Asano and Ten Bridges was void and unenforceable because their contract violated RCW

19

20

21        [3] As discussed in more detail below, the court grants Defendants' request to take judicial
     notice of documents that were filed in the parties' state court action and attached to Mr.
22   Beckett's January 4, 2021 declaration.  *See infra* § III.A.

ORDER - 4

63.29.350(1).[4]  (*Id.* ¶ 8.)  On August 30, 2019, Ten Bridges appealed the superior court's

order.  (*Id.* ¶ 14; 1/4/21 Beckett Decl. ¶ 2.c, Ex. 3.)

Ten Bridges then requested a different form of quit claim deed from Ms. Asano.

(Am. Counterclaims ¶ 9.)  According to Madrona, Ten Bridges told Ms. Asano it needed

the new form of quit claim deed "in order to 'save time'" in its effort to obtain surplus

proceeds from the sale of Ms. Asano's former property.  (*Id.*)  Madrona alleges that Ten

Bridges did not tell Ms. Asano that the superior court had invalidated the prior quit claim

deed and did not inform her that it was attempting to redeem her former property.  (*Id.*)

Ms. Asano signed the new quit claim deed and delivered it to Ten Bridges.  (*Id.* ¶ 10.)

On October 15, 2019, Ten Bridges moved again in the superior court, this time

with the new quit claim deed, to set the amount required to redeem the property from

Madrona.  (*Id.* ¶ 11; 1/6/20 Beckett Decl. (Dkt. # 23) ¶ 2.i, Ex. 9.[5])  It contended that

because the new quit claim deed did not contain the terms that the court had previously

found unlawful, it was severable from the original contract and enforceable.  (Am.

Counterclaims ¶ 11.)  Madrona again opposed Ten Bridges' motion, and on October 30,

2019, the superior court again ruled in Madrona's favor on the ground that the contract

between Ten Bridges and Ms. Asano was unlawful under RCW 63.29.350(1).  (*Id.* ¶¶ 12,

---

[4] "To protect consumers, RCW 63.29.350 caps the fees a fund-finder can claim as compensation for locating surplus proceeds deposited with a superior court clerk following foreclosure of a lien on a property." *Ten Bridges, LLC v. Guandai*, 474 P.3d 1060, 1063 (Wash. Ct. App. 2020).

[5] In its April 20, 2020 order granting Ten Bridges' motion to dismiss, the court granted Defendants' request to take judicial notice of documents filed in the parties' state court action. (*See* 4/20/20 Order (Dkt. # 25) at 7-8; 1/6/20 Beckett Decl. ¶¶ 2.a-j, Exs. 1-11.)

13.)  On November 27, 2019, Ten Bridges appealed the superior court's second order

invalidating its contract with Ms. Asano.[6]  (*Id.* ¶ 14; 1/4/21 Beckett Decl. ¶ 2.f, Ex. 6.)

On October 26, 2020, the Washington Court of Appeals affirmed the superior

court's orders invalidating the contract between Ten Bridges and Ms. Asano and the quit

claim deeds that Ms. Asano executed pursuant to that contract.  (Am. Counterclaims

¶ 15); *see Ten Bridges, LLC v. Guandai*, 474 P.2d 1060, 1069-70 (Wash. Ct. App. 2020)

(holding that the contract between Ten Bridges and Ms. Asano violated RCW

63.29.350(1) and voiding the quit claim deeds).  Ten Bridges moved for reconsideration

and informed Madrona that it would petition the Washington Supreme Court for review if

the Court of Appeals denied that motion.  (*Id.* ¶ 22.)  The Washington Court of Appeals

denied Ten Bridges' motion for reconsideration on December 31, 2020.  (1/4/21 Beckett

Decl. ¶ 2.g, Ex. 7.)

**C.     Federal Court Procedural Background**

Ten Bridges filed its original complaint in this action on August 7, 2019, while its

first motion to redeem Ms. Asano's property was still pending before the King County

Superior Court.  (Compl. (Dkt. # 1).)  Ten Bridges alleged claims arising from the sales

of four properties—including Ms. Asano's—against Madrona, Midas, and Defendant

Danielle Gore for tortious interference with business relationships; against Madrona and

Midas for abuse of process; and against Madrona and Midas for injunctive relief.  (*See

generally id.*)

---

[6] Ten Bridges also appealed a separate order which denied its motion to extend the period to redeem Ms. Asano's former property.  (*Id.* ¶ 16.)

On August 27, 2019—after the superior court entered its first order invalidating the contract between Ten Bridges and Ms. Asano, and after Ten Bridges filed its notice of appeal of that order—Ten Bridges amended its complaint to include allegations establishing this court's diversity jurisdiction over its claims.  (FAC (Dkt. # 6).)  Ten Bridges did not, however, reallege its claim against Madrona for tortious interference with business relationships in its amended complaint.  (*Compare* Compl. ¶¶ 31-39 (alleging tortious interference claims based on the sales of both Ms. Asano's property and property owned by Jay Millsap) *with* FAC ¶¶ 31-36 (alleging a tortious interference claim based only on the sale of Mr. Millsap's property).)  In both its complaint and its amended complaint, Ten Bridges alleged a claim for abuse of process arising from Madrona's conduct in the state-court litigation regarding Ms. Asano's foreclosed property.  (Compl. ¶¶ 53-57; FAC ¶¶ 50-54.)

Defendants answered the first amended complaint on November 25, 2019—after the superior court denied Ten Bridges' second motion to set the redemption price for Ms. Asano's property—and asserted a counterclaim on behalf of Madrona and Midas against Ten Bridges for violation of Washington's anti-SLAPP[7] statute, RCW 4.24.510.  (Ans. (Dkt. # 19).)  This statute provides that "[a] person who communicates a complaint or information to any branch or agency of federal, state, or local government . . . is immune from civil liability for claims based upon the communication to the agency . . . regarding any matter reasonably of concern to that agency."  RCW 4.24.510.  A party that "prevails

---

[7] The term "SLAPP" stands for "strategic lawsuit against public participation."  *Henne v. City of Yakima*, 341 P.3d 284, 285 n.1 (Wash. 2015).

1  upon" this defense "is entitled to recover expenses and reasonable attorneys' fees

2  incurred in establishing the defense" in addition to statutory damages.  *Id.*  On April 20,

3  2020, the court granted Ten Bridges' motion to dismiss Defendants' anti-SLAPP

4  counterclaim with prejudice.  (4/20/20 Order.)

5         On September 10, 2020, Ten Bridges moved for leave to file a second amended

6  complaint in order to add an additional defendant and additional claims.  (MTA (Dkt.

7  # 42).)  Ten Bridges sought to add Matthew A. Toth as a defendant based on information

8  it learned in discovery; to add to and clarify its factual allegations against all Defendants;

9  to add second counts under its claims for tortious interference with business relationships

10 against Madrona, Midas, and Ms. Gore (including reinstating its tortious interference

11 claim against Madrona based on the sale of Ms. Asano's property); and to add a claim for

12 tortious interference with business relationships against Mr. Toth.  (*See id.* at 2-3; *see*

13 *also id.* at 4-21 (redlined proposed second amended complaint).)  Defendants did not

14 oppose Ten Bridges' motion.  (*See generally* Dkt.)  The court granted Ten Bridges'

15 motion (11/2/20 Order (Dkt. # 46)), and Ten Bridges filed its second amended complaint

16 on November 5, 2020 (SAC (Dkt. # 47)).

17        On November 19, 2020, less than four weeks after the Washington Court of

18 Appeals affirmed the superior court's orders invalidating Ten Bridges' contract with Ms.

19 Asano and the corresponding quit claim deeds, Defendants timely answered Ten Bridges'

20 second amended complaint and again asserted counterclaims.[8]  (SAC Ans. (Dkt # 50);

21

22        [8] Madrona also asserted third-party claims against Demian Heald and Matt Cox
   ("Third-Party Defendants").  (*See* SAC Ans. at 23-25.)  After Third-Party Defendants moved to

*see* Am. Counterclaims).)  Defendants asserted a new counterclaim on behalf of Madrona for violation of the Washington Consumer Protection Act ("CPA"), chapter 19.86 RCW, arising from the parties' state-court litigation over Ten Bridges' efforts to redeem Ms. Asano's property (*see* Am. Counterclaims ¶¶ 2-24) and re-asserted the anti-SLAPP claim that the court dismissed in its April 20, 2020, order (*see id.* ¶¶ 25-28).  Defendants acknowledge that the court previously dismissed their anti-SLAPP claim with prejudice and explain that they reasserted the anti-SLAPP claim in order to preserve their right to appeal the dismissal.  (*See id.* ¶ 28; Resp. at 1-2 (noting that Defendants "fully anticipate that the [c]ourt will enter an order confirming that the [a]nti-SLAPP counterclaim is dismissed").)

## III.   ANALYSIS

Ten Bridges moves the court to dismiss or strike Defendants' anti-SLAPP counterclaim and to dismiss Madrona's CPA counterclaim.  (*See generally* Mot.)  The court begins by addressing Defendants' request to take judicial notice of documents submitted in the parties' state court action before proceeding to consider Ten Bridges' motion to dismiss or strike Defendants' anti-SLAPP and CPA counterclaims.

**A.    Request for Judicial Notice**

Defendants ask the court to take judicial notice of the parties' filings in King County Superior Court and the Washington Court of Appeals (*see* 1/4/21 Beckett Decl. ¶¶ 2.a-f, Exs. 1-6) and the Washington Court of Appeals' order denying Ten Bridges'

---

dismiss Madrona's third-party claims (3d Party MTD (Dkt. # 57)), Madrona and Third-Party Defendants stipulated to dismiss those claims on January 8, 2021 (*see* Stip. (Dkt. # 62)).

1   motion for reconsideration (*see id.* ¶ 2.g, Ex. 7).  (Resp. at 2 n.2.)  Ten Bridges does not

2   object to Defendants' request. (*See generally* Reply.)

3          Generally, a district court may not consider any material beyond the pleadings in

4   ruling on a Rule 12(b)(6) motion to dismiss.  *Lee v. City of L.A.*, 250 F.3d 668, 688 (9th

5   Cir. 2001).  One exception to this rule is that the court may take judicial notice of

6   documents pursuant to Federal Rule of Evidence 201.  *Khoja v. Orexigen Therapeutics,*

7   *Inc.*, 899 F.3d 988, 998 (9th Cir. 2018); *see also* Fed. R. Evid. 201.  Thus, the "court may

8   take judicial notice of matters of public record without converting a motion to dismiss

9   into a motion for summary judgment."  *See Khoja*, 899 F.3d at 999 (quoting *Lee*, 250

10  F.3d at 689 (internal quotation marks and citation omitted)).  The court may not,

11  however, take judicial notice of disputed facts contained in such public records.  *See id.*

12         The documents Defendants submit for judicial notice are public records.  (*See*

13  1/4/21 Beckett Decl. ¶¶ 2.a-g, Exs. 1-7.)  Ten Bridges does not contest their authenticity.

14  (*See generally* Reply.)  The court, therefore, grants Defendants' request and takes judicial

15  notice of Exhibits 1-7, but the court does not take judicial notice of any disputed facts

16  contained in the parties' state court filings.

17  **B.    Anti-SLAPP Counterclaim**

18         Ten Bridges argues that the court should strike Defendants' anti-SLAPP

19  counterclaim because the court already dismissed that claim with prejudice in its April

20  20, 2020 order.  (Mot. at 2-3.)  Defendants respond that they re-alleged the anti-SLAPP

21  counterclaim "solely to preserve [their] right to appeal the prior dismissal of" that claim.

22  (Resp. at 1, 5-8.)  They assert that the law is unsettled regarding whether a party must

1   re-plead a dismissed counterclaim in an amended answer in order to preserve the claim

2   for appeal.  (*See id.* at 5-8.)

3          In *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (*en banc*), the

4   Ninth Circuit reversed long-standing circuit precedent and held that a plaintiff who files

5   an amended complaint that does not re-allege a claim that the district court dismissed

6   with prejudice does not forfeit the right to appeal the dismissal of that claim.  The Court

7   reasoned that its former rule requiring a plaintiff to re-plead dismissed claims was unduly

8   harsh to plaintiffs who might risk sanctions by realleging dismissed claims; was unfair to

9   dismissed defendants who might "feel they must return to court to answer the same

10  claims again"; and required district courts to waste resources "in parsing old claims and

11  reiterating [their] prior rulings."  *Id.* at 927; *see also Ho v. ReconTrust Co., NA*, 858 F.3d

12  568, 576 (9th Cir. 2017) (noting that *Lacey* "was motivated by two principal concerns:

13  judicial economy and fairness to the parties").  Although the Ninth Circuit has yet to

14  apply the *Lacey* rule to dismissed counterclaims, the court is satisfied that the reasoning

15  in *Lacey* applies just as strongly to counterclaims asserted in a defendant's answer as it

16  does to claims asserted in a plaintiff's complaint.  Thus, a defendant need not re-plead a

17  dismissed counterclaim in order to preserve the right to appeal that dismissal.

18  Accordingly, the court concludes that Defendants did not need to re-plead the

19  anti-SLAPP counterclaim in their amended answer to preserve their ability to appeal.

20  The court GRANTS Ten Bridges' motion to strike Defendants' re-pleaded anti-SLAPP

21  counterclaim.

22

1

## C.    CPA Counterclaim

2          Madrona's CPA counterclaim is based on Ten Bridges' violation of RCW

3    63.29.350(1) in its contract with Ms. Asano.  (*See* Am. Counterclaims ¶¶ 17-24.)

4    Madrona alleges that it suffered damages in the form of the legal fees that it incurred in

5    its efforts to oppose Ten Bridges' unlawful attempts to redeem Ms. Asano's property.

6    (*See id.* ¶¶ 21-24.)

7          Ten Bridges asserts a litany of reasons the court should dismiss Madrona's CPA

8    counterclaim.  (*See* Mot. at 2.)  First, it argues that the court must dismiss the

9    counterclaim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure

10   12(b)(1) because (1) the claim does not meet the requirements for diversity jurisdiction

11   and (2) Madrona does not have standing to bring a CPA claim.  (*Id.*)  Second, Ten

12   Bridges contends that the court must dismiss the counterclaim for failure to state a claim

13   under Federal Rule of Civil Procedure 12(b)(6) because (1) Madrona waived the claim by

14   failing to allege it in Defendants' original answer; (2) the claim is untimely under the

15   court's scheduling order; (3) Madrona failed to obtain leave of court before filing the

16   counterclaim; and (4) Madrona has not alleged facts that meet the "injury" element of a

17   CPA claim.  (*Id.*)

18          Ten Bridges' arguments can be grouped into three general categories.  The first set

19   of arguments relate to alleged procedural deficiencies.  This set includes Ten Bridges'

20   contentions that Madrona's assertion of its CPA counterclaim is untimely, that Madrona

21   failed to obtain leave of court before filing it, and that Madrona waived the counterclaim

22   by failing to allege it in its answer to Ten Bridges' first amended complaint.  The second

1    set of arguments are jurisdictional, including whether Madrona lacks standing to pursue

2    its CPA counterclaim and whether it can show that the court has diversity jurisdiction

3    over the counterclaim.  The final argument falls under Rule 12(b)(6) and contends that

4    Madrona fails to state a claim under Rule 12(b)(6) because it cannot show that it suffered

5    an injury cognizable under the CPA.  The court considers each set of arguments in turn.

6         1.      Procedural Arguments

7         Ten Bridges argues that the court should dismiss Madrona's CPA counterclaim for

8    failure to follow procedural requirements.  Specifically, Ten Bridges contends that

9    Madrona failed to obtain leave of court to add its untimely CPA counterclaim and that it

10   waived its counterclaim by failing to allege it in its answer to Ten Bridges' first amended

11   complaint.  (Mot. at 4-6.)  Madrona responds that it was entitled to assert its CPA

12   counterclaim as of right, or, in the alternative, that the court should allow the

13   counterclaim pursuant to Rules 15 and 16.  (Resp. at 8-14.)  The court considers Ten

14   Bridges' waiver argument in the context of whether Madrona followed procedural

15   requirements to assert its counterclaim.

16        The Federal Rules of Civil Procedure and Ninth Circuit precedent do not directly

17   address whether a defendant may, as a matter of right, assert new counterclaims in

18   response to an amended complaint.  *See City of West Sacramento, Calif., v. R & L Bus.*

19   *Mgmt.*, No. 2:18-cv-900 WBS EFB, 2019 WL 2249630, at *1 (E.D. Cal. May 23, 2019);

20   *Childress v. Liberty Mut. Fire Ins. Co.*, No. C10-0059RSL, 2011 WL 2071200, at *1

21   (W.D. Wash. May 25, 2011).  Although case law is scant, the majority view in the Ninth

22   Circuit is that newly alleged counterclaims are allowed as of right only to the extent they

1    directly relate to changes in the amended complaint, although courts remain sensitive to

2    equitable considerations and concerns about appropriate docket management.  *See City of*

3    *West Sacramento*, 2019 WL 2249630, at *1 (citing cases).

4           Here, although its second amended complaint added allegations relating to Ms.

5    Gore and Mr. Toth and restated its tortious interference claim against Madrona relating to

6    the sale of Ms. Asano's property, Ten Bridges did not substantially amend its allegations

7    against Madrona.  (*See generally* MTA at 4-21 (redlined proposed second amended

8    complaint).)  In particular, Ten Bridges made only minor amendments to its abuse of

9    process claim against Madrona—a claim that arises directly from Madrona's opposition

10   to Ten Bridges' attempts to redeem Ms. Asano's property in King County Superior

11   Court.  (*See id.* ¶¶ 75-79.)  Thus, the court finds that Madrona was not entitled to assert

12   its CPA counterclaim as of right.

13          Nevertheless, the court finds that it would unduly waste time and resources if the

14   court were to strike Madrona's CPA counterclaim and require it to file a motion to amend

15   that raises the same issues that are already before the court.  *See Childress*, 2011 WL

16   2071200, at *2 (citing *Askenta Paneele + Profile GmbH v. Unilin Flooring N.C., LLC*,

17   464 F. Supp. 2d 481, 486 (D. Md. 2006)).  The court therefore considers now whether to

18   grant Madrona leave to add its CPA counterclaim.  *See id.*

19          Once the court files a pretrial scheduling order pursuant to Federal Rule of Civil

20   Procedure 16 and the deadline for amending a pleading has passed, a party's motion to

21   amend is governed by Rule 16.  *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d

22   604, 607-08 (9th Cir. 1992).  Under Rule 16, a party must show "good cause" for an

1    amendment to justify modifying the case schedule.  Fed. R. Civ. P. 16(b)(4) ("A schedule

2    may be modified only for good cause and with the judge's consent."); *see also Johnson*,

3    975 F.2d at 608.  "Rule 16(b)'s 'good cause' standard primarily considers the diligence of

4    the party seeking the amendment." *Johnson*, 975 F.2d at 609.  If a party shows "good

5    cause" to amend the case schedule under Rule 16, it must then demonstrate that

6    amending the pleading is proper under Rule 15.  *See id. at* 608.  Under Rule 15(a)(2), the

7    court should freely give leave to amend a pleading where justice so requires.  Fed. R. Civ.

8    P. 15(a)(2).  The court considers five factors in deciding whether to grant leave to amend:

9    (1) bad faith, (2) undue delay, (3) prejudice to the opposing party, (4) futility of

10   amendment, and (5) whether the party has previously amended its pleading. *Allen v. City

11   of Beverly Hills*, 911 F.2d 367, 373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil

12   Co.*, 866 F.2d 1149, 1160 (9th Cir. 1989)).  The third factor of prejudice is the

13   "touchstone of the inquiry." *Eminence Capital, LLC v. Aspeon*, *Inc.*, 316 F.3d 1048,

14   1052 (9th Cir. 2003).

15         Because Madrona's proposed amendment to add its CPA counterclaim is untimely

16   under the court's scheduling order (*see* Sched. Order (Dkt. # 41) (setting deadline for

17   amending pleadings on September 30, 2020)), Madrona must establish good cause under

18   Rule 16.  *See Johnson*, 975 F.2d at 608.  Madrona asserts that it was unclear whether it

19   could state a CPA claim until October 26, 2020, when the Washington Court of Appeals

20   affirmed that Ten Bridges' contract with Ms. Asano violated RCW 63.29.350(1).  (Resp.

21   at 13.)  Madrona filed its CPA counterclaim less than a month after that decision and

22   within two weeks of Ten Bridges' filing of its second amended complaint.  (*See id.*; *see*

1  *generally* Dkt.)  Under these circumstances, the court finds that Madrona has established

2  good cause to amend its counterclaim.

3      Because Madrona has established good cause, the court considers whether the

4  amendment is proper under Rule 15(a)(2).  *See Johnson*, 975 F.2d at 608.  Four of the

5  five factors clearly weigh toward amendment.  First, the court does not find that

6  Madrona's amendment was in bad faith.  As discussed above, the law is unsettled in the

7  Ninth Circuit regarding when a defendant may assert a counterclaim as of right in

8  response to an amended complaint, and Ten Bridges makes no argument that Madrona

9  acted in bad faith.[9]  (*See* Reply.)  Second, the court finds no undue delay.  Madrona filed

10  its amended complaint within a month of the Washington Court of Appeals' decision and

11  within two weeks of Ten Bridges' filing of its amended complaint.  Third, the court does

12  not find that amendment would prejudice Ten Bridges because the discovery deadline in

13  this case is not until September 13, 2021, leaving ample time for discovery on the CPA

14  counterclaim.  (*See* Sched. Ord. at 1.)  With respect to the fifth factor, Madrona has not

15  previously amended its answer and counterclaims.  (*See generally* Dkt.)

16      The fourth factor, whether amendment would be futile, demands more analysis.

17  Ten Bridges asserts that Madrona's CPA claim is a compulsory counterclaim that

18  Madrona waived by failing to allege it in its answer to Ten Bridges' first amended

19  complaint and that Madrona cannot state a claim for relief under the CPA.  (*See* Mot. at

20  4-7; Reply at 5-6.)  As an initial matter, the court agrees that Madrona's CPA

21

22  ⸻⸻⸻⸻⸻⸻
[9] Ten Bridges does not address the Rule 15 factors in its reply.  Rather, it simply reasserts
that the court should not allow Madrona leave to file its CPA counterclaim.  (*See* Reply at 3.)

1    counterclaim is a compulsory counterclaim.  A counterclaim is compulsory if it arises out

2    of the same transaction or occurrence as the opposing party's claim; is not the subject of

3    another pending action; and does not require the joinder of a party over which the court

4    cannot acquire jurisdiction.  Fed. R. Civ. P. 13(a).  Here, Madrona's CPA counterclaim

5    arises out of Ten Bridges' unlawful contract with Ms. Asano and the state-court litigation

6    of Ten Bridges' attempts to redeem Ms. Asano's property.  (*See* Am. Counterclaims

7    ¶¶ 2-24.)  This same contract and litigation also form the basis of Ten Bridges' abuse of

8    process and tortious interference claims against Madrona.  (*See* SAC ¶ 47 (alleging that

9    Madrona tortiously interfered with Ten Bridges' business relationship with Ms. Asano by

10   opposing Ten Bridges' attempts to redeem Ms. Asano's property); *id.* ¶¶ 75-79 (alleging

11   that Madrona's objection to Ten Bridges' tender of redemption proceeds for Ms. Asano's

12   property "was for the ulterior purpose of harassing and harming" Ten Bridges).)  There

13   are no allegations that the CPA counterclaim is the subject of another pending action, and

14   Madrona did not need to join any other party to assert that claim.  (*See generally* Am.

15   Counterclaims.)  Accordingly, the court concludes that Madrona's CPA claim was a

16   compulsory counterclaim.

17        Under Federal Rule of Civil Procedure 13(a), a responsive pleading must include

18   any mature compulsory counterclaim.  Fed. R. Civ. P. 13(a).  As discussed above,

19   Madrona contends that its claim was not truly mature until October 26, 2020, when the

20   Washington Court of Appeals affirmed the superior court's order finding that Ten

21   Bridges' contract with Ms. Asano was unlawful.  (*See* Resp. at 12-13.)  Nevertheless,

22   even if Rule 13(a) required Madrona to plead its CPA counterclaim in its answer to Ten

1    Bridges' first amended complaint, Ten Bridges' cited cases do not support its contention

2    that Madrona's counterclaim is incurably waived.  In *Pochiro v. Prudential Ins. Co.*, 827

3    F.2d 1246, 1253-54 (9th Cir. 1987), the court held that the defendant's counterclaims

4    were barred in federal court under Arizona res judicata principles because they were

5    compulsory counterclaims that should have been brought in a prior state court action—a

6    scenario that is not present in this case.  And in *Lexington Ins. Co. v. Langei*, No.

7    C12-0946TSZ, 2014 WL 3563380, at *3 (W.D. Wash. July 18, 2014), the court observed

8    that the defendant could seek leave of court to amend its answer to cure any failure to

9    plead an omitted compulsory counterclaim.  Indeed, Ten Bridges has not cited any

10   authority for the proposition that a defendant incurably waives a compulsory

11   counterclaim by failing to assert it in its initial pleading or that the court cannot grant a

12   defendant leave to amend its counterclaims to allege an omitted compulsory

13   counterclaim.  (*See generally* Mot.; Reply.)  The court concludes that amendment is not

14   futile because Madrona has not incurably waived its CPA counterclaim by failing to

15   assert it in its answer to Ten Bridges' first amended complaint.

16          Second, as the court explains in more detail below, amendment is not futile

17   because Madrona has sufficiently stated a claim for relief under the CPA.  *See infra* §

18   III.C.3.  Accordingly, the court grants Madrona leave to assert its CPA counterclaim in its

19   answer to Ten Bridges' second amended complaint and denies Ten Bridges' motion to

20   dismiss Madrona's CPA counterclaim for procedural deficiencies.

21

22

1       2.      Subject Matter Jurisdiction

2               Under Rule 12(b)(1), the court must dismiss a complaint over which it lacks

3       subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  The burden rests upon the party

4       asserting jurisdiction.  *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377

5       (1994).  Ten Bridges contends that the court lacks subject matter jurisdiction over

6       Madrona's CPA counterclaim because Madrona cannot establish standing or diversity

7       jurisdiction.  (Mot. at 5-6.)

8               a.      *Standing*

9               Ten Bridges asserts that the court must dismiss Madrona's CPA counterclaim for

10      lack of subject matter jurisdiction because Madrona lacks standing to bring that

11      counterclaim in federal court.  (Mot. at 6.)  To establish standing under the "case or

12      controversy" requirement of Article III of the United States Constitution, a plaintiff must

13      demonstrate a sufficient personal stake in the outcome to justify the invocation of judicial

14      process.  *Baker v. Carr*, 369 U.S. 186, 204 (1962).  To have standing under Article III, a

15      plaintiff must demonstrate that (1) he has suffered an actual or threatened injury in fact;

16      (2) the injury is causally connected to the conduct complained of; and (3) it is likely, and

17      not merely speculative, that his injury will be redressed by a favorable decision.  *Lujan v.*

18      *Defenders of Wildlife*, 504 U.S. 555, 560 (1992).  The requisite injury-in-fact pursuant to

19      Article III must be actual or threatened, and not merely speculative.  *Id.*

20              In ruling on a motion to dismiss for want of standing, the "court[ ] must accept as

21      true all material allegations of the complaint, and must construe the complaint in favor of

22      the complaining party."  *Warth v. Seldin*, 422 U.S. 490, 501 (1975).  Thus, "[a]t the

1  pleading stage," as in this case, "general factual allegations of injury resulting from the

2  defendant's conduct may suffice . . . ." *Cardenas v. Anzai*, 311 F.3d 929, 933 (9th Cir.

3  2002) (quoting *Lujan*, 504 U.S. at 561) (internal quotation marks omitted).  The court

4  cannot, however, interpret the complaint so liberally as to extend its jurisdiction beyond

5  constitutional limits.  *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

6       The court finds that Madrona has sufficiently pleaded the elements necessary to

7  establish Article III standing.  First, Madrona pleads an actual injury in fact:  it alleges

8  that it was required to incur and pay legal fees as a result of Ten Bridges' violation of the

9  CPA.  (Am. Counterclaims ¶ 21.)  Second, Madrona also pleads causation.  Causation

10  requires that there be a "fairly trace[able] connection between the alleged injury in fact

11  and the alleged conduct of the defendant."  *Lujan*, 504 U.S. at 560-61.  Madrona pleads

12  that but for Ten Bridges' violation of the CPA, it would not have had to incur and pay the

13  legal fees.  (Am. Counterclaims ¶ 21.)  Finally, Madrona demonstrates redressibility.

14  Redressibility means it is "likely" and not "merely speculative" that the plaintiff's injury

15  will be remedied by the relief plaintiff seeks in bringing suit.  *Lujan*, 504 U.S. at 560–61.

16  Here, Madrona seeks compensation for the legal fees that it incurred in opposing Ten

17  Bridges' attempts to redeem Ms. Asano's property.  (Am. Counterclaims ¶ 21.)  This

18  relief, if granted, would remedy Madrona's asserted injury.  In sum, the court finds that

19  the elements of Article III standing have been met and denies Ten Bridges' motion to

20  dismiss for lack of standing.[10]

21

22       [10] Ten Bridges contends that Madrona lacks standing because it was not a party to or a
beneficiary of the contract between Ten Bridges and Ms. Asano.  (*See* Mot. at 6.)  The court

1                      b.      *Diversity Jurisdiction*

2          Ten Bridges further contends that the court must dismiss Madrona's CPA

3    counterclaim because Madrona cannot show that the amount in controversy for that claim

4    exceeds $75,000 as required to establish diversity jurisdiction.[11]  (Mot. at 5 (citing 28

5    U.S.C. § 1332(a).)  The amount in controversy is the "amount at stake in the underlying

6    litigation" which "includes any result of the litigation, excluding interests and costs, that

7    'entail[s] a payment' by the defendant."  *Gonzales v. CarMax Auto Superstores, LLC*,

8    840 F.3d 644, 648 (9th Cir. 2016) (internal citations omitted).  "This amount

9    includes, *inter alia,* damages (compensatory, punitive, or otherwise) and the cost of

10   complying with an injunction, as well as attorneys' fees awarded under fee shifting

11   statutes."  *Id.* at 648-69.  To justify dismissal for failure to meet the amount in

12   controversy, "[i]t must appear to a legal certainty that the claim is really for less than the

13   jurisdictional amount."  *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289

14   (1938).

15         Although Madrona did not plead the jurisdictional amount in its amended

16   counterclaims (*see generally* Am. Counterclaims), it may establish the jurisdictional

17   amount by affidavit.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (court

18

19   _____

20   finds that this argument goes to whether Madrona states a claim for relief under the CPA rather
     than to whether the court has subject matter jurisdiction over Madrona's counterclaim.  *See infra*
     § III.C.2.

21         [11] There is no dispute that there is diversity of citizenship.  Ten Bridges and its sole
22   member are citizens of Oregon and Madrona and its two members are citizens of Washington.
     (*See* SAC ¶¶ 3, 5, 8; *see also* OSC Resp. (Dkt. # 7).)

"may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction").  It has done so here.  Madrona asserts that it has incurred damages of over $41,500 so far as a result of the state-court litigation regarding Ten Bridges' attempts to redeem Ms. Asano's property and that it is seeking maximum treble damages of $25,000 and statutory attorney's fees pursuant to the CPA. (*See* 1/4/21 Beckett Decl. ¶ 3; Am. Counterclaims ¶¶ 23-24); *see also* RCW 19.86.090. The court agrees with Madrona that it is likely that statutory attorney's fees, if granted, would exceed $10,000.  (*See* 1/4/21 Beckett Decl. ¶ 3.d.)  Therefore, the court finds that Madrona has sufficiently established the court's diversity jurisdiction over its CPA claim.

Even if Madrona could not establish the jurisdictional amount in controversy, the court would have supplemental jurisdiction over the CPA claim.  A district court may exercise supplemental jurisdiction over "all other claims that are so related to the claims in the action within original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution."  28 U.S.C. § 1367(a). The "same case or controversy" test under § 1367 is broader than the "same transaction or occurrence" test for compulsory counterclaims.  *Sparrow v. Mazda Am. Credit*, 385 F. Supp. 2d 1063, 1067 (E.D. Cal. 2005).  Thus, because the court has found that Madrona's CPA counterclaim was compulsory under Federal Rule of Civil Procedure 13, *see supra* § III.C.1, that counterclaim must necessarily satisfy the "same case or controversy" test for supplemental jurisdiction.  Accordingly, the court denies Ten Bridges' motion to dismiss Madrona's CPA counterclaim for lack of subject matter jurisdiction.

1        3.      Failure to State a Claim

2        Ten Bridges contends that the court must dismiss Madrona's CPA counterclaim

3   for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6).  (Mot. at 6-7.)

4   When considering a motion to dismiss under Rule 12(b)(6), the court construes the

5   complaint in the light most favorable to the nonmoving party.  *Livid Holdings Ltd. v.*

6   *Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).  The court must accept

7   all well-pleaded facts as true and draw all reasonable inferences in favor of the plaintiff.

8   *Wyler Summit P'ship v. Turner Broad. Sys., Inc.*, 135 F.3d 658, 661 (9th Cir. 1998).  The

9   court, however, is not required "to accept as true allegations that are merely conclusory,

10   unwarranted deductions of fact, or unreasonable inferences."  *Sprewell v. Golden State*

11   *Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  "To survive a motion to dismiss, a

12   complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

13   relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting

14   *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Telesaurus VPC, LLC v.*

15   *Power*, 623 F.3d 998, 1003 (9th Cir. 2010).  "A claim has facial plausibility when the

16   plaintiff pleads factual content that allows the court to draw the reasonable inference that

17   the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 677-78.  Dismissal

18   under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence

19   of sufficient facts alleged under a cognizable legal theory.  *Balistreri v. Pacifica Police*

20   *Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

21        Under the CPA, a private plaintiff must prove:  (1) an unfair or deceptive act or

22   practice; (2) occurring in trade or commerce; (3) that impacts the public interest; (4)

1   causes injury to the plaintiff's business or property; and (5) that injury is causally linked

2   to the unfair or deceptive act.  *Hangman Ridge Training Stables, Inc. v. Safeco Title Ins.*

3   *Co.,* 719 P.2d 531, 533 (Wash. 1986).  Because Madrona's CPA counterclaim is based on

4   Ten Bridges' violation of RCW 63.29.350(1), the first three elements of the claim are

5   met.  *See id.* at 535 ("[A] per se unfair trade practice exists when a statute which has been

6   declared by the Legislature to constitute an unfair or deceptive act in trade or commerce

7   has been violated"); RCW 63.29.350(2) (stating that the practices covered by RCW

8   63.29.350(1) "vitally affect[]" the public interest and that any violation "is an unfair or

9   deceptive act or practice in trade or commerce and an unfair method of competition for

10  purposes of applying" the CPA).  Ten Bridges argues that the court must dismiss

11  Madrona's CPA claim because Madrona lacks standing to bring a CPA claim based on

12  Ten Bridges' violation of RCW 63.29.350(1) and because Madrona's claimed injury—

13  the legal fees it incurred in the state-court litigation over Ten Bridges' attempts to redeem

14  Ms. Asano's property—is not cognizable under the CPA.

15      First, Ten Bridges argues that Madrona lacks standing to bring a CPA claim

16  because it was neither a party nor a third-party beneficiary to Ten Bridges' unlawful

17  contract with Ms. Asano.  (Mot. at 6.)  As the Washington Supreme Court has

18  recognized, however, the *Hangman Ridge* test incorporates the issue of standing to bring

19  a CPA claim through the elements of public interest impact and injury.  *Panag v.*

20  *Farmers Ins. Co. of Wash.*, 204 P.3d 885, 889-90 (Wash. 2009).  Thus, the court need not

21  conduct a separate inquiry into the relationship between the parties to determine whether

22  Madrona has "standing" under the statute.  *See id.* at 890 (declining to adopt a "sixth

1    element, requiring proof of a consumer transaction between the parties, under the guise of

2    a separate standing inquiry"). Rather, the CPA "allows '*[a]ny* person who is injured in

3    his or her business or property by a violation" of the act to bring a CPA claim." *Id.*

4    (quoting RCW 19.86.090) (emphasis in original). Nothing in the language of the CPA

5    requires a plaintiff to be in a consumer or business relationship—either direct or

6    implied—with the defendant. *Id.; see also id.* at 892. Instead, "what is necessary, and

7    does constitute the needed link between the plaintiff and the actor, is that the violation

8    cause injury to the plaintiff's business or property as required by RCW 19.86.090." *Id.* at

9    890. Thus, here, Madrona sufficiently establishes "standing" to bring its CPA claim by

10   alleging that Ten Bridges' violation of RCW 63.29.350(1) caused it injury to its business

11   or property. (*See* Am. Counterclaims ¶¶ 17-21.)

12        Second, Ten Bridges contends that the attorney's fees that Madrona incurred in

13   opposing Ten Bridges' efforts to redeem Ms. Asano's property are not a cognizable

14   injury under the CPA. (Mot. at 6-7.) Ten Bridges' reliance on *Panag* and *Demopolis v.*

15   *Galvin*, 786 P.2d 804, 809 (Wash. Ct. App. 1990), for the proposition that attorney's fees

16   can never constitute "injury" is misplaced. (*See* Mot. at 6-7.) In *Panag*, the Washington

17   Supreme Court distinguished attorney's fees incurred as a result of an unfair or deceptive

18   act or practice from fees incurred to institute a CPA claim. 204 P.3d at 902. Although

19   the expenses incurred in bringing the CPA claim itself are not a cognizable injury,

20   "[i]nvestigation expenses and other costs resulting from a deceptive business practice

21   sufficiently establish injury." *Id.* Indeed, the *Panag* court found that the plaintiff's

22   expenses incurred in consulting an attorney regarding the underlying deceptive practice

1    constituted injury under the CPA.  *Id.*  Similarly, in *Demopolis*, the court held only that

2    litigation expenses incurred in bringing a CPA counterclaim were not a cognizable injury;

3    it said nothing about attorney's fees incurred in underlying litigation caused by an unfair

4    or deceptive practice in trade or commerce.  786 P.2d at 809; *see also Panag*, 204 P.3d at

5    900-01 (discussing *Demopolis*).

6         Here, Madrona has alleged that but for Ten Bridges' violation of RCW

7    63.29.350(1) in its contract with Ms. Asano, it would not have suffered the injury of

8    incurring legal fees in the underlying state law action to oppose Ten Bridges' efforts to

9    redeem Ms. Asano's property.  (*See* Am. Counterclaims ¶¶ 17-21.)  These allegations are

10   sufficient to establish the fourth and fifth elements of the *Hangman Ridge* test.  The court

11   finds that Madrona has plausibly alleged its CPA counterclaim against Ten Bridges, and

12   denies Ten Bridges' motion to dismiss for failure to state a claim.

13        In sum, the court concludes that none of the three categories of arguments raised

14   by Ten Bridges are availing.  The court DENIES Ten Bridges' motion to dismiss

15   Madrona's CPA counterclaim.

16   //

17   //

18   //

19   //

20   //

21   //

22   //

1

## IV.    CONCLUSION

2          For the foregoing reasons, the court GRANTS in part and DENIES in part Ten

3    Bridges' motion to dismiss (Dkt. # 53).  The court GRANTS Ten Bridges' motion to

4    strike Defendants' anti-SLAPP counterclaim and DENIES Ten Bridges' motion to

5    dismiss Madrona's CPA counterclaim.

6

7          Dated this 25th day of February, 2021.

8

9

10    JAMES L. ROBART
      United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22