William G. Fig, WSBA 33943
wfig@sussmanshank.com
SUSSMAN SHANK LLP
1000 SW Broadway, Suite 1400
Portland, OR 97205-3089
Telephone: (503) 227-1111
Facsimile: (503) 248-0130
      Attorneys for Plaintiff

Honorable James L. Robart

# IN THE UNITED STATES DISTRICT COURT

## WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | | |
|---|---|---|
| TEN BRIDGES, LLC, a Foreign Limited Liability Company, | ) ) ) | Case No. 2:19-CV-01237-JLR |
|           Plaintiff, | ) ) ) | **TEN BRIDGES, LLC'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT** |
|    v. | ) ) | |
| MIDAS MULLIGAN, LLC, a Washington Limited Liability Company; MADRONA LISA, LLC, a Washington Limited Liability Company; and DANIELLE GORE, an individual, | ) ) ) ) ) ) | NOTE ON MOTION CALENDAR: September 10, 2021 |
|           Defendants. | ) ) | |
| AND RELATED COUNTERCLAIM | ) ) | |

1

2

# TABLE OF CONTENTS

3   INTRODUCTION ................................................................................................ 1

4       A.   Background - Ten Bridges' Business............................................................ 2

5       B.   Background Facts – Defendants' Tortious Interference. ........................... 4

6           1.   Gore's Interference with the Thomas Transaction.............................. 4

7           2.   Gore's and Midas Mulligan's Interference with the Guandai
                 Transaction. ......................................................................................... 7

8
9       C.   Plaintiff's Tortious Interference Claims........................................................ 9

10          1.   Asano, Guandai and Collateral Estoppel. ..................................... 10

11          2.   Ten Bridges has a Viable Tortious Interference Claim Re the Thomas
                 Transaction. ....................................................................................... 10

12              a.   Collateral Estoppel Does Not Apply................................... 10

13              b.   The Thomas Transaction....................................................... 12

14              c.   The Thomas Quit Claim Deed Does Not Violate RCW
                     63.29.350. ........................................................................... 14

15
16                  i.   Ten Bridges was not paid any fee or compensation for
                         locating the surplus funds....................................... 14

17                  ii.  RCW 63.29.350(1) does not apply to funds held by a
                         Superior Court as a result of a judicial foreclosure of a
18                       private deed of trust. ........................................... 15

19      D.   Material Issues of Fact Exist Regarding Ten Bridges Abuse of Process Claim ....... 20

20   CONCLUSION........................................................................................................ 23

21

22

23

24

25

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1

<strong>TABLE OF AUTHORITIES</strong>

2

**Cases**

3

4

*Anfinson v. FedEx Ground Package Sys., Inc.*,
    174 Wn. 2d 851, 281 P.3d 289 (2012) ................................................................. 16

5

*Auto. Drivers & Demonstrators Union Local 882 v. Dep't of Ret. Sys.*,
    92 Wash. 2d 415, P.2d 379 (1979) .................................................................. 16

6

*City of Arlington*,
    164 Wn.2d 768 ................................................................................................... 11

7

8

*Featherstone v. Dessert*,
    173 Wash. 264, 22 P.2d 1050 (1933) ................................................................. 15

9

*Fite v. Lee*,
    11 Wash. App. 21, 27 (1974) ............................................................................. 20

10

*In re Kirkland*,
    915 F.2d 1236 (9th Cir. 1990) ........................................................................... 12

11

12

*Int'l Tracers of America v. Hard*,
    89 Wn.2d 140, 570 P.2d 131 (1977) ............................................................. 3, 15

13

*Kerrigan v. Qualstar Credit Union*,
    2017 U.S. Dist. LEXIS 11872, Case No. C16-1528-JCC (W.D. Wash. 2017) .......... 12, 19

14

15

*Khoja v. Orexigen Therapeutics, Inc.*,
    899 F.3d 988 (9th Cir. 2018) ............................................................................... 1

16

*Lemond v. State Dep't of Licensing*,
    143 Wn. App. 797 P.3d 829 (2008) ................................................................... 11

17

18

*Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*,
    119 Wash. App. 665 (2004) ............................................................................... 20

19

*Moore v. Commercial Aircraft Interiors, LLC*,
    168 Wn. App. 502, P.3d 197 (2012) ..................................................................... 9

20

21

*NCAA Student-Athlete Name and Likeness Licensing Litig.*,
    724 F.3d 1268 (9th Cir. 2013) ........................................................................... 12

22

*Nelson v. McGoldrick*,
    127 Wn.2d 124, 896 P.2d 1258 (1995) ..................................................... 3, 15, 19

23

24

*Parklane Hosiery Company, Inc v. Shore*,
    439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979) ......................................... 11

25

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

*Pinehurst Lane Condominium Assoc. v. Teresa Guandai,*
    Case No. 15-2-26658-6 SEA ......................................................................... 7

*Shoemaker v. City of Bremerton,*
    109 Wn.2d 504, P.2d 858 (1987) ................................................................ 11

*State v. Daniel J. Evans Campaign Comm'n,*
    86 Wash. 2d 503, P.2d 75 (1976) .............................................................. 16

*Sunwood Condominium Assoc. v. Stephen Douglas, et. al.,*
    King County Case No. 17-2-19090-0 ........................................................... 1

*Ten Bridges, LLC v Guandai,*
    15 Wn. App. 2d 223 (2020) ................................................... 10, 11, 12, 15

**Statutes**

RCW 36.88.140 .................................................................................................. 16

RCW 36.94.150 .................................................................................................. 15

RCW 4.44.480 ................................................................................................... 18

RCW 4.44.490 ................................................................................................... 18

RCW 4.44.500 ................................................................................................... 18

RCW 6.12.150 ......................................................................................... 3, 18, 20

RCW 6.21.110 ......................................................................................... 2, 3, 18

RCW 6.23.020(1) .................................................................................................. 3

RCW 61.12.150 ................................................................................... 2, 18, 21, 22

RCW 61.24.080 ................................................................................................... 18

RCW 63.29.350 ........................................................................................ 2, 10, 11

RCW 63.29.350(1) ......................................................................................... 15, 16

RCW 84.64.120(10) ........................................................................................... 18

RCW Ch. 6.23 ...................................................................................................... 2

RCW Ch. 61.12 .................................................................................................... 3

*/ / /*

TABLE OF AUTHORITIES- Page iii

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1

**Other Authorities**

2

HB 2428 ......................................................................................... 16, 17, 18

3

4

**Rules**

5

FRE 201 .......................................................................................... 1, 7, 21

FRE 803(6) ............................................................................................. 13

RAP 16.16 ............................................................................................. 19

Wash. Civ. R. 67 .................................................................................... 18

Wash. R. App. P. 8.1 .............................................................................. 19

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1        **INTRODUCTION**

2        "Don't throw stones at your neighbors, if your own windows are glass." – Benjamin

3    Franklin.

4        The "Introduction" in Defendants' Summary Judgment Brief is nothing more than a smear

5    campaign against Ten Bridges, LLC ("Ten Bridges") in a transparent attempt by defendants to

6    play on the court's emotion. It is also pure hypocrisy. *Defendants have engaged in the exact same*

7    *behavior* as Ten Bridges in the state of Washington.[1]

8        A shining example of defendants' hypocrisy is the case of *Sunwood Condominium Assoc.*

9    *v. Stephen Douglas*, *et. al*., King County Case No. 17-2-19090-0.[2] In that case, the Superior Court

10   held $111,550.53 in surplus funds after a judicial foreclosure and sheriff's sale of Douglas'

11   property. Midas Mulligan petitioned the court for the surplus funds based on the grounds *"Midas*

12   *\* \* \* purchased the defendants' title interest in the property and the defendants' redemption rights,*

13   *and recorded the quit claim deed on April 20th, 2018."* Emphasis added; Declaration of William

14   G. Fig ("Fig Decl."), ¶ 2, Exhibit 1 – Midas Mulligan's Petition. Midas Mulligan's Petition was

15   supported by the Declaration of defendant Alex Toth attesting that Midas Mulligan was the proper

16   claimant to the funds.  Fig Decl., ¶ 3, Exhibit 2 – Toth Declaration.  The Quit Claim Deed, attached

17   as an exhibit to Mr. Toth's Declaration, states Mr. Douglas "forever quitclaim, release, transfer,

18   assign and convey to Midas Mulligan, LLC Grantor's interest in the property \* \* \* together with

19   all after acquired title of the Grantor therein, including all surplus funds generated from the sale,

20   if any, and all claims concerning the property." This ***exact same type of transaction*** Ten Bridges

21   did with Yukiko Asano ("Asano"), Tereasa Guandai ("Guandai"), Jay Millsap and Justin Thomas

22   ---

[1] The full extent of defendants' hypocrisy is unknown because the court denied Ten Bridges'

23   motion to compel discovery from defendants on this issue. As the court can now see, defendants
have made this issue directly relevant by clearly trying to place a "black hat" on Ten Bridges.

24
[2] Under FRE 201, Ten Bridges requests the court take judicial notice of the pleadings in the King

25   County action attached to the Declaration of William G. Fig. *Khoja v. Orexigen Therapeutics, Inc*.,
899 F.3d 988, 998 (9th Cir. 2018) (the court may take judicial notice of documents pursuant to

26   Federal Rule of Evidence 201). In this action, the Court has taken judicial notice of pleadings filed
in Washington state court actions. Doc. 63, pp. 9-10.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 1

1   ("Thomas"). *See* Declaration of Demian Heald ("Heald Decl."), ¶¶ 6 and 14, Exhibits 2, 3 and 5.[3]

2   As a result of its Petition, Toth's declaration, and the Quit Claim Deed between Mr. Douglas and

3   Midas Mulligan, Midas Mulligan received $111,550.53 in surplus funds being held by the court.

4   Fig Decl., ¶ 4, Exhibit 3 - Order.

5          Therefore, according to defendants' own motion (and their counsel's (Guy Beckett)

6   argument in the Asano, Guandai and Thomas matters[4]), Midas Mulligan and Mr. Toth violated

7   RCW 63.29.350, stole over $110,000 from Mr. Douglas, and, therefore, violated the Washington

8   Consumer Protection Act.[5] So, Midas Mulligan and Mr. Toth either *knowingly* and *intentionally*

9   violated the law for their own monetary gain or, like Ten Bridges, they acted under the good faith

10  belief that what they were doing was legal under Washington law. Regardless, defendants need to

11  dismount their high horse and heed Mr. Franklin's sage advice.

12  **A.      Background - Ten Bridges' Business.**

13         Contrary to defendants' assertions, Ten Bridges does not rob old ladies or torture kittens.

14  Like Midas Mulligan and Madrona Lisa, Ten Bridges purchases a person's interest in real

15  property[6], including all rights associated therewith. This includes the right to redeem a property

16  after a sheriff's sale (RCW Ch. 6.23) and the right to petition the court for surplus funds as the

17  person's assignee (RCW 61.12.150 and RCW 6.21.110). Heald Decl., ¶ 2.

18         In a nutshell, the judicial foreclosure process in Washington is as follows: (1) foreclosure

19  lawsuit filed; (2) judgment of foreclosure entered ordering sale of property to satisfy the

20

21  [3] Unlike Midas Mulligan, Ten Bridges' deeds disclose to the grantor the amount of surplus funds
    being held by the court.

22
    [4] *See e.g.* Exhibits 3, 5, 6, 8, 11, 13, 14, 16, 26, 29, 32 and 36 to Declaration of Guy Beckett, Doc.

23  74.

24  [5] Because Midas Mulligan's and Mr. Toth's counsel, Guy Beckett, has vehemently and
    consistently argued in the Asano, Guandai and Thomas matters that Ten Bridges' pursuit of surplus

25  funds is improper, defendants cannot argue in their Reply that Midas Mulligan's and Mr. Toth's
    actions are somehow copesetic. *See e.g.* Beckett Declaration, Doc. 74, Exhibits 3, 5, 6, 8, 11, 13,

26  14, 16, 26, 29, 32 and 36; RPC 1.7(a)(2), comment 24.

    [6] The property is often "distressed", *i.e.* the loan is in default or is in the process of being foreclosed.

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 2

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   foreclosing lender's lien; (3) the property is sold by the sheriff at auction; (4) at the auction, the

2   property may be purchased by foreclosing lender via a credit bid for the amount owed to it, or by

3   a third party for an amount in excess of the lender's credit bid; and (5) in the latter circumstance,

4   the lender is paid the amount it is owed and the excess or surplus funds are tendered by the sheriff

5   to the court for further distribution. *See* RCW Ch. 61.12. After the sale, the foreclosed owner can

6   redeem (buy back) the property from the purchaser at the sheriff's sale for up to 8 months.  RCW

7   6.23.020(1).  Or they can petition the court for any surplus funds resulting from the sale of their

8   property. RCW 6.12.150 and RCW 6.21.110.

9          Ten Bridges purchases property rights at all stages of the foreclosure process - before the

10  entry of the foreclosure judgment; after the entry of judgment, but before the sheriff's sale; and

11  after the sheriff's sale. Heald Decl., ¶ 4. In the first two instances, *because no sale has occurred*,

12  Ten Bridges does not know whether it will be economically viable to redeem the property or

13  whether any excess funds will be generated from yet-to-be-held sheriff's sale of the property.

14  Nonetheless, Ten Bridges pays the person selling their rights a <u>non-refundable</u> cash payment for

15  their property interests.  *Id.*

16         With the property rights it has purchased, depending on the sale price of the property at the

17  sheriff's sale, Ten Bridges may elect to redeem the property. *Id.*, ¶ 5. If the sale price is too high,

18  but the sale generates excess proceeds, Ten Bridges may elect to petition the court for those funds.

19  *Id*. In the latter instance, other creditors may make a claim to the funds, *e.g.* condominium HOA's

20  and the state of Washington. Thus, the fact a court holds surplus funds does not mean Ten Bridges

21  will receive all (or any) of the funds.  *Id.* In some instances, the sale price is high and in other cases

22  there are no surplus funds, so Ten Bridges takes no action and gets nothing.  *Id.*

23         What Ten Bridges does **NOT** do is charge a fee to locate or for locating property or surplus

24  funds.[7] Heald Decl., ¶ 6. It does **NOT** receive any compensation to locate or for locating surplus

25  _____

26  [7] A finder's fee would be an up-front agreement with a person to locate yet-to-be-discovered funds.
    That is what RCW 63.29.350(1) intends to address. Heald Decl., ¶6; See *Nelson*, *infra*. &  *Int'l
    Tracers of America, infra.*

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 3

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    funds. *Id*. In fact, if surplus funds exist at the time Ten Bridges purchases property rights, the

2    amount of funds being held by the court is disclosed to the seller of the property interests **for free**.

3    *Id*. Indeed, this is exactly what happened in the Guandai and Thomas transactions. Ten Bridges

4    told both Guandai and Thomas the exact amount of surplus proceeds being held by the court and

5    did not charge them a dime for the information.[8] *Id*., Exhibits 1 and 2. It received no compensation

6    from any source whatsoever to locate or for locating the surplus funds in the Thomas and Guandai

7    matters. *Id*. Either Thomas or Guandai could have taken the information provided by Ten Bridges

8    and pursued the excess funds themselves without paying anything to Ten Bridges. *Id*.

9    **B.    Background Facts – Defendants' Tortious Interference.**

10           Midas Mulligan, Madrona Lisa, and Ten Bridges are business competitors. Heald Decl.,

11   ¶ 7.  Midas Mulligan and Madrona Lisa have the same owners, Alex Toth ("Toth") and Danielle

12   Gore ("Gore").   Toth Declaration, Doc. 72, ¶ 2. Ten Bridges filed tortious interference claims

13   against defendants based on Toth's and Gore's unbelievably brash interference with Ten Bridges'

14   transactions with Asano, Guandai and Thomas. In those transactions, Ten Bridges purchased, via

15   a Quit Claim Deed, Asano's, Guandai's and Thomas'[9] respective interests in real property and all

16   of their rights related thereto. Ten Bridges paid Guandai $15,000 for her property interests and it

17   paid $9,500 to Thomas for his property interests. Heald Dec., ¶¶ 8 and 10. Texts produced by

18   defendants pursuant to Ten Bridges' discovery requests show their interference with Ten Bridges'

19   transactions with the aforementioned parties.

20           **1.    Gore's Interference with the Thomas Transaction.**

21           Ten Bridges purchased Thomas' property interests and all related rights to real property

22   known as 23432 13th Place, Bothell, Washington via a Quit Claim Deed (see § C(2)(b) below),

23   and filed a motion with the Superior Court to recover surplus funds from the sale of that property.

24   Heald Decl., ¶ 8. *Defendants had no involvement with the Thomas transaction or the property at*

25   ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26   [8] The Asano matter involved Ten Bridges' attempt to redeem the property, not surplus funds.
     [9] Ten Bridges dealt with Mr. Thomas' attorney regarding the purchase of his rights. See § B(4)
     below.

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 4

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1     *issue*. *Id*.  Nonetheless, Gore "cold called" Thomas regarding Ten Bridges' motion and then

2     undertook, via text, an unrelating (and eventually successful) campaign to convince Thomas to

3     breach his agreement with Ten Bridges and to challenge its claim to the surplus funds. *See* Heald

4     Decl., ¶ 9, Exhibit 3 (full copy of Thomas texts). Directly below are excerpts from the texts

5     between Gore and Thomas:

June 6

**Thomas:** Hi. I have listened to both of your messages. I understand what you are referring to but in both messages *you have not said who you are, who you are with, or why this is of concern to you*. I'm a little confused. *Anything related to this is being taken care of by my attorney.* (emphasis added)

**Gore:** Your right because I*'d rather not be known as the person that alerted u to this.*. I'm happy to call your attorney If u want to give me their info. If u call me I'll give u more info as well. Ten bridges is not happy that what they are doing is being looked at by attorney general (emphasis added)

\* \* \* \* \*

**Gore** (to Thomas)**:** \* \* \* also if u want the AG's direct info that is working on these cases I can get it to u as well \* \* \*  if u want to call me I can tell u how u can email the AG yourself and ask for the remaining money

\* \* \* \* \*

June 7

**Gore** (to Thomas)**:** I left [your attorney] 2 messages If you *want me to blind carbon copy u on the email to the AG*, feel free to send me your email address. Ten Bridges has court date of June 20th set to get the $1 50,000+ so youd need to act quickly or at least notify Heidi (ag assistant) if u wanted to make a claim for the funds because otherwise they will release them to them on the 20th (emphasis added)

\* \* \* \* \*

**Gore** (to Thomas): Its rather straight forward. So *please reach out to Heidi Anderson (attorney general assistant) if you want help*. Shes extremely helpful and is not pleased with what this company is doing (emphasis added)

\* \* \* \* \*

June 8

**Gore:** \* \* \* Also *I really think u should reach out to Heidi*, she would even assign a pro bono attorney for u Because your case is actually very separate from your aunts (emphasis added)

**Thomas:** Perfect. Thanks. How should reach out to her. Can you send me her contact info?

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 5

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1

2

**Gore:** If u want to call me it would be easier to discuss  Yes I can also give u her info. *She also already knows about your case and was hoping to hear from u* (emphasis added)

* * * * *

3

4

June 10

5

**Gore:** Were u able to chat with [Heidi Anderson]?

6

7

8

**Thomas:** We talked for almost an hour She gave me the impression that she wasn't going to be able to help me much but referred me to the NW Justice project. She said she would reach out if she needed any further info She also mentioned she was going to try to get the court hearing delayed If you find out that she does can you let me know?
Thx

9

10

11

**Gore:** *Have you called nw justice project'* At the very least if u show up to the hearing and check in with the lady there, they will let u speak and u can tell the judge u would like the money based on the rcw. He will likely then postpone the hearing and assign an attorney to u (emphasis added)

* * * * *

12

13

June 12

14

**Gore:** Did you get in touch with anyone from northwest justice project?

15

16

**Thomas:** Yes. Talked to Chelsea Hicks yesterday from NJP. She was not sure if they could help. She had a financial assistance person call. She just said that if they can help they will reach out

17

18

**Gore:** Ok that sucks. *Our attorney who we helped a woman with this a couple weeks ago said he would be willing to work on 25% contingency. I could give u his info if u wanted to talk to him.* (emphasis added)

June 12

19

20

**Gore:** Well showing up would definitely force the judge to make a decision about what to do with you. So maybe you could just try that first?

21

**Thomas:** Okay. Thank you.

22

* * * * *

23

June 18

24

**Gore:** How are things going? Are u going to be there on 20th?

25

**Thomas:** Fine I guess. I will be there on the 20th. You?

26

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 6

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   **Gore:** I see that ten bridges didnt confirm the court date so it was stricken (cancelled) so there is no hearing on 20th

2   * * *

3   **Gore:** Did u ever talk to Beckett is he representing u?

4                                   * * * * *

5   June 19

6   **Gore:**  Ten bridges emailed me this morning basically begging me to stop telling people like u about how they are owed money. * * *

7   **Thomas**:  That must feel really good to have Ten Bridges begging.

8   **Gore**:  Yes * * *

9                                   * * * * *

10   July 2

11   **Gore**:  I'm so excited tho!  Once it goes to trial it will all come out.  Ten Bridges shaking in their boots. * * *

12   **Thomas:**  that's great to hear they are shaking :)

13   **Gore:**  Yes * * *

14   **2.   Gore's and Midas Mulligan's Interference with the Guandai Transaction.**

15   Regarding Guandai, Ten Bridges purchased her interests in 11532 15th Ave. NE #201,

16   Seattle, Washington and petitioned the court for surplus funds resulting from the sale of the

17   property.  Heald Decl., ¶ 10.  Midas Mulligan, the purchaser of the Guandai property at the sheriff's

18   sale, initially opposed Ten Bridges' motion claiming it (not Guandai) was entitled to the lion's

19   share of the surplus funds. *See* Beckett Decl., Exhibit 4, p. 10.[10] This is despite the fact that both

20   Midas Mulligan and Mr. Beckett knew Midas Mulligan had no viable legal claim to the funds. See

21   § D, infra.

22   Only *after* the court denied Midas Mulligan's claim to the surplus funds did Gore contact

23   Guandai to convince her to breach her agreement with Ten Bridges and oppose its motion.  Gore's

24   goal - to make sure Ten Bridges did not get the funds.  Below are excerpts from Ms. Gore's texts

25

26   _____

[10] Pursuant to FRE 201, Ten Bridges requests the court take judicial notice of the pleadings filed in *Pinehurst Lane Condominium Assoc. v. Teresa Guandai*, Case No. 15-2-26658-6 SEA.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    to Guandai showing defendants are not the innocent parties they claim to be.  See Heald Decl., ¶

2    11, Exhibit 4 (full copy of Guandai texts).

**Gore**: I know u have since signed a declaration, but the court realizes you probably don't have any idea what is going on. What we wanted was to have the judge assign an attorney to represent you and the cost would be paid out of the 90k. That is still what we are fighting for this Friday.

You ask why am I doing this? *Because I'm tired of seeing ten bridges take advantage of people like you.* *Especially **when someone like me** offers you a fair dollar value for their redemption rights*. (emphasis added).

I would highly suggest showing up on Friday. The judge told us and ten bridges last week, he wanted the 90k to go to you.

\* \* \* \* \*

**Guandai**: Would the Judge be able to ignore these 2 declarations?

**Gore**: Hmm I think we have only seen 1 declaration. Did they give u copies of both? You are able to give as many as you like. I have only seen 1 so I'm not sure what the other one is We will do whatever we can to help u. There aren't creditors claiming a right to the surplus. They are trying to get judge to give them all 90k

\* \* \* \* \*

**Gore** (to Guandai)**:** If u want to chat sometime this weekend we could discuss helping u with updated declaration, declaring that you do want the money and explaining why your declaration has changed

\* \* \* \* \*

**Gore** (to Guandai)**:** Hi Teresia, I emailed over the document, let me know if u have any questions. If it looks good then u can just sign and email it back Beckett (our attorney) will file it with the court so the court will read it before the hearing on Friday! Judge may still ask u questions such as "is your position now that u want the funds" but as long as u are there, you'll be in the best position to get them

\* \* \* \* \*

**Guandai:** Hi Danielle I just signed the document and scanned it back to your email. Let me know if you received it

**Gore:** Received and sent to attorney for filing with the court *I cant imagine ten bridges will be very happy when they see it filed*. (emphasis added)

\* \* \* \* \*

**Gore** (to Guandai)**:** Oh. Teresia, you are so welcome and deserving! :) I'm so happy for you. *I'm sorry that we cannot continue to fight them on your behalf with our attorney* but at least you are in a good place to be able to stand up for yourself now :) also if u end up needing an attorney we will be willing to sign a document(waiving conflict of interest) allowing Beckett to represent you if you decided you need an attorney (emphasis added)

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 8

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1

2 **Gore** (to Guandai): Hope u are doing well! Wanted to let you know that we contacted another person who they are doing this too, justin. And he now has becket fighting them as well, on contingency. I am hoping to reach a woman who is in Japan who has 370k as

3 well they are doing it to :([11]

4 In addition to evidencing defendants' egregious behavior, Gore's communications with

5 Guandai are relevant to Ten Bridges' abuse of process claim and defendants' scorched earth

6 campaign against their business competitor Ten Bridges. *See* § D. There are similar

7 communications between Toth and Asano regarding Ten Bridges. However, for the reason set

8 forth in § C(1) below, Ten Bridges will not belabor the point by detailing defendants' interference

9 in that transaction.

10 **C.    Plaintiff's Tortious Interference Claims.**

11 To prove a claim for tortious interference, a plaintiff must show: (1) the existence of a valid

12 contractual relationship or business expectancy; (2) that defendants had knowledge of that

13 relationship; (3) an intentional interference inducing or causing a breach or termination of the

14 relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper

15 means; and (5) resultant damage. *Moore v. Commercial Aircraft Interiors, LLC*, 168 Wn. App.

16 502, 508-509, 278 P.3d 197, 200 (2012). As Gore's text to Thomas (and Guandai) show, elements

17 2 through 4 are met. As a result of defendants' intermeddling in the Thomas transaction, Thomas

18 reneged on his agreement with Ten Bridges, opposed Ten Bridges' motion for the surplus funds

19 and, as a result, the Superior Court denied Ten Bridges' motion and subsequent federal court

20 litigation ensured. Heald Decl., ¶¶ 9, 19 (Thomas also kept the $9,500). Thus, the fifth element is

21 met leaving the first element. A claim for tortious interference may not be based on interference

22 with an invalid/unenforceable agreement. Thus, if the agreements between Ten Bridges and Asano,

23 Guandai and Thomas are valid and enforceable agreements, the above exchanges, at an absolute

24 minimum, create material questions of fact whether defendants tortuously interfered with Ten

25 Bridges' business relationships.

26 ───────────────
[11] "justin" is Justin Thomas and the "woman in Japan" is Asano.

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 9

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1        **1.   Asano, Guandai and Collateral Estoppel.**

2        Defendants' argue Ten Bridges' tortious interference claim fails because the Asano and

3    Guandai Quit Claim Deeds were deemed "illegal" by the Washington Court of Appeals in *Ten*

4    *Bridges, LLC v Guandai*, 15 Wn. App. 2d 223 (2020)("*Guandai* opinion").  Defendants further

5    argue that Ten Bridges is collaterally estopped by the *Guandai* opinion[12] from arguing the validity

6    of the Asano and Guandai deeds in this action. In the poorly reasoned and results-oriented *Guandai*

7    decision, the court, using a strained "form-over-substance" "analysis", and ignoring applicable

8    Washington Supreme Court case law, the language of the statute itself, and the legislative history

9    regarding the statute, found that Ten Bridges' purchase of Asano's and Guandai's property

10   interests was a finder's fee that violated RCW 63.29.350 and, therefore, the Quit Claim Deeds

11   were invalid.

12        While not admitting or conceding that collateral estoppel bars it from asserting the validity

13   of the Guandai and Asano transactions, Ten Bridges is not opposing the dismissal of its tortious

14   interference claims relating to the Guandai and Asano transactions.

15        **2.   Ten Bridges has a Viable Tortious Interference Claim Re the Thomas**

16            **Transaction.**

17        Importantly, the propriety of the Thomas Quit Claim Deed is currently being litigated in

18   Western District of Washington Case No. 2:19-cv-01134-RAJ. Heald Decl., ¶ 12. To avoid

19   inconsistent opinions on this issue, this court should stay Ten Bridges' tortious interference claim

20   regarding Thomas until the matter is ruled on in the aforementioned action. Otherwise, there is a

21   risk of inconsistent rulings on the same issue by different courts in the same district.

22        **a.   Collateral Estoppel Does Not Apply.**

23        Should this court decide to rule on the validity of the Thomas Quit Claim Deed, defendants

24   incorrectly assert that offensive collateral estoppel bars Ten Bridges from litigating this issue.

25   Collateral estoppel generally only applies when the same issues were actually litigated by the same

26

---

[12] The *Guandai* opinion was issued well after the filing of this action. The Court of Appeals address the Guandai and Asano appeals in a singular opinion.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    parties in the prior case. *See, e.g., Lemond v. State Dep't of Licensing*, 143 Wn. App. 797, 805,

2    180 P.3d 829, 833 (2008) (burden is on party seeking estoppel to show an issue was actually

3    litigated "[T]he issue to be precluded must have been actually litigated and necessarily determined

4    in the prior action." *City of Arlington*, 164 Wn.2d 768, 792 (quoting *Shoemaker v. City of

5    Bremerton*, 109 Wn.2d 504, 507-08, 745 P.2d 858 (1987). Collateral estoppel may only be applied

6    where the application would not work an injustice. *Id.* The court should only sparing allow the

7    use of offensive collateral estoppel. *See Parklane Hosiery Company, Inc v. Shore*, 439 U.S. 322-

8    323, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979).

9          No court has ruled on the validity of the Thomas Quit Claim Deed or Thomas' transaction

10   with Ten Bridges. Heald Decl., ¶ 12. Neither the validity of the Thomas deed nor the Thomas

11   transaction were at issue in the Guandai or Asano Superior Court actions nor were they part of the

12   *Guandai* opinion. The *Guandai* opinion was limited to the Guandai and Asano transactions.  The

13   Court of Appeals did not hold that Ten Bridges' business model was invalid or violated RCW

14   63.29.350 or that every transaction Ten Bridges' engaged in was void as a matter of law. *Id.*, ¶ 13.

15         Thomas was not a party to either the Guandai or the Asano actions. Defendants are not a

16   party to the pending litigation between Ten Bridges and Thomas. The Thomas case is different

17   from the Guandai and Asano matters in that, unlike Guandai and Asano, Thomas was not the

18   former owner of the property (he was an heir) and he had an experienced and respected attorney

19   review and approve the Quit Claim Deed prior to its execution.  Heald Decl., ¶ 14. And the Thomas

20   Quit Claim Deed contains different language than the Asano Quit Claim Deed. *Id.*, Exhibits 2 and

21   5. Lastly, the Asano matter involved Ten Bridges' redemption of the property, not a petition for

22   surplus funds as with Thomas. *Id.*

23         The use of offensive collateral estoppel is to be sparingly allowed. The elements of

24   collateral estoppel are not met regarding Thomas because the same parties are not relitigating the

25   same issues, *i.e.* the validity of the Asano and Guandai Quit Claim Deeds and their respective

26   transactions with Ten Bridges. Thomas was a separate and factually distinct transaction that did

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 11

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    not involve defendants in any way. Id., ¶ 8. Thomas' deed is different from the Asano deed.

2    Collateral estoppel does not bar Ten Bridges from litigating the propriety of the Thomas

3    transaction and Thomas' Quit Claim Deed.

4            Lastly, this court is not bound by the *Guandai* opinion. "Although the Court is only bound

5    by the decision of a state's highest court when considering state law claims, 'where there is no

6    binding precedent from the state's highest court, [courts] 'must predict how the highest state court

7    would decide the issue using intermediate appellate court decisions, decisions from other

8    jurisdictions, statutes, treatises, and restatements as guidance.'" *Kerrigan v. Qualstar Credit Union*,

9    2017 U.S. Dist. LEXIS 11872, Case No. C16-1528-JCC (W.D. Wash. 2017) (citing *In re NCAA*

10   *Student-Athlete Name and Likeness Licensing Litig.*, 724 F.3d 1268, 1278 (9th Cir. 2013) (quoting

11   *In re Kirkland*, 915 F.2d 1236, 1239 (9th Cir. 1990))." For the reasons set forth below, the

12   Washington Supreme Court would overrule the Court of Appeals' *Guandai* opinion.

13            **b.   The Thomas Transaction.**

14          On December 28, 2018, the property known as 23432 13th Place West, Bothell, Washington

15   98021 was sold at a sheriff's foreclosure sale resulting in $150,000 in surplus proceeds. Heald

16   Decl., ¶ 15. On May 9, 2019, Thomas, an heir of the foreclosed property owner, sold his property

17   rights, including his right to make a claim against the surplus proceeds from the sale of the

18   property, to Ten Bridges pursuant to a quit claim deed. Heald Decl., ¶¶ 6 and 8, Exhibit 2. The

19   Quit Claim Deed executed by Thomas shows he was paid the non-refundable sum of $9,500.00

20   for his interest in the property and any proceeds thereof. *Id*. Page 2 of the deed provides the

21   "Property is currently subject to or already foreclosed under Snohomish County Superior Court

22   Cause No. 122059886, and a sheriff's sale of the Property occurred on 12/28/2018." *Id*. Said

23   Agreement further states "Grantee seeks to acquire the interests of Grantor in the Property, to

24   include Grantor's potential right of redemption and title rights in anticipation of: …. 3) **the**

25   **Grantee seeking to recover at its own expense any surplus proceeds up to the**

26   **approximately $154,225 held by the court** after payment of the underlying judgment, or

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    amounts remaining after any successful claims by other foreclosed lienholders, all for its own

2    benefit." *Id.,* emphasis added.  The deed also states "Grantee recommends that Grantor consult

3    with [an] independent attorney regarding the meaning and consequences of this document" and

4    provides "ALL PAYMENTS MADE HEREUNDER ARE NON-REFUNDABLE."  *Id.*

5         Before Thomas executed the Quit Claim Deed, Ten Bridges spoke with Thomas' attorney

6    in Idaho, Daniel Glynn, pursuant to Thomas's request.  Heald Decl., ¶ 16.  At that time, Mr. Glynn

7    asked Ten Bridges to send him the proposed Quit Claim Deed, which it did via email on that

8    same day.  *Id.*  Shortly thereafter, Mr. Glynn informed Ten Bridges that Thomas would accept

9    Ten Bridges' purchase offer.  *Id.*  Mr. Glynn then sent to Ten Bridges signed copies of the

10   executed lack of probate affidavit for the late Benjamin H. Thomas, Jr. and the executed Quit

11   Claim Deed via email.  Ten Bridge later recorded the documents in Snohomish County,

12   Washington. True copies of the correspondence between Ten Bridges and Mr. Glynn are

13   attached as Exhibit 6 to the Heald Decl.[13]

14        Ten Bridges' email correspondence with Mr. Glynn demonstrates Mr. Glynn was fully

15   aware of the location and the amount of the surplus proceeds at issue prior to the transaction

16   occurring in which Thomas sold his rights in the property, including his right to make a claim

17   to the surplus proceeds, for a non-refundable, up-front payment of $9,500. Ten Bridges has

18   reviewed Mr. Glynn's professional biography online via the Martindale-Hubbell website.

19   Heald Decl., ¶ 17. According to this professional biography, Mr. Glynn graduated from law

20   school with honors in 1994, is fifty-one (51) years of age, and is AV rated.

21   https://www.martindale.com/attorney/daniel-loras-glynn-17567371/ (last visited August 12,

22   2021).  *Id.*  Ten Bridges is also aware from online research that Mr. Glynn served as a law clerk

23   at the Idaho Supreme Court in 1995 and 1996.  *Id.*

24   / / /

25

26   ───────────────
[13] These communications are admissible as business records under FRE 803(6) and for the purpose
to show Thomas was on notice of the existence and amount of surplus funds.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    c.  **The Thomas Quit Claim Deed Does Not Violate RCW 63.29.350.**

2    RCW 63.29.350(1) provides in relevant part:

3    It is unlawful for any person to seek or receive from any person or contract with any person
4    for any fee or compensation for locating or purporting to locate any property which he or
     she knows has been reported or paid or delivered to the department of revenue pursuant to
5    this chapter, or funds held by a county that are proceeds from a foreclosure for delinquent
     property taxes, assessments, or other liens, or, funds that are otherwise held by a county
6    because of a person's failure to claim funds held as reimbursement for unowed taxes, fees,
     or other government charges, in excess of five percent of the value thereof returned to such
7    owner.

8    The question regarding the applicability of RCW 63.29.350 to Ten Bridges' transaction

9    with Thomas is:

10   Was Ten Bridges was paid a "fee or compensation for locating or purporting to locate" *

11   * * "funds held by a county that are proceeds from a foreclosure for delinquent property taxes,

12   assessments, or other liens * * *?"  The short answer is "no."

13            i.       **Ten Bridges was not paid any fee or compensation for locating**
                       **the surplus funds.**

14
15   As set forth above, *Ten Bridges* *purchased* *Thomas'* *property interests* via a non-refundable

16   $9,500 payment. Heald Decl., ¶¶ 6 and 8. *Prior to* said purchase and the exchange of any money,

17   Ten Bridges disclosed to Thomas and his counsel the existence and amount of funds being held

18   by the Superior Court **for free**. Heald Decl., ¶ 18. Ten Bridges was paid no fee or compensation

19   by Thomas (or anyone else) to locate or for locating the surplus funds. *Id*. If Thomas had so desired,

20   he could have simply said "thank you for the information" and pursued the funds with his counsel

21   without paying Ten Bridges a dime. *Id*. In such instance, which does occur, Ten Bridges gets

22   *nothing*. *Id*. Ten Bridges was not paid a fee or other compensation "for locating or purporting to

23   locate" any property.

24   Instead, after Ten Bridges' written disclosure regarding the surplus funds and with the

25   advice of counsel, Thomas *sold his property interest* (which were clearly delineated in the Quit

26   Claim Deed approved by his counsel) to Ten Bridges for $9,500. This is no different than selling

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 14

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    an option to purchase property or easement rights. Moreover, just because surplus funds exist,

2    there is no guaranty what amount of the funds, if any, Ten Bridges will recover. *Id.*, ¶ 19. There

3    may be other persons asserting a claim to any surplus funds, *e.g.* siblings, the state of Washington,

4    etc. *Id.* Indeed, in the Thomas matter, a relative has asserted a claim to 50% of the surplus funds

5    and the matter has been tied up in litigation for over 24 months costing Ten Bridges thousands of

6    dollars. *Id.* Put bluntly, obtaining surplus funds from the court is far from a "sure thing." *Id.*

7        Prior to the recent decision in *Ten Bridges LLC v. Guandai*, the only published cases

8    addressing RCW 63.29.350 (or its predecessor) had applied it to an inapposite fee-for-service

9    scenario. *See Int'l Tracers of America v. Hard*, 89 Wn.2d 140, 570 P.2d 131 (1977) (analyzing

10    enforceability of heir locator's contingent fee contract for locating property that locator already

11    knew had been delivered to the department of revenue) and *Nelson v. McGoldrick*, 127 Wn.2d

12    124, 896 P.2d 1258 (1995) (applying a "narrow application of the statute and its policy to find

13    <u>50% contingency fee</u> contract for locating stock not barred). And that is precisely the scenario

14    contemplated by the clear language of the statute: an agreement to pay a fee to a company for

15    finding property. There was no such arrangement with Thomas and therefore the statute does not

16    apply.

17        **ii.**    **RCW 63.29.350(1) does not apply to funds held by a Superior Court as a result of a judicial foreclosure of a private deed of trust.**

18

19        When interpreting a statute, "the intent of the legislature is the vital thing, and the primary

20    object is to ascertain and give effect to that intent." *Featherstone v. Dessert*, 173 Wash. 264, 268,

21    22 P.2d 1050, 1052 (1933). A reading of RCW 63.29.350 as a whole shows the intent of the

22    legislature was to regulate surplus proceeds from tax foreclosure sales or other foreclosures that

23    arise from governmental liens, not liens that arise from privately owned mortgages. While "other

24    liens" is not defined, the context of the statute's use of the phrase makes it evident that "other

25    liens" is limited to other government liens, such as for sewer lines or road improvements. RCW

26    36.94.150 (providing counties with lien rights for sewer expenses and noting such liens shall be

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 15

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1   foreclosed in the same manner as real property tax liens); RCW 36.88.140 (discussing lien rights

2   held by county road improvement districts for securing the cost and expense of improving county

3   roads). Every type of lien or fund specifically discussed in RCW 63.29.350 is related to

4   government funds; in this context "other liens" cannot and should not be read to include an entirely

5   different kind of transaction. *State v. Daniel J. Evans Campaign Comm'n*, 86 Wash. 2d 503, 546

6   P.2d 75 (1976) (holding that the spirit, purpose of a statute overcomes an inept effort by Legislature

7   to state such a purpose in the statute); *Auto. Drivers & Demonstrators Union Local 882 v. Dep't

8   of Ret. Sys.*, 92 Wash. 2d 415, 421, 598 P.2d 379, 382-83 (1979) ( A "court cannot read into a

9   statute that which it may believe the legislature has omitted, be it an intentional or inadvertent

10  omission.") As set forth below, the "spirit" and "purpose" of RCW 63.29.350 is to address surplus

11  funds resulting from the foreclosure of government liens.  RCW 63.29.350(1) does not apply to

12  private liens, such as the mortgage lien foreclosed in the Thomas Superior Court case that resulted

13  in the excess proceeds.

14       At a minimum, the juxtaposition of specified governmental liens and "other liens" makes

15  the precise meaning of the statute ambiguous as to what those "other liens" are.  In such an

16  instance, the Court should look to legislative history to determine legislative intent, *e.g.*, *Anfinson

17  v. FedEx Ground Package Sys., Inc.*, 174 Wn. 2d 851, 867, 281 P.3d 289 (2012). In this case, the

18  legislative history is particularly illuminating.

19       In 2010, RCW 63.29.350(1) was amended by House Bill 2428 *to add the very language at

20  issue* – "or funds held by a county that are proceeds from a foreclosure for delinquent property

21  taxes, assessments, or other liens, or, funds that are otherwise held by a county because of a

22  person's failure to claim funds held as reimbursement for unowed taxes, fees, or other government

23  charges." The House Bill Report 2428 on the amendments notes under the "Title" section toward

24  the top of the RCW 63.29.350 is "[a]n act relating to fees for locating surplus funds from county

25  governments, real estate property taxes, assessments, and other *government* lien foreclosures or

26

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 16

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    charges."[14] (Emphasis added). And the "Brief Description" of the bill describes it as an act

2    "**[c]oncerning fees for locating surplus funds from county governments, real estate property**

3    **taxes, assessments, and other *government* lien foreclosures or charges.**" (Emphasis added).

4    The same description appears in the Senate Bill Report,[15] the final bill report,[16] and the digest of

5    the bill as enacted,[17] and the introductory paragraph for the final, passed version of the

6    amendments.[18]

7          Moreover, the January 25, 2010 testimony of the Representative Takko, the sponsor of HB

8    2428, gave to the House Local Government and Housing Committee in support of HB 2428 (which

9    is viewable online) also reflects the proposed statutory amendments arose from a concern about

10   surplus proceeds from tax foreclosure sales when the county forecloses on property, which by

11   statute belong solely to the taxpayer of record at the time of the tax foreclosure sale.

12   https://www.tvw.org/watch/?eventID=2010011123 (starts at :47/ last visited September 2, 2021).

13   After a brief introduction, Representative Takko explains the amendments to RCW 63.29.350 are

14   designed to address, "When a county forecloses on a property   * * *." *Id.* at :52-1:00.

15   Representative Takko then goes on to describe persons who charge a fee to locate funds relating

16   to a tax foreclosure. *Id.* There is no mention whatsoever regarding private liens such as mortgages.

17   _____

18   [14] House Bill Report HB 2428 is available online at http://lawfilesext.leg.wa.gov/biennium/2009-
     10/Pdf/Bill%20Reports/House/2428%20HBR%20PL%202010.pdf?q=20210511134637

19   (last visited May 11, 2021).

20   [15]http://lawfilesext.leg.wa.gov/biennium/2009-
     10/Pdf/Bill%20Reports/Senate/2428%20SBR%20FIHI%202010.pdf?q=20210511134637

21   (last visited May 11, 2021).

22   [16]                                                    http://lawfilesext.leg.wa.gov/biennium/2009-
     10/Pdf/Bill%20Reports/House/2428%20HBR%20FBR%202010.pdf?q=20210511134637

23   (last visited May 11, 2021).

24   [17]                                    http://lawfilesext.leg.wa.gov/biennium/2009-
     10/Pdf/Digests/House/2428.DIG.pdf?q=20210511134637

25    (last visited May 11, 2021).

26   [18]                                            http://lawfilesext.leg.wa.gov/biennium/2009-
     10/Pdf/Bills/House%20Passed%20Legislature/2428.PL.pdf?q=20210511134637
     (last visited May 11, 2021).

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 17

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    <u>This video could not make it any clearer that RCW 63.29.350 was designed to address the</u>
2    <u>foreclosure of government liens.</u> RCW 63.29.350 does not apply to the Thomas matter.

3         The statute is also expressly limited to cases where funds are "held by a county," and in
4    the Thomas case, the funds were not held by Snohomish County, but rather by the Superior Court.
5    The distinction is critical to understanding the statute. In the case of foreclosures due to
6    governmental liens, exceeds proceeds are in fact held not in the court registry, but by the County
7    treasurer. *E.g.*, RCW 84.64.120(10). Not coincidentally, it was a representative the Washington State
8    Association of *County Treasurers* that testified regarding the importance of HB 2428 and the
9    proposed amendments to RCW 63.29.350. https://www.tvw.org/watch/?eventID=2010011123 (at
10   2:25).[19]

11        If the Washington legislature had meant to extend the reach of RCW 63.29.350(1) to funds
12   held by a court, in addition to those held by a county, it could have easily done so.  For
13   example, RCW 4.44.480, RCW 4.44.490, and RCW 4.44.500, which all concern deposits into
14   court, all reference the "court" as opposed to a "county." Further, numerous Washington
15   foreclosure statutes reference the disbursement of funds from foreclosure sales by a "court" as
16   opposed to a "county." *E.g.*, RCW 61.12.150 (noting the "court" shall apply any surplus proceeds
17   from foreclosure sale to foreclosed interests in property); RCW 61.24.080 (noting the "court" may
18   disburse surplus funds from trustee's sales).

19        In addition, numerous execution statutes in Washington refer to the ability of the "court"
20   to distribute surplus proceeds from sheriff's sales of foreclosed property. *E.g.*, RCW 6.12.150 (the
21   "court" is to determine which party or parties are to receive surplus proceeds if there are
22   any); RCW 6.21.110 (noting it is up to the "court" to decide who receives surplus proceeds from
23   a foreclosure sale). And numerous state court rules reference funds that may be held or paid into a
24   "court" as opposed to a "county." *See, e.g.*, Wash. Civ. R. 67, Deposit in court (discussing funds

25

26   ---

[19] The only other person testifying in support of the bill was a representative of the attorney general's office who did not offer any substantive testimony.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    paid into "court"); Wash. R. App. P. 8.1, Supersedeas procedure (referencing cash bonds paid into

2    "court").

3           Given this extensive legislative distinction between funds held by a court, as opposed to

4    funds held by a county, the only logical conclusion is that the legislature meant what it said in

5    RCW 63.29.350, and that it applies only to funds held by a county, as opposed to a court. RCW

6    63.29.350 does not apply to the Thomas matter because the surplus funds were held by a court.

7           It is clear the Court of Appeals did not like Ten Bridges' "type" of business. However, that

8    does not make it illegal nor does it mean the Court can rewrite RCW 63.29.350 because it believed

9    the end justified the means. Nonetheless, the Court of Appeals ignored the law, the statute, the

10   legislative history and the very facts of the transactions at issue to shoehorn the Asano and Guandai

11   matters under RCW 63.29.350 in order to reach a desired "consumer friendly" outcome that it

12   believed the legislature would approve of. Rewriting statutory language is the job of the legislature,

13   not the courts.

14          Fortunately, this court is not bound by the flawed Court of Appeal decision when assessing

15   the Thomas transaction and the validity of the Thomas Quit Claim Deed. *Kerrigan*, supra. Instead,

16   this court must try to ascertain what the Washington Supreme Court would do in this situation.[20]

17   *Id.* Based on the above and the holding in *Nelson, supra.,* that RCW 63.29.350 is to be *narrowly*

18   construed and, as a result, approving a 50% finder's fee, the Supreme Court would not be swayed

19   by the numbers or percentages involved in the Thomas transaction and would clearly find that the

20   statute does not apply to Ten Bridges' purchase of Thomas' property interests. This court should

21   reach the same conclusion.

22          Because defendants improperly interfered with Ten Bridges' agreement with Thomas

23   causing Ten Bridges damages, because collateral estoppel does not bar Ten Bridges from litigating

24   the validity of the Thomas transaction and the Thomas Quit Claim Deed, and because the

25   Washington Supreme Court would find that RCW 63.29.350 does not apply to Ten Bridges'

26

---

[20] This court could also certify the question to the Washington Supreme Court. RAP 16.16.

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 19

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    purchase of Thomas' property interests, defendants' motion for summary judgment against Ten

2    Bridges tortious interference *vis a vis* Thomas, Second Claim for Relief, Count II,  must be denied.

3    **D.**    **Material Issues of Fact Exist Regarding Ten Bridges Abuse of Process Claim.**

4            The elements of the tort of abuse of process are: "(1) the existence of an ulterior purpose—

5    to accomplish an object not within the proper scope of the process—and (2) an act in the use of

6    legal process not proper in the regular prosecution of the proceedings." *Fite v. Lee*, 11 Wash. App.

7    21, 27 (1974). "[T]he gist of the action is the misuse or misapplication of the process, after it has

8    once been issued, <u>for an end other than that which it was designed to accomplish.</u>" *Loeffelholz v.*

9    *Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 119 Wash. App. 665, 699

10    (2004) (emphasis in original).

11            Here, Ten Bridges concedes that there is no abuse of process relating to the Asano matter

12    (the Sixth Claim for Relief). However, such a claim does lie against Midas Mulligan regarding the

13    Guandai Superior Court matter. In that case, Midas Mulligan was the purchaser of the Guandai

14    property at the foreclosure sale. Heald Decl., ¶10. Midas Mulligan did not purchase any of

15    Guandai's property interests. *Id.* Indeed, it was Ten Bridges, pursuant to the express language in

16    the Quit Claim Deed executed by Guandai, that purchased her right to excess funds generated from

17    the sheriff's sale of the property. *Id.*, ¶¶ 6 and 10.

18            RCW 6.12.150 provides in relevant part, "[i]n all cases where the proceeds of the sale are

19    more than sufficient to pay the amount due and costs, the surplus shall be applied to all interests

20    in, or liens or claims of liens against, the property eliminated by sale under this section in the order

21    of priority that the interest, lien, or claim attached to the property. **Any remaining surplus shall**

22    **be paid to the <u>mortgage debtor, his or her heirs and assigns.</u>"** Emphasis added. This statute

23    focuses on the rights of the "mortgage debtor", not rights that run with the property. As a result,

24    regarding surplus funds, the statute does not list the purchaser at a sheriff's sale nor does it mention

25    the successor in interest to the title to the property. Midas Mulligan is clearly not an "heir" of the

26    "mortgage debtor." And, because Midas Mulligan purchased the property *from the sheriff* at the

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 20

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    sheriff's foreclosure sale, it is also not an "assign" of the "mortgage debtor." There was no transfer

2    of rights from the "mortgage debtor" to Midas Mulligan.

3            Midas Mulligan had no standing to assert a claim to the Guandai surplus funds. Defendants

4    and their counsel knew Midas Mulligan had no viable claim under RCW 61.12.150. This fact is

5    evidenced by the case of *Mill Pond at Lakeland v. Knudtson*.[21] In that case, Madrona Lisa was the

6    purchaser of the foreclosed property at the sheriff's sale and defendants' counsel, Guy Beckett,

7    represented the judgment debtor, Ms. Knudtson, in seeking surplus proceeds held by the court.

8    Ms. Knudtson's petition, authored by Mr. Beckett, stated, "Mill Pond has received payment in full

9    of its judgment lien and thus has no right to any of the surplus funds and *Madrona, the winning*

10   *bidder at the Sheriff's Sale, has no interest in the surplus funds*." Emphasis added; Heald Decl., ¶

11   20, Exhibit 7.

12           Under RCW 61.12.150, Midas Mulligan had absolutely no claim to the Guandai surplus

13   funds. Nonetheless, it filed a claim to the funds with the Superior Court. From Gore's text to

14   Guandai (p. 8, lns. 3-5), it was clear Midas Mulligan, Ten Bridges' competitor, was "tired" of

15   being outmaneuvered by Ten Bridges "* * *[e]specially when someone like [Midas Mulligan]

16   offers * * * a fair dollar value for * * * redemption rights." See Heald Decl., ¶ 7. As a result,

17   defendants engaged in a scorched earth attack against Ten Bridges as outlined in §§ B(1) & (2)

18   above.

19           To that point, recall Gore's June 19 and July 2 text exchanges with Thomas:

20           **Gore:**  Ten bridges emailed me this morning basically begging me to stop telling people

21           like u about how they are owed money. * * *

22           **Thomas**:  That must feel really good to have Ten Bridges begging.

23           **Gore**:  Yes * * *

24   / / /

25

---

26   [21] Pursuant to FRE 201, Ten Bridges requests the court take judicial notice of these pleadings
     attached to the Heald Decl. as Exhibit 7.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1    July 2

2    **Gore**: I'm so excited tho!  Once it goes to trial it will all come out.  Ten Bridges shaking

3    in their boots. * * *

4    **Thomas:**  that's great to hear they are shaking :)

5    **Gore:** Yes * * *

6    Midas Mulligan's opposition to Ten Bridges' claim to the Guandai surplus funds and its

7    claim to the funds had absolutely no basis in law. Midas Mulligan filed the bogus claim as part of

8    its scorched earth policy to harass Ten Bridges, drive up its litigation costs, and "to have Ten

9    Bridges begging." Indeed, after its claim to the surplus finds was denied, Midas Mulligan used

10   Guandai and its attorney to continue the harassment. As set forth herein, this is entirely consistent

11   with defendants' actions *vis a vis* Ten Bridges. [22] There is simply no viable explanation for Midas

12   Mulligan asserting a claim to Guandai surplus funds other than harassment of Ten Bridges.[23]

13   As a result, it must be left to the finder of fact to assess the credibility of the witnesses and

14   ascertain whether Midas Mulligan misused RCW 61.12.150 and the court process for the ulterior

15   purpose of harassing Ten Bridges.  Defendants' motion for summary judgment against Ten

16   Bridges Fifth Claim for Relief must be denied.

17   / / /

18   / / /

19

20

21

22

23

24

25

26

[22] Midas Mulligan and Madrona Lisa, through Gore and Toth, have used three distinct strategies to attack Ten Bridges: (1) encourage third parties to breach their agreements with Ten Bridges and to file complaints with the attorney general and the AG-funded Northwest Justice Project; (2) introduce third parties to their attorney, Guy Beckett; and (3) file their own court pleadings in opposition to Ten Bridges. Thomas, Asano and Guandai all ended up being represented by Mr. Beckett in lawsuits or claims against Ten Bridges. Heald Decl., ¶ 21.

[23] The court denied Ten Bridges the opportunity to pursue discovery on this issue.

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

1

**CONCLUSION**

2       Based on the above, defendants' motions for summary judgment should be denied

3  regarding Ten Bridges' Second Claim for Relief, Count II, and Ten Bridges Fifth Claim for Relief.

4       DATED this 7th day of September, 2021.

5       SUSSMAN SHANK LLP

6       By _s/ William G. Fig_

7         William G. Fig, WSBA 33943
           wfig@sussmanshank.com

8         Attorneys for Ten Bridges, LLC

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 23

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130

<u>CERTIFICATE OF SERVICE</u>

THE UNDERSIGNED certifies:

1.      My name is Joanna M. Bolstad I am a citizen of Clackamas County, state of Oregon, over the age of eighteen (18) years and not a party to this action.

2.      On September 7, 2021, I caused to be delivered via **the court's ecf system**, a copy of **TEN BRIDGES, LLC'S RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT DISMISSING PLAINTIFF'S SECOND AMENDED COMPLAINT** to the interested parties of record, addressed as follows:

> Guy W. Beckett
> BERRY & BECKETT, PLLP
> 1708 Bellevue Ave.
> Seattle, WA 98122
> *gbeckett@beckettlaw.com*
>
> Attorneys for Defendants/Counterclaimants

I SWEAR UNDER PENALTY OF PERJURY that the foregoing is true and correct to the best of my knowledge, information, and belief.

> *s/ Joanna M. Bolstad*
> Joanna M. Bolstad, Legal Assistant

TEN BRIDGES, LLC'S RESPONSE TO
DEFENDANTS' MOTION FOR
SUMMARY JUDGMENT DISMISSING
PLAINTIFF'S SECOND AMENDED COMPLAINT - Page 24

SUSSMAN SHANK LLP
ATTORNEYS AT LAW
1000 SW BROADWAY, SUITE 1400
PORTLAND, OREGON 97205-3089
TELEPHONE (503) 227-1111
FACSIMILE (503) 248-0130