UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| TEN BRIDGES, LLC, | CASE NO. C19-1237JLR |
| Plaintiff, | ORDER GRANTING MOTION FOR SUMMARY JUDGMENT |
| v. | |
| MIDAS MULLIGAN, LLC, et al., | |
| Defendants. | |

## I.   INTRODUCTION

Before the court is Defendants Midas Mulligan, LLC ("Midas"), Madrona Lisa, LLC ("Madrona"), Danielle Gore, and M. Alex Toth's[1] (collectively, "Defendants") motion for summary judgment dismissing Plaintiff Ten Bridges LLC's ("Ten Bridges") second amended complaint. (MSJ (Dkt. # 71); *see also* MSJ Reply (Dkt. # 81).)  Ten Bridges opposes the motion.  (MSJ Resp. (Dkt. # 78).)  The court has considered the

---

[1] Ms. Gore and Mr. Toth are the sole managers and members of Midas and Madrona. (*See* 8/19/21 Toth Decl. (Dkt. # 72) ¶ 2.)

motion, all submissions filed in support of and in opposition to the motion, the relevant portions of the record, and the applicable law. Being fully advised,[2] the court GRANTS Defendants' motion for summary judgment.

## II.  BACKGROUND

Ten Bridges, Midas, and Madrona compete to purchase residential property at judicial foreclosure auctions. (SAC (Dkt. # 47) ¶ 1.) The companies also "purchase redemption rights and/or the right to surplus proceeds from foreclosed owners and related parties following the sheriff's sale of a property." (*Id.*) These rights entitle the purchasing companies "to redeem foreclosed properties or collect surplus proceeds, if any, following a judicial foreclosure sale after all secured creditors are satisfied." (*Id.* ¶ 10.) According to Ten Bridges, foreclosed property owners sell these rights to companies like Ten Bridges, Midas, and Madrona "when they are interested in receiving an upfront payment quickly, to avoid the cost and expense of redeeming a property or pursuing surplus proceeds, or when they are unsure whether any surplus proceeds will remain after the secured debt is satisfied." (*Id.* ¶ 12.)

Ten Bridges's claims and Madrona's counterclaims arise from real estate transactions involving non-parties Jay Millsap, Justin Thomas, Teresia Guandai, and Yukiko Asano. (*See generally* SAC; SAC Ans. (Dkt. # 50).) The court discusses each transaction in turn.

---

[2] Neither party requests oral argument (*see* MSJ at 1, MSJ Resp. at 1), and the court finds oral argument unnecessary to its disposition of the motion, *see* Local Rules W.D. Wash. LCR 7(b)(4).

### A. The Millsap Transaction

In November 2018, after Mr. Millsap's former home was judicially foreclosed, Madrona purchased the home at a sheriff's sale in Snohomish County, Washington. (Gore Decl. (Dkt. # 73) ¶ 2.) After the foreclosing creditor received full payment of the amount owed, there remained $24,711.65 in surplus proceeds in the Snohomish County Superior Court registry. (8/19/21 Beckett Decl. (Dkt. # 74) ¶ 3, Ex. 1.)[3]

During a telephone conversation with Ms. Gore on January 6, 2019, Mr. Millsap agreed to sell to Madrona, in exchange for $5,000, his right to redeem the property. (Gore Decl. ¶ 2.) Madrona prepared a quitclaim deed to assign to Madrona only Mr. Millsap's right of redemption; the deed did not assign his right to obtain the surplus proceeds from the foreclosure sale. (*Id.* ¶ 3.)

On January 7, 2019, Ms. Gore called Mr. Millsap to set up a time to meet and complete the transaction. (*Id.* ¶ 4.) During that call, Mr. Millsap told Ms. Gore that he had already given a quitclaim deed to his home to Ten Bridges in exchange for $7,500. (*Id.*) When Ms. Gore reviewed the quitclaim deed, she learned that Mr. Millsap had conveyed to Ten Bridges not only his right to redeem the property but also his right to obtain the $24,711.65 in surplus proceeds. (*Id.*; *see also* 8/19/21 Beckett Decl. ¶ 48, Ex. 43 ("Millsap Quitclaim Deed").) As a result, Ten Bridges received approximately 70% of the net surplus proceeds from the foreclosure sale of Mr. Millsap's former home.

---

[3] The court grants the parties' unopposed requests to take judicial notice of filings and orders in the underlying actions in Snohomish County, King County, and the Washington Court of Appeals. (*Id.* ¶ 2; MSJ Resp. at 1 n.2); *see* Fed. R. Evid. 201(c); *Lee v. City of Los Angeles*, 250 F.3d 668, 689-90 (9th Cir. 2001).

**B.     The *Thomas* Action**

Mr. Thomas and Susan Hofstad were the sole heirs of Mr. Thomas's uncle, Benjamin Thomas. (*See* 8/19/21 Beckett Decl. ¶ 40, Ex. 35 (Ten Bridges Verified Motion for Order Disbursing Funds from the Court Registry, *JP Morgan Chase Bank, N.A. v. Unknown Heirs of Benjamin H. Thomas Jr.* ("*Thomas*"), No. 12-2-05988-6 (Snohomish Cnty. Super. May 28, 2019) at 2.) Benjamin Thomas's home was foreclosed and sold at a Snohomish County Sheriff's sale. (*Id.* ¶ 39.) After an underlying judgment and expenses were paid, there remained $150,623.05 in surplus proceeds in the Snohomish County Superior Court registry. (*Id.*) As Benjamin Thomas's sole heirs, Mr. Thomas and Ms. Hofstad were each entitled to receive 50% of the surplus proceeds, or $75,311.52. *See* RCW 61.12.150 (surplus proceeds from judicial foreclosure sales "shall be paid to the mortgage debtor, his or her heirs and assigns").

On May 9, 2019, Mr. Thomas assigned to Ten Bridges his rights to redeem the property and to receive his share of the surplus proceeds in exchange for $9,500. (*See id.* 8/19/21 Beckett Decl. ¶ 47, Ex. 42 ("Thomas Quitclaim Deed").) If Ten Bridges had been able to obtain Mr. Thomas's share of the surplus proceeds, it would have received a net of over 87% of his $75,311.52 share. Ten Bridges, however, moved the superior court for an order directing the Clerk to disburse to it 100% of the surplus proceeds. (*See id.* ¶ 40, Ex. 35.)

On or about June 6, 2019, Ms. Gore called Mr. Thomas regarding Ten Bridges's motion for disbursement of the surplus proceeds. (*See* MSJ Resp. at 5 (quoting excerpts of 9/7/21 Heald Decl. (Dkt. # 79) ¶ 9, Ex. 3 ("Gore-Thomas Texts").) Over the next few

weeks, Ms. Gore sent Mr. Thomas text messages about Ten Bridges's motion; spoke with his attorney; referred him to a Washington Assistant Attorney General who, she stated, was "working on" the Ten Bridges surplus proceeds cases; recommended that he speak with the Northwest Justice Project about the matter; and encouraged him to appear at a hearing.  (*See id.* at 5-7 (quoting excerpts of Gore-Thomas Texts).)

Mr. Thomas opposed Ten Bridges's motion for disbursement, arguing that his agreement with Ten Bridges was void because it violated RCW 63.29.350, which places a five-percent cap on fees that a fund-finder can claim as compensation for locating surplus proceeds.[4]  (*See* 8/19/21 Beckett Decl. ¶ 41, Ex. 36.)  On July 2, 2019, the superior court denied Ten Bridges's motion and held that the competing claims of Ten Bridges, Mr. Thomas, and Ms. Hofstad to the surplus proceeds must be resolved in a separate lawsuit.  (*See id.* ¶ 43, Ex. 38.)  Shortly thereafter, Ten Bridges filed an action in this court against Mr. Thomas and Ms. Hofstad, seeking, in relevant part, a declaratory judgment that the Thomas Quitclaim Deed is valid and that it is entitled to all of the surplus proceeds.  (*See* Compl., *Ten Bridges v. Hofstad*, No. C19-1134RAJ (W.D. Wash. July 22, 2019).)  That action is still pending.[5]

---

[4] Mr. Thomas has, however, retained the $9,500 that Ten Bridges paid him.  (*See* 9/7/21 Heald Decl. ¶ 9.)

[5] Although the validity of the Thomas transaction is squarely at issue in both *Hofstad* and this action, Ten Bridges failed to inform the court that the two cases are related as required by Local Civil Rule 3(g), which requires a plaintiff to "list all related cases in the Civil Cover Sheet and, if there are any, file a Notice of Related cases, with its first appearance."  Local Rules W.D. Wash. LCR 3(g)(1); (*see* Civil Cover Sheet (Dkt. # 1-1)).  "An action is related to another when the actions: (A) concern substantially the same parties, property, transaction, or event; and (B) it appears likely that there will be an unduly burdensome duplication of labor and expense or the

C.   The *Guandai* Action

After Ms. Guandai's condominium owners' association foreclosed on her condominium unit, Midas purchased the condo at a sheriff's sale. (8/19/21 Beckett Decl. ¶ 4.) The sale resulted in surplus proceeds of $88,996.95, which were deposited in the King County Superior Court registry. (*Id.*)

On April 1, 2019, Ms. Guandai assigned to Ten Bridges her rights to redeem the property and to receive surplus proceeds in exchange for a cash payment of $15,000. (*See id.* ¶ 45, Ex. 40 ("Guandai Quitclaim Deed").) Ten Bridges then moved the superior court for an order directing the Clerk to disburse to it the surplus proceeds. (*See id.* ¶ 5, Ex. 2 (Ten Bridges LLC's Verified Motion for Order Disbursing Funds, *Pinehurst Lane Condominium Assoc. v. Guandai* ("*Guandai*"), No. 15-2-26658-6 SEA (King Cnty. Super. Apr. 17, 2019)).) If Ten Bridges had been able to obtain Ms. Guandai's surplus proceeds, it would have received a net of over 80% of the proceeds.

Midas objected to Ten Bridges's motion, arguing that the agreement between Ten Bridges and Ms. Guandai was void because it violated RCW 63.29.350, and that Midas was entitled to the proceeds as the purchaser of the property. (*See id.* ¶ 6, Ex. 3.) On or about May 22, 2019, after an initial hearing in which the court determined that Midas did not have a right to the proceeds and before the court entered its final order, Ms. Gore contacted Ms. Guandai by text message. (*See* MSJ Resp. at 7; *id.* at 8-9 (quoting excerpts of 9/7/21 Heald Decl. ¶ 11, Ex. 4 ("Gore-Guandai Texts")).) Ms. Gore assisted Ms.

---

potential for conflicting results if the cases are conducted before different judges." Local Rules W.D. Wash. LCR 3(g)(4).

Guandai with her claim to the surplus proceeds, including by assisting her with drafting a declaration and having Midas's attorney file documents on her behalf. (*See* MSJ Resp. at 8-9 (quoting excerpts of Gore-Guandai Texts).) The superior court held that Midas was not entitled to the funds, that the agreement between Ten Bridges and Ms. Guandai violated RCW 63.29.350(1), and that Ms. Guandai was entitled to the surplus proceeds. (*Id.* ¶ 9, Ex. 6 (Order, *Guandai*, (King Cnty. Super. May 31, 2019).)

Ten Bridges appealed. The Washington Court of Appeals affirmed the superior court's order. *See Ten Bridges, LLC v. Guandai*, 474 P.3d 1060, 1063-64 (Wash. Ct. App. 2020), *review denied*, 487 P.3d 515 (Table), (Wash. 2021). Midas's attorney, Guy Beckett, represented Ms. Guandai in her appeal. *See id.* at 1063. The Court of Appeals denied Ten Bridges's motion for reconsideration on December 31, 2020. (8/19/21 Beckett Decl. ¶ 15, Ex. 12.) The Washington Supreme Court denied Ten Bridges's petition for review on June 7, 2021. *Guandai*, 487 P.3d at 515.

**D.    The *Asano* Action**

After Ms. Asano's condominium owners' association foreclosed on her condominium unit, Madrona purchased the condominium at a sheriff's sale. (*See* 8/19/21 Beckett Decl. ¶ 20.) The sale resulted in surplus proceeds of $346,892.95, which were deposited in the King County Superior Court registry. (*See id.*) On May 15, 2019, Ms. Asano assigned her rights to redeem the property and receive surplus proceeds to Ten Bridges in exchange for its promise to pay her the first $172,000 it received of any surplus proceeds. (*See id.* ¶ 46, Ex. 41 ("Asano Quitclaim Deed").) If Ten Bridges had

been permitted to obtain Ms. Asano's surplus proceeds pursuant to that agreement, it would have received a net of over 50% of the surplus proceeds.

Ten Bridges notified the sheriff that it intended to redeem Ms. Asano's condo; it disputed, however, the redemption price set by Madrona. (*See id.* ¶ 21, Ex. 17 (Ten Bridges's Verified Motion for Determination of Redemption Price, *Carlyle Condo. Owners Assoc. v. Asano* (*"Asano"*), No. 18-2-03471-0 SEA (King Cnty. Super. July 10, 2019)).) Ten Bridges then moved the superior court to determine the correct redemption amount. (*See id.*) Madrona opposed the motion, arguing that Ten Bridges had no right to redeem because the agreement between Ten Bridges and Ms. Asano was void under RCW 63.29.350(1). (*See id.* ¶ 22, Ex. 18.) On August 8, 2019, the superior court ruled in favor of Madrona, holding that the quitclaim deed between Ms. Asano and Ten Bridges was void and unenforceable because it violated RCW 63.29.350(1). (*See id.* ¶ 24, Ex. 20 (Order, *Asano* (King Cnty. Super. Aug. 8, 2019).)

Ten Bridges requested and received a different form of quitclaim deed from Ms. Asano and moved again in the superior court to set the amount required to redeem the property from Madrona. (*See id.* ¶ 25, Ex. 21.) It contended that because the new quitclaim deed did not contain the terms that the court had previously found unlawful, it was severable from the original contract and enforceable. (*See generally id.*) Madrona again opposed Ten Bridges's motion. (*See id.* ¶ 26, Ex. 22.) On October 30, 2019, the superior court again ruled in Madrona's favor on the ground that the agreement between Ten Bridges and Ms. Asano was unlawful under RCW 63.29.350(1). (*See id.* ¶ 28, Ex. 24.)

1     Ten Bridges appealed both orders.  The Court of Appeals consolidated the *Asano*

2 appeal with the *Guandai* appeal and affirmed the superior court's orders invalidating Ten

3 Bridges's agreements with Ms. Asano.  *See Guandai*, 474 P.3d at 1063-64.  Ten Bridges

4 moved for reconsideration and petitioned the Washington Supreme Court for review of

5 the Court of Appeals decision invalidating the Asano agreements; its motion and petition

6 were denied.  (*See* 8/19/21 Beckett Decl. ¶ 29, Ex. 25; *id.* ¶ 32, Ex. 28; *id.* ¶ 24, Ex. 30);

7 *see also Ten Bridges v. Asano*, 487 P.3d 517 (Table) (Wash. 2021).

8                                    **III.   ANALYSIS**

9     As a threshold matter, Ten Bridges does not oppose dismissal of its claims for

10 tortious interference with business relationships relating to the Guandai and Asano

11 transactions (MSJ Resp. at 15) and abuse of process against Madrona with respect to the

12 *Asano* action (*id.* at 25).  Accordingly, the court GRANTS Defendants' unopposed

13 motion for summary judgment with respect to those claims and DISMISSES those claims

14 with prejudice.

15     Below, the court reviews Defendants' motion for summary judgment on Ten

16 Bridges's remaining claims for tortious interference with business relationships relating

17 to the Thomas and Millsap transactions and for abuse of process against Midas with

18 respect to the *Guandai* action.

19     **A.   Standard of Review**

20     Summary judgment is appropriate if the evidence viewed in the light most

21 favorable to the non-moving party shows "that there is no genuine dispute as to any

22 material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001) (citing *Anderson*, 477 U.S. at 248-49).

The moving party bears the initial burden of showing there is no genuine dispute of material fact and that it is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party does not bear the ultimate burden of persuasion at trial, it can show the absence of such a dispute in two ways: (1) by producing evidence negating an essential element of the nonmoving party's case, or (2) by showing that the nonmoving party lacks evidence of an essential element of its claim or defense. *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000). If the moving party meets its burden of production, the burden then shifts to the nonmoving party to identify specific facts from which a factfinder could reasonably find in the nonmoving party's favor. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 250.

### B. Tortious Interference with Business Relationships Arising from the Millsap Transaction

Defendants move for summary judgment on Ten Bridges's tortious interference with business relationships claims against Madrona and Ms. Gore relating to the Millsap transaction. (MSJ at 18-19.) Ten Bridges did not address Defendants' motion regarding the Millsap transaction in its response. (*See generally* MSJ Resp.)

Although Ten Bridges did not respond to Defendants' motion for summary judgment on the claims arising from the Millsap transaction, a party's failure to respond to a motion for summary judgment does not permit the court to grant the motion automatically. *See Heinemann v. Satterberg*, 731 F.3d 914, 916 (9th Cir. 2016) ("[A] motion for summary judgment may not be granted based on a failure to file an opposition to the motion."); Local Rules W.D. Wash. LCR 7(b)(2). Rather, the court may only "grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it." Fed. R. Civ. P. 56(e)(3); *see Heinemann*, 731 F.3d at 916. Where facts asserted by the moving party in an unopposed motion are concerned, however, the court may "consider the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(3); *see Heinemann*, 731 F.3d at 916. Accordingly, the court considers whether Defendants have established that they are entitled to judgment as a matter of law on Ten Bridges's tortious interference claims arising from the Millsap transaction.

To prevail on a claim of tortious interference with a business expectancy, the plaintiff must prove five elements:

> (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage.

*Leingang v. Pierce Cnty. Med. Bureau*, 930 P.2d 288, 300 (Wash. 1997). Viewing the record in the light most favorable to Ten Bridges, the court finds no evidence sufficient to demonstrate a genuine issue of material fact with respect to the third, fourth, or fifth

elements of the claim.  Accordingly, the court GRANTS Defendants' motion for summary judgment on Ten Bridges's tortious interference claims against Ms. Gore and Madrona arising from the Millsap transaction and DISMISSES those claims with prejudice.

### C. Tortious Interference with Business Relationships Arising from the Thomas Transaction

Defendants argue that they are entitled to summary judgment on Ten Bridges's claims against Ms. Gore and Midas for tortious interference in relation to the Thomas transaction because the contract between Mr. Thomas and Ten Bridges was void as a matter of law.  (MSJ at 10-18.)  As a result, according to Defendants, Ten Bridges cannot establish the first element of a tortious interference claim.  (*Id.*)  They argue two grounds for finding the contract void.  First, they urge the court to apply the doctrine of collateral estoppel, or issue preclusion, and find that the Washington Court of Appeals's *Guandai* decision necessarily established that Ten Bridges's contract with Mr. Thomas was void.  (*Id.* at 12-17 (citing *Guandai*, 474 P.3d at 1063-64).)  Second, they argue that even if collateral estoppel does not apply, the contract is invalid under the law established in the *Guandai* decision.  (*Id.* at 17-18.)  Ten Bridges contends (1) that collateral estoppel does not apply because Mr. Thomas's contract was not at issue in *Guandai* (MSJ Resp. at 10-12), and (2) that the court should not apply *Guandai*'s interpretation of RCW 63.29.350(1) because the decision was wrong and the Washington Supreme Court would

have decided the case differently had it accepted review (*id.* at 12-20).[6]  The court agrees with Ten Bridges that collateral estoppel does not bar its claims arising from the Thomas transaction because the "identical issue" of the validity of the Thomas Quitclaim Deed was not litigated in the *Guandai* and *Asano* actions.  *City of Arlington v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 193 P.3d 1077, 1089 (Wash. 2008).  The court, however, agrees with Defendants that the agreement between Ten Bridges and Mr. Thomas is void under *Guandai*.

When applying Washington law in a diversity case, the court must apply the law as it believes the Supreme Court of Washington would apply it.  *Gravquick A/S v. Trimble Navigation Intern. Ltd.*, 323 F.3d 1219, 1222 (9th Cir. 2003).  In the absence of a controlling Washington Supreme Court decision, the court must predict how that court would decide the issue, using intermediate appellate court decisions, statutes, and decisions from other jurisdictions as interpretive aids.  *Id.; see also Soltani v. W. & S. Life Ins. Co.,* 258 F.3d 1038, 1045-46 (9th Cir. 2001).  In particular, the district court must follow the state's intermediate appellate decisions "in the absence of convincing evidence that the highest court of the state would decide differently."  *Sec. Pac. Nat'l Bank v. Kirkland (In re Kirkland)*, 915 F.2d 1236, 1239 (9th Cir. 1990).  Indeed, "[w]here

---

[6] Ten Bridges also argues, in passing, that the court should stay its decision regarding the Thomas Quitclaim Deed pending the resolution of its lawsuit against Mr. Thomas and Ms. Hofstad, in which the validity of the Thomas transaction is also squarely at issue. (MSJ Resp. at 10.) As the court noted earlier, Ten Bridges failed to notify the court that this case and *Hofstad* are related matters in violation of Local Civil Rule 3(g). *See supra* at 5 n.5. In addition, Ten Bridges has previously argued strenuously against a stay in this action, contending it would suffer prejudice if this matter were stayed. (*See* Mot. to Stay Resp. (Dkt. # 30) at 8.) The court denies Ten Bridges's request for a stay.

an intermediate appellate state court rests its considered judgment upon the rule of law which it announces, that is a datum for ascertaining state law which is not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *West v. Am. Tel. & Telegraph Co.*, 311 U.S. 223, 237 (1940). "This is the more so where, as in this case, the highest court has refused to review the lower court's decision rendered in one phase of the very litigation which is now prosecuted by the same parties before the federal court." *Id.*

Ten Bridges asserts that *Guandai* was wrongly decided and that, if the Washington Supreme Court had accepted review, it would have held that RCW 63.29.350 does not apply to the quitclaim deeds at issue in this case. (MSJ Resp. at 12-20.) The Court of Appeals considered the same arguments that Ten Bridges now makes to this court and rejected them. (*See* MSJ Resp. at 14-20 (arguing RCW 63.29.350(1) does not invalidate the Thomas Quitclaim Deed because (1) "Ten Bridges was not paid any fee or compensation for locating the funds" and (2) the statute does not apply to "funds held by a Superior Court as a result of judicial foreclosure of a private deed of trust")); *see Guandai*, 474 P.3d at 1067-69 (addressing these arguments). Furthermore, the Washington Supreme Court denied Ten Bridges's petitions for review, in which Ten Bridges and its amicus again made the same arguments that Ten Bridges reasserts here. *See Guandai*, 487 P.3d at 515; *Asano*, 487 P.3d at 517; (*see also* 8/19/21 Beckett Decl. ¶ 16, Ex. 13 (Ten Bridges's *Guandai* petition); *id.* ¶ 18, Ex. 15 (*Guandai* amicus brief); *id.* ¶ 35, Ex. 31 (Ten Bridges's *Asano* petition); *id.* ¶ 37, Ex. 33 (*Asano* amicus brief)). The court concludes that Ten Bridges has not presented "convincing evidence that the

highest court of the state would decide [*Guandai*] differently." *In re Kirkland*, 915 F.2d at 1239; *see also West*, 311 U.S. at 237. Accordingly, the court proceeds to apply *Guandai* to determine the validity of the Thomas Quitclaim Deed.

RCW 63.29.350(1) provides, in relevant part:

> It is unlawful for any person to seek or receive from any person or contract with any person for any fee or compensation for locating or purporting to locate any . . . funds held by a county that are proceeds from a foreclosure for delinquent property taxes, assessments, or other liens . . . in excess of five percent of the value thereof returned to such owner.

RCW 63.29.350(1); *see also Guandai*, 474 P.3d at 1067. In *Guandai*, the Washington Court of Appeals held:

> Because the substance of the [Guandai and Asano] quitclaim deeds reveals Ten Bridges sought more than five percent of the surplus proceeds for itself as compensation for having located the proceeds for their rightful owners, the quitclaim deeds violated RCW 63.29.350 and were void.

474 P.3d at 1063-64. Specifically, the Court of Appeals held that the Asano Quitclaim Deed was void because:

> In substance, Ten Bridges relied upon having located the surplus funds for a fee of almost 50 percent of the funds as compensation for obtaining the other 50 percent for [Ms.] Asano . . . . Because Ten Bridges combined the services of locating surplus funds held by King County and of connecting [Ms.] Asano with her surplus funds, both in exchange for more than five percent of the returned funds' value, the [Asano Quitclaim Deed] violated RCW 63.29.350 and was void.

*Id.* at 1069. It similarly held that the Guandai Quitclaim Deed was void because:

> Ten Bridges based its compensation on [Ms.] Guandai's assignment of her right to the surplus funds, so the substance of the transaction inherently includes compensation for having located the funds. Ten Bridges sought to gain almost 83 percent of the value of the surplus funds by offering Guandai the equivalent of 17 percent of those funds. This is, in substance, an agreement to a fee for having located and obtained surplus funds that far

> exceeds the statutory five percent limit . . . . Because Ten Bridges sought more than five percent of the value of the surplus funds as a fee for, in substance, locating and obtaining those funds, the [Guandai Quitclaim Deed] violated RCW 63.29.350 and was void.

*Id.* at 1070.

The court has no difficulty concluding that the Thomas Quitclaim Deed, too, is void under the principles set forth in *Guandai*.[7] Mr. Thomas assigned to Ten Bridges his rights to redeem Benjamin Thomas's property and to receive his $75,311.52 share of the surplus proceeds in exchange for $9,500. (*See* Thomas Quitclaim Deed.) Thus, Ten Bridges sought to gain over 87% of the value of Mr. Thomas's share of the surplus funds by offering him the equivalent of under 13% of those funds. Because Ten Bridges sought more than five percent of the value of the surplus funds as a fee for, "in substance," locating and obtaining the funds, the Thomas Quitclaim Deed violated RCW 63.29.350(1) and was void. *See Guandai*, 474 P.3d at 1069, 1071. Because the Thomas Quitclaim Deed is void as a matter of law, Ten Bridges cannot establish the first element of its tortious interference with business relationships claim. Therefore, the court GRANTS Defendants' motion for summary judgment on Ten Bridges's tortious interference with business relationships claims against Ms. Gore and Midas arising from the Thomas transaction and DISMISSES those claims with prejudice.

---

[7] Except in its argument against the application of collateral estoppel, Ten Bridges makes no attempt to distinguish the Thomas Quitclaim Deed from the Asano and Guandai Quitclaim Deeds. (MSJ Resp. at 11-12.) Rather, it relies solely on its contention that *Guandai* was wrongly decided. (*See id.* at 19 (stating "the Court of Appeals ignored the law, the statute, the legislative history and the very facts of the transactions at issue . . . in order to reach a desired 'consumer friendly' outcome" and thus "this court is not bound by the flawed Court of Appeal[s] decision").)

1      C.     **Abuse of Process Arising from the *Guandai* Action**

2      The tort of abuse of process is disfavored in Washington. *See Batten v. Abrams*, 626 P.2d 984, 988-89 (Wash. Ct. App. 1981). To establish an abuse of process, a claimant must prove (1) an ulterior purpose to accomplish an object not within the proper scope of the process, (2) an act not proper in the regular prosecution of proceedings, and (3) harm proximately caused by the abuse of process. *Bellevue Farm Owners Ass'n v. Stevens*, 394 P.3d 1018, 1024-25 (Wash. Ct. App. 2017). "The crucial inquiry is whether the judicial system's process, made available to insure the presence of the defendant or his property in court, has been misused to achieve another, inappropriate end." *Gem Trading Co. v. Cudahy Corp.,* 603 P.2d 828, 832 n.2 (Wash. 1979). "The mere institution of a legal proceeding even with a malicious motive does not constitute an abuse of process." *Loeffelholz v. Citizens for Leaders with Ethics & Accountability Now (C.L.E.A.N.)*, 82 P.3d 1199, 1217 (Wash. Ct. App. 2004). Even the filing of a baseless or vexatious lawsuit is not misusing the process, and "there is no liability where the defendant has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Batten*, 626 P.2d at 989. Instead, the "gist" of the action is the misuse or misapplication of the process, after it has once been issued, for an end other than that which it was designed to accomplish. *Loeffelholz*, 82 P.3d at 1217. "In other words, the action requires 'a form of extortion, and it is what is done in the course of negotiation, rather than the issuance or any formal use of the process itself, which constitutes the tort.'" *Id.* (quoting *Batten*, 626 P.2d at 989).

22

Ten Bridges bases its abuse of process claim on Midas's involvement in the *Guandai* action.  (MSJ Resp. at 20-22.)  It states that although Midas purchased Ms. Guandai's property, it did not purchase her property *interests*—rather, it was Ten Bridges that purchased the right to surplus proceeds generated from the sheriff's sale of her property.  (*Id.* at 20.)  It asserts that Midas had no right to file a claim for the Guandai surplus proceeds under RCW 61.12.150, which provides for payment of surplus proceeds only to the "mortgage debtor, his or heirs and assigns." (*Id.* at 20-21.)  Thus, according to Ten Bridges, "there is simply no viable explanation for Midas . . . asserting a claim to [the] Guandai surplus funds other than harassment of Ten Bridges." (*Id.* at 22.)  Ten Bridges relies on the following text message from Ms. Gore to Ms. Guandai as evidence of Defendants' ulterior purpose:

> You ask why I am doing this?  Because I'm tired of seeing ten bridges [sic] take advantage of people like you.  Especially when someone like me offers you a fair dollar value for their redemption rights.

(*Id.* at 21 (citing Gore-Guandai Texts).)  It also points to text messages from Ms. Gore to Mr. Thomas in which Ms. Gore states that "Ten bridges [sic] emailed me this morning basically begging me to stop telling people like u [sic] about how they are owed money" and that she was excited about upcoming legal proceedings because "Ten Bridges will be shaking in their boots." (*Id.* (citing Gore-Thomas Texts).)

Viewing the evidence before it in the light most favorable to Ten Bridges, the court finds that Ten Bridges has not met its burden to demonstrate a genuine issue of material fact with respect to its abuse of process claim.  Ten Bridges has not directed the court to evidence of an act by Midas that was "not proper in the regular prosecution of

proceedings" or of harm proximately caused by Midas's actions. *Bellevue Farm Owners Ass'n*, 394 P.3d at 1024-25. Even if Midas's filing of the motion for payment of surplus proceeds was "baseless or vexatious," Midas faces no liability because it "has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." *Batten*, 626 P.2d at 989. Accordingly, the court GRANTS Defendants' motion for summary judgment on Ten Bridges's abuse of process claim arising from the *Guandai* action and DISMISSES that claim with prejudice.

## IV.   CONCLUSION

For the foregoing reasons, the court GRANTS Defendants' motion for summary judgment (Dkt. # 71) and DISMISSES Ten Bridges's second amended complaint (Dkt. # 47) with prejudice.

Dated this 23rd day of September, 2021.

JAMES L. ROBART
United States District Judge